# In the United States Court of Appeals for the Fifth Circuit

RUBEN GUTIERREZ,

*Plaintiff-Appellee,*

*v.*

LUIS V. SAENZ; FELIX SAUCEDA, CHIEF, BROWNSVILLE POLICE DEPARTMENT,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of Texas, Brownsville Division

**BRIEF FOR DEFENDANTS-APPELLANTS**

*(Counsel Listed on Inside Cover)*

EDWARD SANDOVAL
First Assistant District Attorney
Cameron County, Texas
964 East Harrison St.
Brownsville, Texas 78520

*Counsel for Defendant-Appellant Luis V. Saenz*

RICARDO NAVARRO
Denton Navarro Rocha Bernal & Zech, P.C.
701 E. Harrison, Suite 100
Harlingen, Texas 78550

*Counsel for Defendant-Appellant Felix Sauceda*

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JUDD E. STONE II
Solicitor General

MICHAEL R. ABRAMS
Assistant Solicitor General
Michael.Abrams@oag.texas.gov

JEFFERSON DAVID CLENDENIN
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

*Counsel for Defendant-Appellant Luis V. Saenz*

# CERTIFICATE OF INTERESTED PERSONS

No. 21-70009

RUBEN GUTIERREZ,

*Plaintiff-Appellee,*

*v.*

LUIS V. SAENZ; FELIX SAUCEDA, CHIEF, BROWNSVILLE POLICE DEPARTMENT,

*Defendants-Appellants.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Defendants-Appellants, as governmental parties, need not furnish a certificate of interested persons.

/s/ Michael R. Abrams
MICHAEL R. ABRAMS
*Counsel for Defendant-Appellant Luis V. Saenz*

## Statement Regarding Oral Argument

This case merits oral argument. The district court issued a novel declaratory judgment finding an irreconcilable conflict between Texas's postconviction DNA testing regime and Texas's statutory framework for convicted defendants to file subsequent habeas proceedings. The court reached the merits even though the plaintiff's case warranted immediate dismissal on jurisdictional and statute-of-limitations grounds.

The district court's judgment follows two decades of litigation in which the plaintiff has sought, and failed, to overturn his capital murder conviction. Because of the complex factual and legal underpinnings of this matter, oral argument is likely to aid the Court's decisional process.

# Table of Contents

Page

Certificate of Interested Persons .................................................................i

Statement Regarding Oral Argument ...........................................................ii

Table of Authorities .....................................................................................iv

Introduction ................................................................................................. 1

Statement of Jurisdiction ............................................................................. 2

Issues Presented ........................................................................................... 3

Statement of the Case .................................................................................. 3

    I.   Background .......................................................................................... 3

    II.   Postconviction Procedural History ................................................... 6

        A.   Initial state and federal habeas corpus proceedings ............... 6

        B.   Initial Chapter 64 motion for DNA testing .......................... 7

        C.   Subsequent state and federal habeas application ................... 8

        D.   Subsequent Chapter 64 motion for DNA testing .................. 8

        E.   Civil-rights lawsuit challenging postconviction DNA
           procedures in Texas ............................................................. 9

           1.   Motion to dismiss complaint ..................................... 10

           2.   Stay of execution ....................................................... 11

           3.   Appeal of stay of execution ....................................... 11

           4.   Petition for a writ of certiorari .................................. 12

           5.   Post-remand proceedings on DNA claims ................. 12

           6.   Judgment on DNA claims .......................................... 15

Summary of the Argument.......................................................................... 15

Standard of Review ..................................................................................... 17

Argument..................................................................................................... 17

    I.   Gutierrez Lacks Standing to Sue the District Attorney and the
       Police Chief. ..................................................................................... 17

    II.   Gutierrez's DNA Claims Are Time-Barred. ................................... 21

        A.   Gutierrez's claims are subject to a two-year statute of
           limitations. ......................................................................... 21

    B.    Subsequent developments do not render Gutierrez's suit timely. ............................................................................22

    C.    Gutierrez is not entitled to equitable tolling. ....................26

  III.  Chapter 64 Is Constitutional. .......................................................27

    A.    Texas's DNA testing procedures are consistent with Supreme Court precedent. .............................................27

    B.    Chapter 64 is reconcilable with Article 11.071. ................28

Conclusion ................................................................................................ 35

Certificate of Service ............................................................................... 36

Certificate of Compliance ....................................................................... 36

# Table of Authorities

Page(s)

**Cases:**

*Allen v. Wright*,
  468 U.S. 737 (1984) ........................................................................ 19

*Ex parte Blue*,
  230 S.W.3d 151 (Tex. Crim. App. 2007) ..........................................30

*Brackeen v. Haaland*,
  994 F.3d 249 (5th Cir. 2021) (en banc) ...........................................20

*California v. Texas*,
  141 S. Ct. 2104 (2021) ............................................................... 19, 20

*District Attorney's Office for Third Judicial District v. Osborne*,
  557 U.S. 52 (2009) ...................................... 12, 18, 27, 28, 29, 33

*Domain Prot. LLC v. Sea Wasp LLC*,
  No. 20-40411, 2022 WL 123408 (5th Cir. Jan. 13, 2022) ................10

*EJS Props., LLC v. City of Toledo*,
  698 F.3d 845 (6th Cir. 2012) ...........................................................32

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005) ........................................................................24

*Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*,
274 F.3d 924 (5th Cir. 2001) ............................................................... 18

*Frew v. Janek*,
780 F.3d 320 (5th Cir. 2015) ............................................................... 17

*Gutierrez v. Saenz*,
141 S. Ct. 1260 (2021) ........................................................................ 12

*Gutierrez v. Saenz*,
818 F. App'x 309 (5th Cir. 2020) (per curiam)....................................11, 20, 28

*Gutierrez v. Saenz*,
No. 21-70006 (5th Cir. Sept. 14, 2021) ............................................... 15

*Gutierrez v. State*,
307 S.W.3d 318 (Tex. Crim. App. 2010) ................................................7

*Gutierrez v. State*,
No. 73,462, slip op. (Tex. Crim. App. Jan. 16, 2002) (unpublished
opinion) ..............................................................................................6

*Gutierrez v. State*,
No. AP-77,089, 2020 WL 918669 (Tex. Crim. App. Feb. 26, 2020)......... 8, 9, 26

*Gutierrez v. Stephens*,
590 F. App'x 371 (5th Cir. 2014) (per curiam), *cert. denied*, 577 U.S.
829 (2015) ...........................................................................................8

*Gutierrez v. Texas*,
No. AP-77,102 (Tex. Crim. App. filed Aug. 6, 2021)................................9

*Ex parte Gutierrez*,
337 S.W.3d 883 (Tex. Crim. App. 2011) ................................................*passim*

*Ex parte Gutierrez*,
No. WR-59,552-01, 2008 WL 2059277 (Tex. Crim. App. May 14,
2008) ....................................................................................................6

*Ex parte Gutierrez*,
No. WR-59,552-02 (Tex. Crim. App. Aug. 24, 2011) ............................8

*Hearn v. McCraw*,
856 F. App'x 493 (5th Cir. 2021) (per curiam) ......................................23

*Ladd v. State*,
3 S.W.3d 547 (Tex. Crim. App. 1999) ..................................................6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..............................................................................18

*Medina v. California*,
    505 U.S. 437 (1992) ...................................................................... 29

*Ex parte Milam*,
    No. WR-79,322-04, 2021 WL 197088 (Tex. Crim. App. Jan. 15,
    2021) (per curiam) ...................................................................... 32

*Moye v. Clerk, Dekalb Cty. Superior Ct.*,
    474 F.2d 1275 (5th Cir. 1973) (per curiam) ...................................... 19

*Murphy v. NCAA*,
    138 S. Ct. 1461 (2018) ................................................................ 19

*Murray v. Giarratano*,
    492 U.S. 1 (1989) ...................................................................... 29

*Olsen v. DEA*,
    878 F.2d 1458 (D.C. Cir. 1989) .................................................... 34

*Reed v. Goertz*,
    995 F.3d 425 (5th Cir. 2021), *cert. filed*, No. 21-442 (Sept. 22, 2021) .......... *passim*

*Reed v. State*,
    541 S.W.3d 759 (Tex. Crim. App. 2017) ...................................... 23, 25

*Richardson v. Texas Secretary of State*,
    978 F.3d 220 (5th Cir. 2020) ........................................................ 32

*Rocha v. Thaler*,
    619 F.3d 387 (5th Cir. 2010) ........................................................ 29

*Rocha v. Thaler*,
    626 F.3d 815 (5th Cir. 2010) .................................................... 30, 31

*Russell v. Bd. of Trs.*,
    968 F.2d 489 (5th Cir. 1992) ........................................................ 21

*Savory v. Lyons*,
    469 F.3d 667 (7th Cir. 2006) ................................................ 23, 26, 27

*Sawyer v. Whitley*,
    505 U.S. 333 (1992) ...................................................... 29, 30, 31, 33

*Sessions v. Morales-Santana*,
    137 S. Ct. 1678 (2017) ................................................................ 34

*Skinner v. Switzer*,
    No. 2:09–CV–281, 2011 WL 5331656 (N.D. Tex. Oct. 27, 2011) ............ 25

*Smith v. Decker*,
    312 S.W.2d 632 (Tex. 1958) ........................................................ 33

*Stanton v. Stanton,*
    421 U.S. 7 (1975) ..................................................................34

*State v. Miles,*
    414 P.3d 680 (Ariz. 2018) ..................................................31

*State v. Patrick,*
    86 S.W.3d 592 (Tex. Crim. App. 2002) ..........................20

*Thompson v. Rovella,*
    734 F. App'x 787 (2d Cir. 2018) ......................................26

*United States v. American Railway Express,*
    265 U.S. 425 (1924) ..........................................................10

*United States v. Mask,*
    330 F.3d 330 (5th Cir. 2003) ............................................17

*United States v. Salerno,*
    481 U.S. 739 (1987) ..........................................................33

*United States v. Stevens,*
    559 U.S. 460 (2010) ..........................................................28

*Walker v. Epps,*
    550 F.3d 407 (5th Cir. 2008) ............................................21

*Ex parte Weathers,*
    No. WR-64,302-02, 2012 WL 1378105 (Tex. Crim. App. Apr. 18,
    2012) (per curiam) ............................................................32

*Whitaker v. Collier,*
    862 F.3d 490 (5th Cir. 2017) ............................................25

*Wilson v. Garcia,*
    471 U.S. 261 (1985) ..........................................................21

**Statutes and Rules:**

28 U.S.C.:
    § 1292(a)(1) ........................................................................2
    § 1331 ..................................................................................2
    § 2201 ................................................................................19

42 U.S.C. § 1983 ............................................................... 2, 21

Tex. Civ. Prac. & Rem. Code § 16.003(a) ............................21

Tex. Code Crim. Proc.:
    art. 11.071 ..................................................................*passim*
    art. 11.071 § 1 ....................................................................13
    art. 11.071 § 5(a)(3) ..................................... 13, 28-29, 30, 31

art. 37.071 ....................................................................................30

art. 37.071 § 2(b)(2) .................................................... 6, 14, 31

Ch. 64 ....................................................................................*passim*

art. 64.03(a)(2)(A) ....................................... 7, 12, 18, 27

art. 64.03(a)(C)(2)(A) ............................................... 14

art. 64.03(c) ................................................ 17, 18, 27

Tex. Penal Code § 7.01(a) ................................................5, 11

Fed. R. Civ. P. 54(b) ................................................ 2, 15

## Other Authorities:

Act of April 5, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2 ...............18

*In re Gutierrez*,
No. 98-CR-1391-A (107th Dist. Ct. Cameron Cty., July 8, 2021) ........................9

*Gutierrez v. Stephens*,
No. 1:09-CV-22 (S.D. Tex. Jan. 26, 2009) ........................................7

*Gutierrez v. Texas*,
No. AP-77,102 (Tex. Crim. App. filed Aug. 6, 2021) ........................................9

Order, *Ex parte Gutierrez*, No. 98-CR-1391-A (107th Dist. Ct. Cameron Cty. July 27, 2010) ............................................................ 21,22

Order, *Gutierrez v. Stephens*, No. 1:09-CV-22 (S.D. Tex. Apr. 28, 2009) ............................................................7

# Introduction

Nearly twenty-five years ago, Plaintiff Ruben Gutierrez and two cohorts robbed Escolastica Harrison, an elderly business owner and retired teacher, of nearly $600,000. They beat her, repeatedly stabbed her with screwdrivers, and murdered her in her home. Multiple witnesses, including the other assailants, placed Gutierrez at the crime scene. After a jury trial, the trial court sentenced Gutierrez to death, and the Texas Court of Criminal Appeals (CCA) affirmed the sentence.

This case is the latest chapter in Gutierrez's efforts to overturn the jury's verdict. In 2009, Gutierrez sought DNA testing, claiming it would show his innocence. The Texas state courts rejected his request and affirmatively found that DNA testing would not prove his innocence. A decade later, he sought DNA testing again, and the state courts again denied him relief. Only after a trial court rejected Gutierrez's subsequent request for DNA testing did he sue state officials in federal court to challenge the postconviction DNA testing regime in Texas and claim a violation of his civil rights.

The district court could have, and should have, dismissed Gutierrez's current claims for lack of standing, because the defendants he sued do not enforce Texas's DNA testing statute and cannot be compelled by a federal court to release evidentiary material. The district court also could have, and should have, dismissed Gutierrez's claims for being filed out of time under Texas's two-year statute of limitations. His lawsuit was filed too late because, under this Court's precedent, Gutierrez's claims accrued when a Texas trial court initially denied his request for DNA testing, and far more than two years have elapsed since that denial. The district

court's failures to dismiss the suit on these bases are independent grounds for reversal without reaching the merits of Gutierrez's claims.

But even if the Court disagrees, Gutierrez's claims on the merits should still be rejected. The district court ruled for Gutierrez on an issue he barely raised—if he raised it at all. The court held that Texas's DNA testing regime is irreconcilable with Texas's limited authorization of subsequent habeas proceedings. The district court reached this conclusion on a misreading of the Code of Criminal Procedure. The two provisions do not conflict, as the CCA has made clear for years.

The resulting declaratory judgment, which the district court never should have rendered, is both overbroad and confusing. It is overbroad because it could theoretically forbid the State from restricting DNA testing under *any* circumstances. And it is confusing because it contains barely a hint of when or how it would apply in practice, thus leaving it to the parties and to state courts to ascertain its meaning.

Because these defects fatally undermine the district court's decision, the judgment below should be reversed, and this case should be remanded for entry of judgment for Defendants.

## Statement of Jurisdiction

The district court had jurisdiction under 28 U.S.C. § 1331 because Gutierrez's claims arise under the United States Constitution and are brought through 42 U.S.C. § 1983. ROA.596. The district court entered a partial final judgment on December 8, 2021. ROA.3152; *see* Fed. R. Civ. P. 54(b). Defendants timely filed their notice of appeal on December 10, 2021. ROA.3185. This Court therefore has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

1. Whether Gutierrez's claim for lack of access to evidence for DNA testing is redressable by a declaratory judgment against the named defendants—a district attorney and a police chief—neither of whom determine whether an individual is eligible for DNA testing under the Code of Criminal Procedure.

2. Whether Gutierrez's claims are barred by the statute of limitations because a state trial court denied his first motion for DNA testing in 2010 and he did not bring this suit until 2019.

3. Whether Texas's postconviction DNA testing regime is incompatible with Texas law governing subsequent habeas petitions.

## STATEMENT OF THE CASE

## I. Background

Escolastica Harrison was 85 years old when she was murdered. *Ex parte Gutierrez*, 337 S.W.3d 883, 886 (Tex. Crim. App. 2011).[1] She lived with her nephew, Avel Cuellar, in a mobile-home park in Brownsville. *Id.* She had around $600,000 in cash hidden in her home because she did not trust banks. *Id.* Gutierrez was friends with Avel. *Id.* Because of that friendship, Gutierrez was one of the few people who knew about the money. *Id.*

When Gutierrez was 21 years old, he schemed to steal the money with two accomplices. *Id.* On September 5, 1998, he and Rene Garcia entered Harrison's home.

---

[1] These facts are taken from the Court of Criminal Appeals' opinion affirming the denial of Gutierrez's initial request for DNA testing.

*Id.* Pedro Gracia was the driver of the getaway vehicle and stayed outside. *Id.* When Gutierrez and Rene left with Harrison's money, she was dead. *Id.* Harrison's nephew found her body later that night. *Id.* She was lying face down in a pool of blood, severely beaten and stabbed multiple times. *Id.* Her bedroom was in disarray, and the money was gone. *Id.*

Three days later, detectives visited Gutierrez's home. *Id.* He was not there, but his mother said she would bring him to the police station. *Id.* The next day, Gutierrez voluntarily came to the police station to make a statement. *Id.* He claimed to have an alibi. *Id.* He said that he had seen Harrison's nephew and another friend, Ramiro Martinez, at the trailer park on the Friday before the murder, but that on the Saturday of the murder, he drove around with a different friend in the friend's Corvette. *Id.* When police asked him if he had his days confused, Gutierrez cut off questioning. *Id.*

Because of statements given by Gutierrez's two accomplices and the police's investigations into the accomplices' roles in the murder, the police obtained an arrest warrant for Gutierrez. *Id.* at 887. He was arrested, taken into custody, and then made a second statement. *Id.* This time, he admitted that he had planned to "rip off" Harrison, but he claimed that he had waited at a park while his accomplices robbed her. *Id.* He said that when his cohorts came to pick him up, Rene was holding a screwdriver covered in blood and confessed that he had killed Harrison. *Id.* Gutierrez also testified that Rene and Pedro took a blue suitcase and a toolbox full of money from Harrison's home. *Id.* Gutierrez admitted that there was "no doubt about the fact that" he planned the "whole rip off" but that he never intended Harrison to be

killed. *Id.* Gutierrez told the police that his accomplices had told him where they had thrown the blue suitcase away, and he led them to the suitcase. *Id.*

The next day, Gutierrez gave a new statement in which he admitted that he lied "about being dropped off in the park, about not being with Rene." *Id.* He said that Pedro drove the truck and dropped him and Rene off at Harrison's home. *Id.* The initial plan was for Rene to lure Harrison out of her home by asking to see a trailer lot. *Id.* Gutierrez would then come around from the back of her home, run in, and take the money without her seeing him. *Id.* But when Gutierrez went to the front of the house, Rene and Harrison were still inside. *Id.* Gutierrez said Rene knocked out Harrison by hitting her, and then he repeatedly stabbed her with a screwdriver. *Id.* Gutierrez gathered the money, tossed the toolbox to Rene, and headed out the door with the suitcase. *Id.* Rene followed, and Pedro pulled the truck around to pick them up. *Id.* Pedro dropped them off down a caliche road and Gutierrez filled "up the little tool box with the money that was in the suitcase," while Rene Garcia filled up his shirt. *Id.* They abandoned the suitcase, and Pedro picked them up and drove Gutierrez home. *Id.*

Gutierrez was tried for Harrison's murder. *Id.* at 888. The jury was instructed that it could convict Gutierrez of capital murder if it found that Gutierrez "acting alone or as a party" with an accomplice who intentionally caused the victim's death. *Id.*; *see* Tex. Penal Code § 7.01(a) ("A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both."). The jury returned a general verdict of guilt, and based on the jury's findings at the punishment phase, the trial

judge sentenced Gutierrez to death. *Ex parte Gutierrez*, 337 S.W.3d at 888. To find that Gutierrez should be sentenced to death, the jury had to affirm that he "intended to kill the deceased or another or [could have] anticipated that a human life would be taken," Tex. Code Crim. Proc. art. 37.071, § 2(b)(2), which the CCA has termed the "anti-parties" issue. *E.g.*, *Ladd v. State*, 3 S.W.3d 547, 558 (Tex. Crim. App. 1999).

At punishment, the prosecution presented evidence of Gutierrez's involvement with the criminal-justice system since he was 14 years old. *Gutierrez v. State*, No. 73,462, slip op., at 6 (Tex. Crim. App. Jan. 16, 2002) (unpublished opinion). As a juvenile, Gutierrez committed several burglaries, assaulted a police officer, and threatened to kill a teacher and a security officer. *Id.* Attempts to rehabilitate Gutierrez in various juvenile detention facilities were unsuccessful. *Id.*

While awaiting trial for Harrison's murder, Gutierrez was assigned to the "high risk" area of the Cameron County Jail from where Gutierrez and another individual attempted an escape during which Gutierrez told a guard not to interfere or he would be "shanked." *Id.* Immediately following the jury's guilty verdict, Gutierrez said that he might kill an assistant district attorney. *Id.* The CCA upheld Gutierrez's conviction and death sentence on direct appeal. *Id.* at 1.

## II. Postconviction Procedural History

### A. Initial state and federal habeas corpus proceedings

Over twenty years of litigation followed Gutierrez's conviction. He initially filed a state habeas application, which the CCA denied. *Ex parte Gutierrez*, No. WR-59,552-01, 2008 WL 2059277, at *1 (Tex. Crim. App. May 14, 2008). Gutierrez then

filed a federal habeas petition. *Gutierrez v. Stephens*, No. 1:09-CV-22 (S.D. Tex. Jan. 26, 2009), ECF No. 2. The district court granted Gutierrez a stay of the proceedings so that he could return to state court to pursue additional claims. Order, *Gutierrez v. Stephens*, No. 1:09-CV-22 (S.D. Tex. Apr. 28, 2009), ECF No. 12. As part of that proceeding, Gutierrez asked for appointed counsel to file a motion for DNA testing, which was denied. *Gutierrez v. State*, 307 S.W.3d 318, 319 (Tex. Crim. App. 2010). And the CCA dismissed Gutierrez's appeal from the order denying him relief, finding that such an order was not immediately appealable. *Id.* at 323.

## B. Initial Chapter 64 motion for DNA testing

Gutierrez then sought postconviction DNA testing in state court under Chapter 64 of the Code of Criminal Procedure. *Gutierrez*, 337 S.W.3d at 901-02. In relevant part, Chapter 64 authorizes DNA testing if a movant shows by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. Tex. Code Crim. Proc. art. 64.03(a)(2)(A). Gutierrez argued there were four sources of evidence that should be tested: (1) a blood sample from Harrison, (2) a shirt belonging to Avel Cuellar that contained blood stains, (3) blood samples from Cuellar's bathroom, and (4) Harrison's fingernail scrapings. *Gutierrez*, 337 S.W.3d at 900. Gutierrez theorized that if his DNA were not located on any of these materials, that absence would cast doubt on his culpability. *Id.*

The CCA affirmed the trial court's order rejecting his motion for DNA testing, reasoning that the fingernail scrapings were "the only material that might conceivably contain DNA from the murderers." *Id.* But as the CCA noted, the only possible

exculpatory result would be DNA from the third accomplice, Pedro Gracia. *Id.* at 901. And "[a]ll three robbers agreed that Pedro Gracia was the driver and did not go inside" Harrison's home. *Id.* And testimony from another witness, Julio Lopez, confirmed that Gutierrez was outside of Harrison's home on the evening of the murder. *Id.* at 894, 901. The CCA found that Gutierrez's guilt would not be brought into question even if it accepted the "implausible scenario" that Gutierrez was not present in Harrison's home when she was murdered during the robbery he planned. *Id.* at 901. The CCA thus concluded that "a third-party match to the requested biological evidence would not overcome the overwhelming evidence of [Gutierrez's] direct involvement in the multi-assailant murder." *Id.* at 902.

### C.  Subsequent state and federal habeas application

After his motion for DNA testing was denied, Gutierrez filed a subsequent state habeas application, which was dismissed as an abuse of the writ. Order, *Ex parte Gutierrez*, No. WR-59,552-02 (Tex. Crim. App. Aug. 24, 2011). The federal district court then lifted its stay and denied habeas relief and a certificate of appealability (COA). This Court denied Gutierrez's application for a COA. *Gutierrez v. Stephens*, 590 F. App'x 371, 384 (5th Cir. 2014) (per curiam), *cert. denied*, 577 U.S. 829 (2015).

### D.  Subsequent Chapter 64 motion for DNA testing

In June 2019, Gutierrez returned to state court to seek DNA testing. ROA.604. He claimed that he had undertaken discovery and had identified additional evidence that should be tested for DNA. *Gutierrez v. State*, No. AP-77,089, 2020 WL 918669, at *5 (Tex. Crim. App. Feb. 26, 2020). Gutierrez placed the greatest emphasis on a

hair found in the victim's hand, which he claimed might lend further weight to his claim that he was not in Harrison's home at the time of the murder. *Id.* The trial court initially granted the motion but later withdrew that order and issued a new order denying the motion. ROA.604-05. Gutierrez appealed the trial court's denial of his motion for DNA testing, and the CCA affirmed. *Gutierrez v. State*, 2020 WL 918669, at *9. In that opinion, the CCA painstakingly considered the evidence that Gutierrez wanted to be tested (much of which was the same evidence that Gutierrez put at issue in 2010) and concluded again that Gutierrez failed to show "by a preponderance of the evidence that he would not have been convicted if exculpatory results were obtained through DNA testing."[2] *Id.* at *8.

### E. Civil-rights lawsuit challenging postconviction DNA procedures in Texas

In September 2019, Gutierrez brought a federal civil-rights lawsuit. ROA.26. He raised two categories of claims: (1) claims challenging the constitutionality of Texas's postconviction DNA testing procedures, and (2) claims challenging the execution protocols of the Texas Department of Criminal Justice (TDCJ) regarding the presence of outside spiritual-advisors inside the execution room. ROA.594-95. He sued Luis V. Saenz, the County and District Attorney for Cameron County, Texas, and Felix Sauceda, Jr., Chief of the Brownsville Police Department

---

[2] Gutierrez has since filed a third application for DNA testing under Chapter 64. The trial court dismissed the application for lack of jurisdiction, and the claim is on appeal. *In re Gutierrez*, No. 98-CR-1391-A (107th Dist. Ct. Cameron Cty., July 8, 2021); *Gutierrez v. Texas*, No. AP-77,102 (Tex. Crim. App. filed Aug. 6, 2021).

(Defendants), alleging that they retain custody of the relevant DNA evidence. ROA.596-97. He also sued three TDCJ officials for relief from TDCJ's execution protocols. ROA.597.

### 1. Motion to dismiss complaint

All defendants moved to dismiss Gutierrez's amended complaint. ROA.632-721. Among other arguments, Defendants asserted that Gutierrez's claims are barred by the statute of limitations, that they "have no connection with the state courts' construction of state law," and that Gutierrez lacks standing to sue them because they cannot be forced to release evidence for DNA testing. ROA.663, 674, 679-82. The district court granted the motion to dismiss only in part. The court agreed with Defendants and dismissed Gutierrez's DNA claims attempting to relitigate the state courts' denial of DNA testing and seeking an order to compel Defendants to release evidence for DNA testing. ROA.825–26, 844. But the court declined to dismiss Gutierrez's DNA claims that challenged the constitutionality of Chapter 64 facially and as authoritatively construed by the CCA.[3] ROA.844-45.

---

[3] The court also dismissed several of Gutierrez's other claims involving DNA testing, including his Eighth Amendment and access to the courts claims. ROA.844-45. Gutierrez did not file a cross-appeal, and thus, those claims are not before the Court. *See Domain Prot. LLC v. Sea Wasp LLC*, No. 20-40411, 2022 WL 123408, at *6 (5th Cir. Jan. 13, 2022) (citing *United States v. American Railway Express*, 265 U.S. 425, 435 (1924), for the proposition that "a cross-appeal is necessary when the appellee wants to 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'").

### 2. Stay of execution

Because of an impending execution date, the district court construed Gutierrez's response to Defendants' motion to dismiss as a motion for a stay of execution. ROA.1004. Over Defendants' objections, the court granted the stay based on its assessment that Gutierrez had "made a showing of likelihood of success on the merits of at least one of his DNA or execution-chamber claims," despite having found only days earlier that Gutierrez had not demonstrated that his claims would succeed. ROA.830, 1006.

### 3. Appeal of stay of execution

Defendants appealed from the stay order, ROA.1008, requesting that it be vacated. This Court granted the motion. *Gutierrez v. Saenz*, 818 F. App'x 309, 311 (5th Cir. 2020) (per curiam). Turning to the DNA claims first, the Court reasoned that Gutierrez was convicted without jurors needing to decide whether he was the actual murderer or an accomplice. *Id.* at 312. Because Gutierrez confessed to being inside the home, the jury was permitted to find Gutierrez guilty "of capital murder if, among other things, it found that appellant 'acting alone or as a party' with the accomplice intentionally caused the victim's death." *Id.* (citation omitted); *see* Tex. Penal Code § 7.01(a). Thus, a "search for DNA on the victim's clothing and elsewhere would not reasonably lead to evidence that would exclude Gutierrez as an accomplice." 818 F. App'x at 312. The Court also concluded that Gutierrez's spiritual-advisor claims were unlikely to succeed on the merits. *Id.* at 313-14.

### 4. Petition for a writ of certiorari

The Supreme Court granted Gutierrez's petition for a writ of certiorari, vacated this Court's order authorizing the execution to move forward, and remanded the case for reconsideration of the spiritual-advisor claims. *Gutierrez v. Saenz*, 141 S. Ct. 1260, 1260-61 (2021). The Court's brief order did not address the DNA testing claims, because Gutierrez did not raise those claims in his petition for a writ of certiorari. *See id.*

### 5. Post-remand proceedings on DNA claims

On remand, the parties provided additional briefing on Gutierrez's challenge to Chapter 64. ROA.1811-40, 1844-76. After that briefing, the Court issued a declaratory judgment. ROA.2218. The district court rejected Gutierrez's primary challenge to Chapter 64's "preponderance of the evidence" standard.[4] ROA.2213; *see* Tex. Code Crim. Proc. art. 64.03(a)(2)(A). The court was "mindful" of the Supreme Court's holding in *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52, 72 (2009), that the Fourteenth Amendment does not supply a freestanding right to DNA evidence. ROA.2213. Ultimately, the court concluded Gutierrez failed to show that it is impossible to receive DNA testing under Chapter 64 or that the preponderance of the evidence standard "offends historical practice or a fundamental principle of justice of the nation." ROA.2214 (citing *Osborne*, 557 U.S. at 69). That other states have established lower standards of proof did not demonstrate a due process violation in Texas's scheme. ROA.2214.

---

[4] Again, Gutierrez did not file a cross-appeal, so that claim is not before the Court.

After comprehensively (and correctly) rejecting Gutierrez's primary constitutional challenge to Chapter 64, the district court next considered whether Chapter 64 "otherwise offend[s] procedural due process[.]" ROA.2214. Although Texas law generally disallows a subsequent habeas petition once the initial application is denied, Article 11.071 in the Code of Criminal Procedure allows a defendant to file a subsequent habeas petition if the defendant establishes that "by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor" on special issues related to the death penalty.[5] Tex. Code Crim. Proc. art. 11.071, § 5(a)(3).

The district court found Article 11.071 and Chapter 64 are "irreconcilable" because "Texas grants the substantive right to file a second habeas petition with a clear and convincing showing of innocence of the death penalty in Article 11.071, and then Chapter 64 denies the petitioner access to DNA evidence by which a person can avail himself of that right." ROA.2216. In the district court's view, a "bar on Chapter 64 DNA testing to demonstrate innocence of the death penalty renders Article 11.071 § 5(a)(3) illusory." ROA.2216. The court issued a declaratory judgment that "giving a defendant the right to a successive habeas petition for innocence of the death penalty under Texas Code of Criminal Procedure Article 11.071 § 5(a)(3) but then

---

[5] Article 11.071 contains eleven sections establishing the "procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a judgment imposing a penalty of death." Tex. Code Crim. Proc. art. 11.071 § 1. The only provision in Article 11.071 at issue here is the provision in section 5(a)(3) allowing a subsequent habeas application. For simplicity, this brief refers to Article 11.071 when discussing section 5(a)(3).

denying him DNA testing under Texas Code of Criminal Procedure Article 64.03(a)(C)(2)(A) unless he can demonstrate innocence of the crime is fundamentally unfair and offends procedural due process." ROA.2218.

Defendants sought reconsideration. ROA.2804-30. Defendants urged the court to dismiss Gutierrez's DNA claims as time-barred based on this Court's decision in *Reed v. Goertz*, 995 F.3d 425 (5th Cir. 2021), *cert. filed*, No. 21-442 (Sept. 22, 2021), which involved a functionally identical constitutional challenge to Chapter 64 and which this Court decided *after* the district court granted its declaratory judgment.

On the merits, Defendants explained the CCA has never found that Article 11.071 fully incorporates an "actual-innocence-of-the-death-penalty exception." ROA.2822. Defendants also noted there is no due process right to collateral proceedings at all, and that the CCA has never construed Article 11.071 to allow the filing of a subsequent application for the purpose of alleging *unsuitability* for the death penalty based on new evidence that contradicts the jury's verdict on the special issue of whether a defendant "anticipated that a human life would be taken." Tex. Code Crim. Proc. art. 37.071, § 2(b)(2); ROA.2822–23, 2825. And Defendants noted the CCA regularly considers subsequent habeas applications under Article 11.071, and thus, the broad facial invalidation of Chapter 64 was improper. ROA.2826.

The district court rejected Defendants' motion for reconsideration, "summarily conclud[ing] that there is not sufficient reason for the reconsideration of its previous ruling" and that Defendants' arguments "are best addressed on appeal to the Fifth Circuit." ROA.2949.

### 6. Judgment on DNA claims

The Court rendered judgment disposing of the entire case, ROA.2951, and Gutierrez sought and secured reconsideration of the dismissal of his spiritual-advisor claims. ROA.2967-74, 2999. The court vacated its final judgment and allowed Gutierrez leave to file an amended complaint. ROA.3001. Because that order left the status of Gutierrez's DNA testing claims unclear, Defendants filed a motion for partial final judgment of the DNA claims.[6] ROA.3007-3025. The district court granted the motion, determined that there was "no just reason for delay," ROA.3148, Fed. R. Civ. P. 54(b), and thereafter issued a partial final judgment disposing of Gutierrez's DNA testing claims. ROA.3146, 3152. Defendants appealed and now seek reversal of that partial final judgment.[7] ROA.3185.

## Summary of the Argument

**I.** Gutierrez lacks standing to pursue DNA testing claims against the local district attorney and police chief. To establish standing, Gutierrez must show his injury is redressable by a favorable judgment against the defendants he has sued. But district attorneys and police chiefs do not order DNA testing under Chapter 64—courts do. The district court's declaratory judgment does not compel Defendants to do

---

[6] Defendants appealed from the district court's first final judgment. ROA.2958; *see Gutierrez v. Saenz*, No. 21-70006 (5th Cir. Sept. 14, 2021). The appeal remains pending. Because of the subsequent partial final judgment and the commencement of this appeal under a separate cause number, Defendants intend to voluntarily dismiss the earlier-filed appeal.

[7] Gutierrez's spiritual-advisor claims against the TDCJ officials are still pending in the district court and are not the subject of this appeal.

anything. Nor can it. It is therefore an impermissible advisory opinion that does not provide Gutierrez with the right to the DNA testing he seeks. Gutierrez has thus failed to establish an Article III threshold to suit.

**II.** Even if Gutierrez has standing, his claims are still barred by the two-year statute of limitations. Under federal law, a plaintiff's claim accrues when he becomes aware of suffering an injury. It is undisputed that Gutierrez sought DNA testing in 2009 and that a Texas trial court denied his motion for DNA testing in 2010. At that point, he was aware of his injury and in position to challenge the constitutionality of Chapter 64. Instead, he waited *nine years* to pursue these claims in federal court. Gutierrez argued, and the district court agreed, that changed circumstances restarted Gutierrez's limitations window. But that argument fails because there was no "continuing violation" here. The injury about which Gutierrez complains is denying him DNA testing, and Gutierrez incurred that injury in 2010. His claims are therefore time barred.

**III.** On the merits, the district court correctly found that Chapter 64's evidentiary burden comports with due process. But the court incorrectly held that Chapter 64 barricades a right provided in a separate provision of the Code of Criminal Procedure. That conclusion was erroneous for four reasons. *First*, the district court incorrectly found that Article 11.071 wholly adopts the federal "actual innocence of the death penalty" standard, even though the CCA has not reached that conclusion. *Second*, the district court conflated *ineligibility* for the death penalty with *unsuitability* for it. The evidence that Gutierrez sought to test would, at best, go to the subjective factors the jury had to consider before Gutierrez was sentenced to death. It would

not have absolved Gutierrez of the punishment that the jury found was warranted. *Third*, the CCA hears and grants requests for merits review of subsequent habeas applications hand-in-hand with Chapter 64. DNA evidence is one type of evidence, among many, that may underlie an Article 11.071 proceeding. The district court thus erred in finding that Chapter 64 poses an insurmountable barrier to relief under Article 11.071. *Fourth*, and finally, the district court did not consider how the State would seek to remedy the constitutional defects that the court identified. The Texas courts, rather than a federal district court, retain the authority to address any constitutional concerns with Texas's postconviction DNA testing framework in the first instance.

## STANDARD OF REVIEW

The district court's final partial judgment resolved legal questions that are subject to de novo review. *United States v. Mask*, 330 F.3d 330, 334 (5th Cir. 2003); *Frew v. Janek*, 780 F.3d 320, 326 (5th Cir. 2015).

## ARGUMENT

### I. Gutierrez Lacks Standing to Sue the District Attorney and the Police Chief.

Gutierrez sued a district attorney and a police chief because both possess some of the DNA evidence at issue. ROA.596-97. But neither of those individuals can take any action under Chapter 64. Instead, courts independently evaluate whether a petitioner has satisfied Chapter 64's requirements. Tex. Code. Crim. Proc. art. 64.03(c). Thus, the district court's declaratory judgment does not redress Gutierrez's injury because the judgment does not direct Defendants to do anything.

Both Gutierrez and the district court essentially acknowledged as much. ROA.2328, 2940.

To establish Article III standing, a plaintiff (1) must have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent"; (2) there must be "a causal connection between the injury and the conduct complained of"; and (3) the injury must be "likely to be redressed by a favorable decision." *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 & nn.10-11 (5th Cir. 2001) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Gutierrez's claims falter on redressability. Convicted individuals have no constitutional right to postconviction DNA testing. *Osborne*, 557 U.S. at 72-73. Instead, states have "flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 69. The Texas Legislature was one of the earliest movers in providing a process for postconviction DNA testing. *See* Act of April 5, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 2-4. But it has never conferred an unqualified right to DNA testing. Instead, a defendant is only entitled to DNA testing upon a sufficient showing that he would not have been convicted if exculpatory results had been obtained through DNA testing. Tex. Code Crim. Proc. art. 64.03(a)(2)(A). Courts decide that issue. *Id.* art. 64.03(c). District attorneys and police chiefs do not.

Thus, even if Gutierrez has established an injury-in-fact, and even if he can show that the injury is traceable to Defendants, he cannot show that a judgment will vindicate his interest in obtaining access to evidence for DNA testing. The

"Declaratory Judgment Act, 28 U.S.C. § 2201, alone does not provide a court with jurisdiction." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). Gutierrez bears the burden of connecting "'the judicial relief requested' and the 'injury' suffered." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). This means he must connect his request that Chapter 64 be declared unconstitutional with the denial of DNA testing. "Remedies, however, ordinarily 'operate with respect to specific parties.'" *Id.* (quoting *Murphy v. NCAA*, 138 S. Ct. 1461, 1486 (2018) (Thomas, J., concurring)). The district court's declaratory judgment did not act with respect to parties and does not "admit of specific relief through a decree of a conclusive character." *Id.* It is not an injunction, nor is it an award of damages. It "amount[s] to no more than a declaration that the statutory provision [he] attack[s] is unconstitutional." *Id.* at 2116. But "that is the very kind of relief that cannot alone supply jurisdiction otherwise absent." *Id.*

Consider Gutierrez's current state court Chapter 64 proceedings—his third—and the effect of the district court's declaration on those proceedings. He cannot use that declaration to compel the state court to order DNA testing; the state court was never a party (and could not be a party). Nor can he use that declaration to compel Defendants to provide DNA testing because the district court cannot issue a writ of mandamus to state officials. ROA.825; *see Moye v. Clerk, Dekalb Cty. Superior Ct.*, 474 F.2d 1275, 1276 (5th Cir. 1973) (per curiam) (noting that "a federal court lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought."). As the CCA has explained, Texas state courts are without jurisdiction to

order DNA testing absent explicit statutory authorization. *State v. Patrick*, 86 S.W.3d 592, 595-96 (Tex. Crim. App. 2002). Chapter 64 does not provide for DNA testing for the purpose identified in the district court's judgment, ROA.2218, and the district court's judgment purports to find the state-law scheme unconstitutional and, presumably, unenforceable. ROA.2218. This includes the means for gaining access to the DNA testing Gutierrez seeks. Gutierrez is thus left without any mechanism for obtaining an order compelling Defendants to release evidence for DNA testing.[8] And, beyond that, for the reasons the CCA and this Court have already demonstrated, DNA testing will not assist Gutierrez in overturning his capital sentence. *Gutierrez*, 818 F. App'x at 312; *Ex parte Gutierrez*, 337 S.W.3d at 901-02.

Gutierrez has obtained a declaratory judgment that a statute he objects to is unconstitutional. He has not obtained a judgment providing him any means to enforce it. *California*, 141 S. Ct. at 2116. That failure is not for lack of trying but because he

---

[8] This makes this case distinguishable from *Brackeen v. Haaland*, in which the Court found redressability satisfied in a challenge to the Indian Child Welfare Act based on a substantial likelihood that a state court would abide by this Court's "authoritative interpretation" of that law. 994 F.3d 249, 295 (5th Cir. 2021) (en banc) (plurality op.) (per curiam). Here, even if the state court were substantially likely to abide by the declaratory judgment (which Gutierrez has not demonstrated), the declaratory judgment would not compel the trial court to authorize DNA testing. Instead, as discussed *infra* at 33-34, the state court might well conclude that DNA testing should be eliminated in postconviction proceedings altogether.

has not sued parties who can be directed to remedy the constitutional violation he has identified. His claims therefore fail for lack of standing.[9]

## II. Gutierrez's DNA Claims Are Time-Barred.

### A. Gutierrez's claims are subject to a two-year statute of limitations.

Section 1983 claims, which are best characterized as personal-injury actions, are subject to a state's personal-injury statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 279 (1985); *Walker v. Epps*, 550 F.3d 407, 412-14 (5th Cir. 2008). Texas's limitations period is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a). Although state law provides the applicable limitations period, federal law determines when the limitation period accrues. *Reed*, 995 F.3d at 431. Under federal law, the limitations period begins to run when the plaintiff is aware that he has suffered an injury or has enough information to know that he has been injured. *Id.*; *Russell v. Bd. of Trs.*, 968 F.2d 489, 493 (5th Cir. 1992).

The state trial court denied Gutierrez's DNA testing motion on July 27, 2010. Order, *Ex parte Gutierrez*, No. 98-CR-1391-A (107th Dist. Ct. Cameron Cty. July 27, 2010). Under *Reed*, that denial began Gutierrez's two-year statute of limitations period. There, the plaintiff filed a Section 1983 action challenging the constitutionality of Chapter 64 after an unsuccessful attempt at obtaining DNA testing in state court. 995 F.3d at 428. This Court reaffirmed that the limitations period for a Section 1983

---

[9] Defendants also asserted that the claims against them are barred by sovereign immunity. ROA.663. This Court rejected a similar argument in *Reed*, 995 F.3d at 429 n.2. Defendants therefore do not advance a sovereign-immunity argument now but preserve the right to do so in a future stage of the appeal.

claim accrues when "a plaintiff *first* becomes aware, or should have become aware, that his right has been violated." *Id.* at 431. Reed complained, as Gutierrez does, "that he was denied access to the physical evidence that he wished to test." *Id.* Because he "had the necessary information to know that his rights were allegedly being violated as soon as the trial court denied his motion for post-conviction relief," his claim accrued upon denial of that motion. *Id.* This Court considered, and rejected, Reed's argument that his claims did not accrue until the conclusion of the *appeal* from the trial court's denial of a Chapter 64 motion. *Id.*

Gutierrez had a complete and present cause of action on July 27, 2010, when the trial court denied his first request for postconviction DNA testing. Order, *Ex parte Gutierrez*, No. 98-CR-1391-A, *supra*. *Reed* directly contravenes the district court's holding that Gutierrez's claims did not accrue until the conclusion of the appeal of the denial of his *second* Chapter 64 motion. ROA.828.

## B.  Subsequent developments do not render Gutierrez's suit timely.

The district court held that Gutierrez's claims are timely because of his 2019 motion for postconviction DNA testing. ROA.828. The court found the later motion distinct because the earlier motion arose under a prior version of the statute. ROA.828. Likewise, Gutierrez asserted that his DNA claims did not accrue until his second Chapter 64 proceeding concluded because his second request for DNA testing was "based on new information and evidence that the State had not made available to Mr. Gutierrez at the time he filed his 2010 request." ROA.762.

Those assertions misconstrue the nature of the injury. Gutierrez's arguments sound in a claim for a continuing violation, but there is not "a fresh violation each

day" Gutierrez lacks access to evidence. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). Instead, Gutierrez's injury transpired, and was felt, immediately upon the initial denial of his request for DNA testing. *Reed*, 995 F.3d at 431. This Court recently declined to apply the "continuing violation doctrine" to a claim challenging a sex-offender registration requirement, holding that the claim accrued when the plaintiff first learned of his alleged injury. *Hearn v. McCraw*, 856 F. App'x 493, 496 (5th Cir. 2021) (per curiam). The Court rejected the plaintiff's argument that the requirement that he register annually provided new accruals. *Id.* Likewise, Gutierrez's DNA claims allege one violation—the denial of his request for access to evidence to conduct DNA testing. Gutierrez learned of that injury in 2010. *See Reed*, 995 F.3d at 431. His subsequent unsuccessful attempt to obtain access to evidence to conduct DNA testing was not a "separate breach." *See Hearn*, 856 F. App'x at 497.

The "new" evidence Gutierrez highlighted in the 2019 state court proceedings to suggest his confessions were involuntary and that the eyewitness identifications of him were unreliable is irrelevant for two reasons. First, because the CCA's review of a Chapter 64 motion "does not consider post-trial factual developments," *Reed v. State*, 541 S.W.3d 759, 774 (Tex. Crim. App. 2017), the "new" evidence could not have had any bearing on the state courts' consideration of Gutierrez's request for DNA testing in the first place. Gutierrez cannot justify a later accrual based on his successive Chapter 64 motion simply because it contained irrelevant evidence the earlier motion did not. Second, under *Reed*, successive state court filings like Gutierrez's could not provide new accruals even if supported by new evidence,

because each filing harkens back to the initial injury, which was the denial of access to evidence for DNA testing.

As the district court recognized, Gutierrez cannot seek direct relief of a state court judgment under the *Rooker-Feldman* doctrine, which bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); ROA.826. Instead, Gutierrez can only seek relief on a claim challenging the constitutionality of Chapter 64 itself. ROA.844-45. In his response to Defendants' motion to dismiss, he expressly (and appropriately) disclaimed any argument that "the state courts erred in their application of state law." ROA.741. He instead contended that he "does in fact allege that the procedures provided under Chapter 64, both facially and as 'authoritatively construed' by the Texas courts violate due process." ROA.741 (citation omitted). In that regard, it would have been logical for Gutierrez to bring a federal constitutional challenge to Chapter 64 in 2010, because Chapter 64 lacked a provision for punishment-related DNA testing back then, too. *Ex parte Gutierrez*, 337 S.W.3d at 901; *see* ROA.620–21, 2218. Gutierrez's claim challenging the absence of such a provision in Chapter 64 is his only claim remaining in this case after the district court whittled down the counts in his complaint. *Supra* at 10. Gutierrez has no explanation for why he could not have brought the exact facial challenge he asserts now after his first motion for DNA testing was denied over a decade ago.

Likewise, the Legislature's 2011 modest amendment to Chapter 64—which removed a requirement that a petitioner show that he was not at fault for the lack of DNA testing at the time of trial—did not constitute a fresh accrual. *See Skinner v. Switzer*, No. 2:09–CV–281, 2011 WL 5331656, at *2 (N.D. Tex. Oct. 27, 2011) (describing the 2011 amendment to Chapter 64). The amendment did not expand Gutierrez's ability to seek DNA testing. Instead, the "no fault" provision was one basis of many that the CCA denied testing in Gutierrez's first postconviction DNA testing proceedings. *See Ex parte Gutierrez*, 337 S.W.3d at 899-902. That Gutierrez waited eight years to seek DNA testing a second time after the amendment belies any notion that the amendment mattered to his claims and should serve as a basis to restart the limitations period.

Finding a delay of accrual based on statutory amendments, especially minor ones, would allow for indefinite delays in defendants' pursuit of post-conviction DNA testing remedies. For example, Chapter 64 was amended in 2015 to allow an inmate to seek "DNA testing of evidence that has a reasonable likelihood of containing biological material," as opposed to only evidence the movant proved contained biological material. *See Reed*, 541 S.W.3d at 772 (discussing amendment to Chapter 64). Under the district court's theory, that amendment provides a new window for any defendant to bring a challenge to Chapter 64, regardless how long ago a state trial court denied a DNA testing motion. Indeed, any change in Chapter 64 could constitute a new accrual. That would contradict how this Court has handled insubstantial changes to policies vis-à-vis the statute of limitations. *Cf. Whitaker v. Collier*, 862 F.3d 490, 495-96 (5th Cir. 2017) (affirming dismissal as time-barred civil-rights

complaint challenging change in TDCJ execution protocol from the use of manufac-tured to compounded pentobarbital because the change to TDCJ's protocol was not "substantial"). Perhaps for that reason, Gutierrez affirmatively disclaimed reliance on the 2011 amendment to Chapter 64 as a basis for finding his claims timely. ROA.1887. This Court should too.

### C.  Gutierrez is not entitled to equitable tolling.

Finally, Gutierrez argued below that his purported discovery of a single piece of evidence—a hair found on the victim, *Gutierrez v. State*, 2020 WL 918669, at *5—almost ten years after his initial Chapter 64 litigation constituted a new accrual. ROA.2848. But his purported discovery of a piece of evidence has nothing to do with the constitutionality of Chapter 64. Consequently, his argument is more appropri-ately understood as an argument for equitable tolling, which requires a plaintiff to show he diligently pursued his rights and the existence of an extraordinary circum-stance that stood in the way of a timely filing. *See Thompson v. Rovella*, 734 F. App'x 787, 790 (2d Cir. 2018); *Savory*, 469 F.3d at 674. But Gutierrez's failure to exercise diligence during the near decade that followed the state court's denial of his first Chapter 64 motion disentitles him to equitable tolling. *Thompson*, 734 F. App'x at 790-91.

Moreover, although fraudulent concealment can toll the limitations period, Gutierrez did not allege, and has not even attempted to show, that the State wrong-fully concealed evidence. Gutierrez's assertions that he is innocent and that DNA testing could bear that out would justify equitable tolling in virtually every case in-volving a criminal defendant's unsuccessful effort to obtain postconviction DNA

testing in state court. *Savory*, 469 F.3d at 674 (finding the plaintiff's continued assertion of innocence insufficient to warrant equitable tolling). Gutierrez has thus failed to allege, let alone prove, facts sufficient to justify tolling of his limitations period.

## III. Chapter 64 Is Constitutional.

### A. Texas's DNA testing procedures are consistent with Supreme Court precedent.

Chapter 64 requires a convicted person seeking DNA testing of evidence to show by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. Tex. Code Crim. Proc. art. 64.03(a)(2)(A). The state trial court may order forensic DNA testing only if it finds in the person's favor on that issue, concludes that "identity was or is at issue in the case," and determines that the evidence still exists, can be subjected to DNA testing, and has been subjected to a sufficient chain of custody. *Id.* art. 64.03(c).

The Supreme Court has already held that a similar legal framework is constitutionally adequate to protect a defendant's due process rights. *Osborne*, 557 U.S. at 69–70. The state law at issue in *Osborne* required a showing that the results of DNA testing would be "sufficiently material" and "would likely be conclusive" on the issue of the convicted person's innocence. *Id.* at 65, 68, 70. The Court found that those procedures "are similar to those provided for DNA evidence by federal law and the law of other States, and they are not inconsistent with the 'traditions and conscience of our people' or with 'any recognized principle of fundamental fairness.'" *Id.* at 70 (cleaned up).

The district court appropriately recognized that *Osborne* prevented Gutierrez from prevailing on his challenge to Chapter 64's preponderance-of-the-evidence standard. ROA.2213-14. Indeed, the district court acknowledged that "the CCA has articulated how it believes Gutierrez's petition is lacking, and implied what would be required for a successful petition." ROA.2214. The district court's holding as to Chapter 64's evidentiary standard was also consistent with this Court's order vacating the district court's stay of the execution. The Court reasoned that because of Gutierrez's confession to being inside Harrison's home, a "search for DNA on the victim's clothing and elsewhere would not reasonably lead to evidence that would exclude Gutierrez as an accomplice." *Gutierrez*, 818 F. App'x at 312. And because Gutierrez could not demonstrate that Chapter 64 operated unconstitutionally as to him, he also failed to show that Chapter 64 is facially unconstitutional.[10] *United States v. Stevens*, 559 U.S. 460, 472 (2010) (requiring plaintiff bringing facial challenge to "establish that no set of circumstances exists under which the law would be valid or that the statute lacks any plainly legitimate sweep.") (cleaned up)).

## B.  Chapter 64 is reconcilable with Article 11.071.

The district court's favorable comparison of Chapter 64 to the challenged state law in *Osborne* should have ended the inquiry. Instead, the district court went on to hold that the absence in Chapter 64 of a provision for testing to prove innocence of the death penalty renders Article 11.071 "illusory." ROA.2216; *see* Tex. Code Crim.

---

[10] A plaintiff can also bring an overbreadth challenge, *Stevens*, 559 U.S. at 473, but Gutierrez never asserted one below.

Proc. art. 11.071, § 5(a)(3) (allowing a defendant to file a subsequent habeas petition if the defendant establishes that "by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor" on special issues related to the death penalty). The district court thereby found constitutional error in Texas's creation of statutory "safety valves," despite the substantial leeway states have in crafting such postconviction frameworks. *See Rocha v. Thaler*, 619 F.3d 387, 403 (5th Cir. 2010).

The Legislature was entitled to deference that DNA testing should be permitted only for the purpose of demonstrating innocence of the crime of conviction. *See Osborne*, 557 U.S. at 69. As with postconviction DNA testing, there is no due process right to collateral proceedings at all. *See Murray v. Giarratano*, 492 U.S. 1, 7-8 (1989). Indeed, "[s]tate collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either the trial or appeal." *Id.* at 10. Thus, the relevant question here is "whether consideration of [Gutierrez's] claim within the framework of the State's procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Osborne*, 557 U.S. at 69 (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)).

Beginning its analysis, the district court mistakenly presumed that Article 11.071 wholly codifies an "actual-innocence-of-the-death-penalty" exception. In *Sawyer v. Whitley*, 505 U.S. 333 (1992), the Supreme Court explained that the "actual innocence" requirement focuses "on those elements that render a defendant eligible for

the death penalty." *Id.* at 347. The CCA has never interpreted Article 11.071 to un-equivocally incorporate *Sawyer* in all its particulars. *See Ex parte Blue*, 230 S.W.3d 151, 160 n.42 (Tex. Crim. App. 2007) ("We hesitate to declare that Article 11.071, Section 5(a)(3) *wholly* codifies the Supreme Court's doctrine of 'actual innocence of the death penalty,' even inasmuch as it has tied the exception to the bar on subse-quent writs to the statutory criteria for the death penalty under Article 37.071.").[11] In fact, Defendants have not uncovered a case in which the CCA held that a claim that alleges new evidence contradicted the jury's verdict on the anti-parties special issue falls within the ambit of Article 11.071. The district court did not locate such a case either. Nor did Gutierrez.

But even if Article 11.071 does codify *Sawyer*, the district court and Gutierrez muddled the concepts of *ineligibility* of the death penalty and *unsuitability* of the death penalty. DNA evidence would not have changed Gutierrez's eligibility for the death penalty; it only would have affected whether the death penalty was a suitable punishment. This Court has emphasized that "[e]vidence that might have per-suaded the jury to decline to impose the death penalty is irrelevant under *Sawyer*." *Rocha*, 626 F.3d at 825-26. "The quality of the mitigation evidence the petitioner would have introduced at sentencing has no bearing on his claim of actual innocence

---

[11] This Court has cited *Ex parte Blue* for the proposition that the Texas Legisla-ture intended to codify *Sawyer* in Article 11.071. *Rocha v. Thaler*, 626 F.3d 815, 822 (5th Cir. 2010). But the Court acknowledged that it is "obliged to construe and apply § 5(a)(3) as the CCA construes and applies it." *Id.* The Court thus can and should look to post-*Ex parte Blue* developments to determine how the CCA construes Arti-cle 11.071.

of the death penalty." *Id.* at 825. And the Supreme Court has cautioned that the actual-innocence-of-the-death-penalty exception "must be subject to determination by relatively objective standards." *Sawyer*, 505 U.S. at 341.

The jury's assessment of Gutierrez's culpability under the special issue that was central to the jury's calculus—whether the defendant "intended to kill the deceased or another or anticipated that a human life would be taken"—is necessarily a subjective one. Tex. Code Crim. Proc. art. 37.071, § 2(b)(2); *see State v. Miles*, 414 P.3d 680, 683 (Ariz. 2018) (noting that the "culpable reckless mental state" analysis for purposes of evaluating culpability for the death penalty "is a subjective one"). Because of Gutierrez's confession and the copious evidence placing him in Harrison's home at the time of the murder, the DNA evidence Gutierrez seeks to test would not show "by clear and convincing evidence" that no rational juror would answer in the State's favor on that special issue. Tex. Code Crim. Proc. art. 11.071, § 5(a)(3).

In fact, even accepting the "implausible scenario" that Gutierrez was not present in Harrison's home when she was murdered, the evidence of his extensive involvement in the planning and execution of the late-night robbery—including his own admission that he masterminded "the rip-off"—would have been enough for a jury to find that he anticipated that a human life would be taken. *Gutierrez*, 337 S.W.3d at 901 (noting that even if Chapter 64 did apply to punishment-stage evidence, Gutierrez would be death-eligible given that he "played a major role in the underlying robbery"). The same evidence that the CCA and this Court found doomed his Chapter 64 claim is therefore also fatal to any potential arguments he might raise under Article 11.071.

Moreover, the district court's assertion that the absence of a provision for punishment-related DNA testing in Chapter 64 renders Article 11.071 "illusory" is factually wrong. ROA.2216. The CCA regularly considers applications under that provision and, in fact, has granted merits review of claims alleging ineligibility for the death penalty under it. *See, e.g.*, *Ex parte Milam*, No. WR-79,322-04, 2021 WL 197088, at *1 (Tex. Crim. App. Jan. 15, 2021) (per curiam); *Ex parte Weathers*, No. WR-64,302-02, 2012 WL 1378105, at *1 (Tex. Crim. App. Apr. 18, 2012) (per curiam).

And the district court's conclusion that Chapter 64 "barricades" a right to relief under Article 11.071, ROA.2216-17, discounted the possibility that other evidence apart from DNA material may provide viable support in an Article 11.071 proceeding. The defendant might discover new phone records, a witness might recant crucial testimony, or the defendant might find newly discovered video or audio evidence. The court did not consider those scenarios. Instead, it summarily concluded that only a "few" convicted defendants can show actual innocence without DNA testing. ROA.2216. But the court offered no historical, legal, or quantitative support for that assertion. Gutierrez bore the burden of proving a constitutional infirmity. *See Richardson v. Texas Secretary of State*, 978 F.3d 220, 229 (5th Cir. 2020) (noting that the plaintiff has the burden of establishing a cognizable liberty or property interest to state a procedural due process claim); *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). He failed to meet that burden, and the district court's threadbare claim that DNA testing is essentially the only viable path for relief under Article 11.071 is too thin a reed to hold the Legislature's duly enacted statutory

scheme unconstitutional. *Cf. Smith v. Decker*, 312 S.W.2d 632, 635 (Tex. 1958) ("[W]hen a law duly enacted is attacked as unconstitutional, the law is presumed to be valid and doubts as to its constitutionality should always be resolved in favor of constitutionality.").

In balancing the "traditional notions of finality" that convictions provide and the risks of upsetting those notions by allowing unfettered access to DNA testing, the Legislature did not "transgress[] . . . fundamental fairness." *Osborne*, 557 U.S. at 69, 72. Instead, the Legislature sensibly exercised its constitutionally delegated role to shape the manner and scope of DNA testing in postconviction habeas proceedings. *Id.* at 70; *cf. Sawyer*, 505 U.S. at 340 (noting that the actual innocence concept "does not translate easily into the context of an alleged error at the sentencing phase of a trial on a capital offense" (cleaned up)). That the district court would have struck that balance differently does not signal a problem of constitutional dimension. And even the "fact that [Chapter 64] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Finally, the contours of the district court's declaratory judgment are hazy, most likely because of Gutierrez's lack of standing. *Supra* at 17-20. That lack of clarity is also a remedies problem. At its broadest, the court appeared to find any application of Chapter 64 unconstitutional when a defendant claims that he is innocent of the death penalty. That would theoretically open the door to DNA testing any time a defendant files a subsequent habeas petition under Article 11.071. But as the Supreme Court recently reiterated, "[w]hen the right invoked is that to equal

treatment, the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698 (2017) (internal quotation marks omitted). And "[b]ecause the manner in which a State eliminates discrimination 'is an issue of state law,' . . . upon finding state statutes constitutionally infirm, [the Supreme Court] ha[s] generally remanded to permit state courts to choose between extension and invalidation." *Id.* at 1698 n.23 (quoting *Stanton v. Stanton*, 421 U.S. 7, 18 (1975)).

"The issue turns on what the legislature would have willed." *Id.* at 1701 n.29. "[W]hich would the political branches choose? It would take a court bolder than this one to predict . . . that extension, not invalidation, would be the probable choice." *Olsen v. DEA*, 878 F.2d 1458, 1464 (D.C. Cir. 1989). Given the Legislature's caution against expanding Chapter 64, it is possible, if not probable, that the Legislature would have preferred a system prohibiting DNA testing altogether to the open-ended regime that the district court appears to have ordered. The district court erred in issuing the declaratory judgment that it did without consideration of the remedy that the State would prefer to fix the purported constitutional defects with its DNA testing regime. This Court should "leave it to [the State] to select" how to remedy the purported problem with its law. *Morales-Santana*, 137 S. Ct. at 1686.

## Conclusion

The Court should reverse the district court's partial final judgment and remand the case to the district court with instructions to enter judgment for Defendants on Gutierrez's DNA testing claims. Alternatively, the partial final judgment should be vacated and this matter should be remanded for further proceedings.

Respectfully submitted.

/s/ Edward Sandoval
EDWARD SANDOVAL
First Assistant District Attorney
Cameron County, Texas
964 East Harrison St.
Brownsville, Texas 78520

*Counsel for Defendant-Appellant Luis V. Saenz*

/s/ Ricardo Navarro
RICARDO NAVARRO
Denton Navarro Rocha Bernal & Zech, P.C.
701 E. Harrison, Suite 100
Harlingen, Texas 78550

*Counsel for Defendant-Appellant Felix Sauceda*

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JUDD E. STONE II
Solicitor General

/s/ Michael R. Abrams
MICHAEL R. ABRAMS
Assistant Solicitor General
Michael.Abrams@oag.texas.gov

JEFFERSON DAVID CLENDENIN
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

*Counsel for Defendant-Appellant Luis V. Saenz*

## Certificate of Service

On February 14, 2022, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Michael R. Abrams
Michael R. Abrams

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,448 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Michael R. Abrams
Michael R. Abrams