No. 21-70009

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### RUBEN GUTIERREZ,
*Plaintiff-Appellee*,

v.

### FELIX SAENZ and LUIS SAUCEDA,
*Defendants-Appellants*.

---

**On Appeal from the United States District Court**
**For the Southern District of Texas, Brownsville Division, No. 1:09-CV-22**

---

### BRIEF OF PLAINTIFF-APPELLEE

---

Richard W. Rogers, III
710 Buffalo Street, Ste. 202
Corpus Christi, TX 78401
(361) 888-7620
rwrogersiii@aol.com

Peter Walker
Assistant Federal Defender
Federal Community Defender for the
Eastern District of Pennsylvania
Suite 545 West, The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520
peter_walker@fd.org

Counsel for Plaintiff-Appellee

Dated: August 1, 2022

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following persons and entities as described by Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Plaintiff-Appellee**

> Ruben Gutierrez
> TDCJ Polunsky Unit
> Livingston, Texas

**Counsel for Plaintiff-Appellee**

> Richard W. Rogers, III
> Law Offices of Richard W. Rogers, III
>
> Shawn Nolan
> Peter Walker
> Federal Community Defender Office
> For the Eastern District of Pennsylvania

**Appellants**

> Luis Saenz, District Attorney
> Cameron County District Attorney's Office
>
> Felix Sauceda, Jr., Chief
> Brownsville Police Department

**Defendants (below, not part of this appeal)**

> Brian Collier, Executive Director
> Texas Department of Criminal Justice
>
> Bobby Lumpkin, Director
> Texas Department of Criminal Justice,
> Correctional Institutions Division

i

Kelly Strong, Senior Warden
Huntsville Unit, Texas Department of Criminal Justice,
Correctional Institutions Division

**Counsel for Appellants**

Jefferson Clendenin, Assistant Attorney General
Office of the Attorney General of Texas

**Counsel for Defendants Collier, Lumpkin & Lewis (below, not part of this appeal)**

Leah Jean O'Leary
Office of the Attorney General of Texas

/s/ Peter Walker
Peter Walker
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of
Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3 and Federal Rule of Appellate Procedure 34(a)(1), Appellee Ruben Gutierrez respectfully requests oral argument. This appeal presents complex arguments regarding the scope of the due process protections announced by the Supreme Court in *Skinner v. Switzer*, 562 U.S. 521 (2011). Appellants have also raised a statute of limitations defense that was rejected below and have raised a new standing argument here for the first time. For these reasons and others, Appellee believes that oral argument would be helpful to the Court.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF AUTHORITIES ...................................................................................v

STATEMENT OF THE ISSUES.............................................................................1

STATEMENT OF THE CASE..................................................................................1

SUMMARY OF ARGUMENT ..............................................................................15

ARGUMENT ..........................................................................................................17

I.    MR. GUTIERREZ MEETS ARTICLE III'S STANDING
      REQUIREMENTS. ......................................................................................17

      A.    Mr. Gutierrez Has Suffered an Injury in Fact.......................................17

      B.    Mr. Gutierrez's Injury Is Fairly Traceable to Appellants' Conduct......19

      C.    Mr. Gutierrez's Injury Has Been, and Remains Likely to Be,
            Redressed by Judgment in His Favor. ...................................................22

II.   MR. GUTIERREZ'S CLAIM IS NOT TIME-BARRED.............................29

      A.    Mr. Gutierrez's Claim Is Timely Under the Statute of Limitations. .....30

      B.    Should this Court Find that Mr. Gutierrez's Claim Is Untimely,
            He Is Entitled to Equitable Tolling........................................................34

III.  THE CONFLICT BETWEEN § 5(a)(3) AND CHAPTER 64
      RENDERS CHAPTER 64 UNCONSTITUTIONAL. ..................................35

CONCLUSION ......................................................................................................46

# TABLE OF AUTHORITIES

## Federal Cases

*Brackeen v. Haaland*,
  994 F.3d 249 (5th Cir. 2021) (en banc) ..................................... *passim*

*Brady v. Maryland*,
  373 U.S. 83 (1963) ...................................................................... 6

*Burlington Ins. Co. v. Christ for the Nations, Inc.*, No. 3:05-CV-1164-L ECF,
  2006 U.S. Dist. LEXIS 57973 (N.D. Tex. Aug. 17, 2006) ............................... 23

*California v. Texas*,
  141 S. Ct. 2104 (2021) ............................................................... 27, 28

*Contender Farms, L.L.P. v. U.S. Dep't of Agriculture*,
  779 F.3d 258 (5th Cir. 2015) ......................................................... 18-19

*Dep't of Tex., Veterans of the Foreign Wars of U.S. v. Tex. Lottery Comm'n*,
  760 F.3d 427 (5th Cir. 2014) (en banc) ............................................... 23

*District Attorney's Office for the Third Judicial District v. Osborne*,
  557 U.S. 52 (2009) ..................................................................... *passim*

*Enmund v. Florida*,
  458 U.S. 782 (1982) .................................................................... 37

*Gartrell v. Gaylor*,
  981 F.2d 254 (5th Cir. 1993) .......................................................... 30

*Gutierrez v. Saenz*,
  141 S. Ct. 127 (2020) ................................................................. 12

*Gutierrez v. Saenz*,
  141 S. Ct. 1260 (2021) ................................................................ 12

*Gutierrez v. Saenz*,
  818 F. App'x 309 (5th Cir. 2020) ..................................................... 11

*Gutierrez v. Stephens*,
590 F. App'x 371 (5th Cir. 2014) .......................................................... 6

*Gutierrez v. Stephens, No. 1:09-cv-00022*,
2013 WL 12092544 (S.D. Tex. Oct. 3, 2013) .................................... 6

*Haynes v. Quarterman*,
526 F.3d 189 (5th Cir. 2008) ................................................................ 39

*Skinner v. Switzer*,
562 U.S. 521 (2011) ............................................................... 2, 15, 29

*Inclusive Cmtys. Project v. Dep't of Treasury*,
946 F.3d 649 (5th Cir. 2019) ........................................................ 23, 28

*K.P. v. LeBlanc*,
627 F.3d 115 (5th Cir. 2010) .............................................................. 20

*LaMar v. Ebert*,
681 F. App'x 279 (4th Cir. 2017) ................................... 19, 20, 21, 29

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ......................................................... 17, 18, 19

*Osborne v. District Attorney's Office*,
445 F. Supp. 2d 1079 (D. Alaska 2006) ......................................... 29

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001) ............................................................. 30

*Reed v. Goertz*,
995 F.3d 425 (5th Cir. 2021) ....................................................... 30, 31

*Rocha v. Thaler*,
626 F.3d 815 (5th Cir. 2010) ........................................ 35, 39, 40, 41

*Rodriguez v. Holmes*,
963 F.2d 799 (5th Cir. 1992) ............................................................. 34

*Ruiz v. Estelle*,
  650 F.2d 555 (5th Cir. 1981) ............................................................. 11

*Sawyer v. Whitley*,
  505 U.S. 333 (1992) ............................................... 35, 36, 38, 39, 40

*Timberlake v. A.H. Robins Co.*,
  727 F.2d 1363 (5th Cir. 1984) ......................................................... 35

*Tison v. Arizona*,
  481 U.S. 137 (1987) ..................................................................... 9, 37

**Federal Statutes**
42 U.S.C. § 1983 ........................................................................... 10, 15

**State Cases**
*Ex parte Blue*,
  230 S.W.3d 151 (Tex. Crim. App. 2007) ........................... 35-36, 38-39

*Ex parte Gutierrez*,
  337 S.W.3d 883 (Tex. Crim. App. 2011) ................................... *passim*

*Ex parte Gutierrez*, No. 59-552-01,
  2004 WL 7330936 (Tex. Crim. App. Sept. 15, 2004) ........................ 4

*Ex parte Gutierrez*, No. 59-552-01,
  2008 WL 2059277 (Tex. Crim. App. May 14, 2008) ......................... 4

*Ex parte Milam*, No. WR-79,322-04,
  2021 WL 197088 (Tex. Crim. App. Jan. 15, 2021) ......................... 43

*Ex Parte Weathers*, No. WR-64,302-02
  2012 WL 1378105 (Tex. Crim. App. Apr. 18, 2012) ....................... 43

*Gutierrez v. State*,
  307 S.W.3d 318 (Tex. Crim. App. 2010) ........................................ 5

*Gutierrez v. State*, No. AP-77,089,
  2020 WL 918669 (Tex. Crim. App. Feb. 26, 2020) .................. 10, 12-13, 33, 36

*Gutierrez v. State*, No. AP-77,102,
  2022 WL 946165 (Tex. Crim. App. Mar. 30, 2022) ............................ 14, 16, 26

*Hayes v. Pin Oak Petroleum, Inc.*,
  798 S.W.2d 668 (Tex. App.—Austin 1990, writ denied) ................................ 25

*Johnson v. State*,
  853 S.W.2d 527 (Tex. Crim. App. 1992) ......................................................... 43

*Valle v. State*,
  109 S.W.3d 500 (Tex. Crim. App. 2003) ........................................................ 42

## State Statutes

Tex. Civ. Prac. and Rem. Code § 16.003 ............................................................. 30
Tex. Code Crim. Proc. Ann. art. 37.07 ............................................................... 37
Tex. Code Crim. Proc. Ann. art. 37.071 .............................................................. 41
Tex. Code Crim. Proc. Article 64 ................................................................. *passim*
Tex. Gov't Code Ann. § 311.032 ......................................................................... 26

## Rules

Fed. R. App. Proc. 32 .......................................................................................... 47
Fifth Circuit Rule 25.2.13 .................................................................................... 47
Fifth Circuit Rule 28.2.1 ........................................................................................ i
Fifth Circuit Rule 28.2.3 ........................................................................................ i

## Other

36 C.J.S. *Federal Courts* § 300 (March 2022) ..................................................... 31

## STATEMENT OF THE ISSUES

1.     Whether the state officials with custody of the evidence are the proper defendants in a suit for lack of access to evidence for DNA testing, as the Supreme Court permitted in *Skinner* and has been consistently permitted thereafter by lower courts.

2.     Whether Mr. Gutierrez's suit is timely based on new legal and factual developments since his first motion for DNA testing was denied and whether, if not, he is entitled to equitable tolling.

3.     Whether Texas's post-conviction DNA statute, as authoritatively construed by the CCA, is inconsistent with Texas law governing subsequent habeas petitions because the DNA statute does not allow testing to demonstrate innocence of the death penalty.

## STATEMENT OF THE CASE

### Trial evidence

Mr. Gutierrez was convicted of murder and related offenses in the killing of Escolastica Harrison. Mr. Gutierrez was one of several men who frequently visited and drank with Ms. Harrison's nephew, Avel Cuellar, who lived with his aunt, Ms. Harrison. *State v. Gutierrez*, No. 98-CR-1391 (107th Dist. Ct., Cameron County,

Tex.), 18 RR 17-18.[1] Mr. Cuellar often talked about how much money Ms. Harrison kept in her home. *Id.* at 46.

Mr. Cuellar testified that he spent most of the afternoon and evening of September 5, 1998, drinking at a VFW hall. 17 RR 111-12, 137, 154. After an absence from the VFW hall, he gave the waitress a $100 bill as a tip. 19 RR 96. Mr. Cuellar's salary at the time was $150 per week. 17 RR 101. He returned home at about 1:00 a.m. the next morning and could not immediately find his aunt. 17 RR 113-16. He eventually found her in her bedroom, where she had been assaulted and killed. 17 RR 114, 117.

Ms. Harrison had been beaten and stabbed, possibly with a screwdriver. 19 RR 224-42, 266-67. The police recovered a substantial amount of physical evidence from the crime scene, including an unidentified footprint in blood, 19 RR 94-96, 107; an unidentified hair wrapped around one of Ms. Harrison's fingers, *id.* at 263; and unidentified blood stains in a bathroom in the trailer, on the screen door to the back portion of the residence, and on a couch in the office. 18 RR 249-50. The State did not conduct DNA testing of this evidence prior to trial, nor did the

---

[1] Trial testimony is cited as volume number, followed by RR (Reporter's Record), followed by the page number.

defense request such testing pre-trial. *Ex parte Gutierrez*, 337 S.W.3d 883, 895-97 (Tex. Crim. App. 2011).

Police recovered stolen cash and merchandise from Rene Garcia and Pedro Gracia. Garcia and Gracia gave statements implicating themselves and Mr. Gutierrez, but neither of their statements was introduced at trial. Police arrested Mr. Gutierrez on September 13, 1998. He gave police three statements. In the first statement, he admitted only knowing of a plan to rob Ms. Harrison and sharing in the proceeds. In the second statement, he admitted conspiring with Mr. Cuellar to steal from her. In the third statement, he admitted being inside the house but denied assaulting her. ROA.2753-56.

The primary evidence at trial was Mr. Gutierrez's third statement. There were also eyewitness identifications of Mr. Gutierrez in the neighborhood and near Ms. Harrison's home on the day in question, but these were not conclusive because Mr. Gutierrez was known to frequent the area and the time of the assault was not established with any precision. The State's theory was that Mr. Gutierrez and Mr. Garcia committed the assault on Ms. Harrison, while Mr. Gracia was the getaway driver. The State also urged, however, that it did not matter whether Mr. Gutierrez participated in the assault or was inside Ms. Harrison's home, because he was guilty under Texas's law of parties in any event. 20 RR 76.

At trial, Mr. Gutierrez presented alibi testimony for much of the evening in question. *Id.* at 8-11, 26, 33-35. Since the time of his arrest, Mr. Gutierrez has denied participating in the assault on Ms. Harrison. He has also denied knowing of any plan to assault or kill Ms. Harrison and being inside her home on the night of the murder.

The jury returned a general verdict that Mr. Gutierrez was guilty of capital murder. Based on the jury's sentencing findings, he was sentenced to death. On direct appeal, the CCA affirmed the convictions and death sentence. *Gutierrez v. State*, No. 73,462 (Tex. Crim. App. Jan. 16, 2002).

**State and federal habeas proceedings**

Mr. Gutierrez sought state habeas relief in the Texas courts. Ultimately, the Texas courts denied all of his claims for relief. *See Ex parte Gutierrez*, No. 59,552-01, 2004 WL 7330936 (Tex. Crim. App. Sept. 15, 2004); *Ex parte Gutierrez*, No. 59,552-01, 2008 WL 2059277 (Tex. Crim. App. May 14, 2008).

In 2009, Mr. Gutierrez sought appointment of counsel and filed a federal habeas petition. *Gutierrez v. Stephens*, No. 1:09-cv-00022 (S.D. Tex.). In the habeas petition, appointed counsel, Margaret Schmucker, Esq., raised the issue of DNA testing for the first time. *Id.*, ECF No. 2. Mr. Gutierrez sought, and the district court granted, a stay of the proceedings so that he could pursue additional claims in state court, including a request for DNA testing. *Id.*, ECF Nos. 10, 12.

4

**Initial request for DNA testing**

Mr. Gutierrez returned to state court and sought the appointment of counsel and DNA testing pursuant to Texas Code of Criminal Procedure Chapter 64. Mr. Gutierrez sought testing, using then-available procedures, of a shirt belonging to Avel Cuellar that contained blood stains, nail scrapings from the decedent, blood samples from various locations, and a single loose hair found in the decedent's hand. *Ex parte Gutierrez*, 337 S.W. 3d at 888. The trial court initially denied only the motion for appointment of counsel. Mr. Gutierrez attempted to appeal but the appeal was dismissed for lack of jurisdiction because the denial of counsel was found not to be an immediately appealable order. *Gutierrez v. State*, 307 S.W.3d 318, 319 (Tex. Crim. App. 2010). The trial court subsequently denied the motion for DNA testing and Mr. Gutierrez appealed.

The CCA affirmed the denial of relief. The CCA relied heavily on Texas's law of parties, ruling that even if Mr. Gutierrez were to prove that he did not participate in the assault on Ms. Harrison, there were no reasonable grounds for testing under Chapter 64 because, as one of the parties, he was still guilty of capital murder. *Ex parte Gutierrez*, 337 S.W.3d at 894-95. Furthermore, he could not obtain testing under a provision of former Chapter 64 because he was "at fault" for not seeking DNA testing at trial. *Id.* at 895-97 (citing former Tex. Crim. Proc.

5

Code § 64.01(b)(1)(B)).[2] Based on representations by the State, the CCA also ruled

that the "single loose hair" was no longer in State custody and could not be tested.

*Id.* at 897-98. The CCA further ruled that even if exculpatory results were obtained

from testing of the available samples, Mr. Gutierrez could not show a reasonable

probability that he would not have been convicted under Texas's law of parties. *Id.*

at 898-901. Finally, it held that testing is not available under Chapter 64 to show

that a death-sentenced prisoner is innocent of the death penalty. *Id.* at 901.

After the case returned to federal court, the federal district court dismissed

the habeas petition. *See Gutierrez v. Stephens*, No. 1:09-cv-00022, 2013 WL

12092544 (S.D. Tex. Oct. 3, 2013). This Circuit denied Mr. Gutierrez's request for

a certificate of appealability. *Gutierrez v. Stephens*, 590 F. App'x 371, 373 (5th

Cir. 2014), *cert. denied*, 136 S. Ct. 35 (2015).

In 2015, Mr. Gutierrez filed a motion for miscellaneous relief in the trial

court, seeking independent DNA testing of potentially exculpatory material under

*Brady v. Maryland*, 373 U.S. 83, 87 (1963). Initially, the State did not oppose Mr.

Gutierrez's request for DNA testing. In 2018, however, the trial court signed the

---

[2] In 2011, the Texas Legislature amended article 64.01(b)(1)(B) of the Texas
Code of Criminal Procedure, deleting subsection (B) of the article so as to entirely
remove the "no fault" requirement. Tex. Code Crim. Proc. Ann. art. 64.01(b)(1), *as
amended by* Act of May 20, 2011, 82d Legis., R.S., ch. 366, § 1.

State's proposed order denying the motion. Shortly thereafter, the trial court issued a warrant for Mr. Gutierrez's execution.

During proceedings in federal court, appointed habeas counsel Margaret Schmucker was removed from this Circuit's CJA appointment panel. Thereafter, undersigned counsel were appointed to represent Mr. Gutierrez and moved for a stay of execution. The federal district court granted the stay motion. *Gutierrez v. Davis*, No. 1:09-cv-00022, Order (S.D. Tex. Aug. 22, 2018). This Circuit denied the State's motion to vacate the stay. *Gutierrez v. Davis*, No. 18-70028, Order (5th Cir. Sept. 10, 2018).

**Second request for DNA testing**

Once the stay had been granted, undersigned counsel began efforts to obtain relevant records and review files at the Cameron County District Attorney's Office. Access to at least some of the files was provided in May 2019. Following review of those files, undersigned counsel filed a second motion for DNA testing pursuant to Chapter 64.

The second motion for DNA testing sought testing of essentially the same materials as the first motion, i.e., Ms. Harrison's clothing and fingernail scrapings, Avel Cuellar's clothing, blood stains from the decedent's house, and the hair found in the decedent's hand. Several factors distinguished the second motion from the first, however: (1) Texas had repealed the "no fault" provision of Chapter 64,

eliminating that as a basis for denying testing; (2) while the State claimed in the prior proceedings that it no longer had custody of the hair found in the decedent's hand, undersigned counsel located it in a sealed envelope in the District Attorney's files; and (3) advances in DNA testing mean that it is now possible to obtain usable samples from degraded samples and "touch" DNA from items with which a perpetrator has come into contact. ROA.84-85.

The availability of the hair found in the decedent's hand and the advances in DNA testing made significant factual differences by comparison to the time of the first DNA motion with respect to the evidence that DNA testing would likely produce. While it is not clear if the hair contains a root (which was needed under earlier DNA testing protocols), a genetic profile can be obtained from it using mitochondrial DNA testing. ROA.86, 101. Additionally, recent advances in DNA technology make it reasonably likely that testing could obtain touch DNA left on the decedent's nightgown by her assailants. ROA.84-85, 102-03.

The information from these newly available forms of DNA testing would be added to that which could have been obtained previously, including from the decedent's fingernail scrapings, which include apparent blood, *see* ROA.109. The scrapings are highly likely to contain probative biological evidence. ROA.85-86, 90, 101. Furthermore, DNA testing and other tests of Avel Cuellar's clothing and

bloodstains found in the decedent's home are also likely to contain probative evidence. ROA.86-87, 89-90.

The State's theory at trial was that Mr. Gutierrez and Mr. Garcia committed the assault on Ms. Harrison, while Mr. Gracia was the getaway driver. The DNA evidence could establish to a jury's satisfaction one of two alternate scenarios: (1) that the assailants were Mr. Garcia and Mr. Gracia (if only their DNA were found on the hair in the decedent's hand and her nightgown); or (2) that the assailants were Mr. Cuellar and Mr. Garcia and/or Mr. Gracia (note that Mr. Cuellar had no known association with Mr. Gracia or Mr. Garcia, so any deposits from those persons on Mr. Cuellar's clothing would be incriminating). Even if such evidence would not exonerate Mr. Gutierrez of the murder under Texas's law of parties, it could well persuade a jury that, as a non-assailant, Mr. Gutierrez was not eligible for the death penalty, either because he was not a major participant or because his mental state was not one of reckless indifference. *See Tison v. Arizona*, 481 U.S. 137, 157 (1987) (Eighth Amendment prohibits the death penalty for participant in a felony murder unless his participation in the felony was major and he acted with reckless indifference).

Based on the newly available evidence (the hair that was previously thought to be unavailable and the new DNA testing procedures), Mr. Gutierrez filed a renewed motion for DNA testing. The trial court initially granted the renewed

motion, but after the State filed a response and proposed order denying the testing, the trial court reversed course and signed the State's proposed order. ROA.66-68.

Mr. Gutierrez appealed. The CCA affirmed the denial of relief. *Gutierrez v. State*, No. AP-77,089, 2020 WL 918669 (Tex. Crim. App. Feb. 26, 2020). In a decision largely tracking its prior analysis, the court ruled that Mr. Gutierrez could not show he would not have been convicted if exculpatory results had been obtained by DNA testing. *Id.* at *5-8. It then quoted verbatim its prior ruling that testing was not available under Chapter 64 to show that Mr. Gutierrez was innocent of the death penalty. *Id.* at *8-9.

**Section 1983 proceedings**

On September 26, 2019, Mr. Gutierrez filed his original complaint under 42 U.S.C. § 1983 in the district court. ROA.26. The complaint brought (1) claims challenging the constitutionality of Texas's post-conviction DNA testing procedures (hereinafter "DNA claims"), and (2) claims challenging Texas's execution protocols, which excluded both prison-employed chaplains and other spiritual advisors from the execution chamber (hereinafter "execution chamber claims"). ROA.45-61. After the CCA issued its 2020 opinion affirming the denial of DNA testing, Mr. Gutierrez amended his complaint. ROA.592.

Appellants moved to dismiss, both in response to the original complaint and to the amended complaint. The operative motion—that to dismiss the amended

complaint—relied on numerous grounds. ROA.632-722. Contrary to Appellants'

implication, however, *see* Br. for Def'ts-Appellants 10 (citing ROA), Appellants

did not raise a standing argument similar to that presented here. Rather, at the cited

pages, they argued that the complaint was akin to a prohibited mandamus request,

that it was barred by the Eleventh Amendment, and that it was barred by the statute

of limitations. *See* ROA.663, 674, 679-82.

Mr. Gutierrez responded to the motions to dismiss and moved for a stay of

execution. The district court granted in part and denied in part the motion to

dismiss the amended complaint. ROA.815-45. On June 9, 2020, the district court

granted the motion for stay of execution. ROA.1004-06.

Appellants appealed from the stay order and moved to vacate the stay. This

Court granted the motion. *Gutierrez v. Saenz*, 818 F. App'x 309, 311 (5th Cir.

2020). This Court did not reach any of Appellants' affirmative defenses. *Id.* at 312.

Instead, this Court focused solely on whether Mr. Gutierrez had made a sufficient

showing on the merits to support the stay of execution, concluding that he had not

done so. *Id.* at 312-13. That was not a ruling on the merits of the DNA claims. *See,*

*e.g.*, *Ruiz v. Estelle*, 650 F.2d 555, 564-65 (5th Cir. 1981) (ruling on stay is distinct

from ruling on merits).

Mr. Gutierrez sought certiorari review of the execution chamber claims and

a stay of execution in the United States Supreme Court. The Supreme Court

vacated this Court's order granting the motion to vacate the stay, granted Mr. Gutierrez's stay request, and remanded for consideration of specific questions regarding the execution chamber claims. *Gutierrez v. Saenz*, 141 S. Ct. 127, 128 (2020). In those proceedings, the district court determined that security concerns did not justify the complete exclusion of spiritual advisors from the execution chamber. ROA.2058-90. The Supreme Court then again remanded to the district court for consideration of the merits of the execution chamber claims in light of the district court's findings of fact on the security question. *Gutierrez v. Saenz*, 141 S. Ct. 1260, 1260-61 (2021).

On remand, the parties also provided additional briefing on the DNA claims. In their brief, Appellants did not raise any argument regarding standing. ROA.1844-76. The district court issued a partial declaratory judgment. ROA.2218. After thorough analysis, the district court rejected many of Mr. Gutierrez's claims. The district court concluded, however, that Chapter 64 violated Mr. Gutierrez's due process rights in one significant respect.

The district court found that Chapter 64 has been construed as allowing DNA testing only to establish innocence of a crime, not innocence of the death penalty. ROA.2214-15 (citing *Gutierrez v. State*, 2020 WL 918669, at *8). At the same time, however, Texas has granted death-sentenced prisoners the substantive right to obtain relief by a successive post-conviction petition based on newly

12

discovered or available evidence showing that the prisoner is innocent of the death penalty. ROA.2215 (citing Tex. Code Crim. Proc. art. 11.071, § 5(a)(3)) (hereinafter "§ 5(a)(3)"). The district court held that the two statutory provisions "are irreconcilable." ROA.2216.

The district court correctly found that "§ 5(a)(3) creates a substantive right uniquely for a defendant convicted of the death penalty, and that right is protected by procedural due process . . . ." ROA.2216. The district court further found that, among other things, due process prohibits reducing a promised procedure to a "meaningless ritual." *Id.* (citing cases). The district court held that the Texas statutes have exactly that effect:

> A bar on Chapter 64 DNA testing to demonstrate innocence of the death penalty renders . . . § 5(a)(3) illusory. Only the few people who can make a clear and convincing showing of innocence of the death penalty without DNA evidence may avail themselves of the right. Texas procedure creates a process which gives a person sentenced to death the substantive right to bring a subsequent habeas action under . . . § 5(a)(3), but then barricades the primary avenue for him to make use of that right.

ROA.2216-17.

Accordingly, the district court held that Chapter 64, as construed by the CCA, violated Mr. Gutierrez's due process rights, ROA.2217, and granted him

declaratory relief. ROA.2218.[3] Appellants sought reconsideration of the district court's ruling, which the district court rejected. ROA.2949.

Appellants moved for a partial final judgment on the DNA claims and attempted to appeal the declaratory judgment, although it was apparently a non-final order. ROA.2222, 2284. Mr. Gutierrez moved to dismiss the appeal; this Court denied the motion. *Gutierrez v. Saenz*, No. 21-70006, Order (5th Cir. Dec. 20, 2021).[4]

In the meantime, the district court dismissed the execution chamber claims as moot, following changes by Texas to its execution protocol, and entered a final judgment. ROA.2951. Mr. Gutierrez moved for reconsideration of the dismissal of the execution chamber claims, which the district court granted. ROA.2967-74, 2999. The district court vacated its final judgment and permitted Mr. Gutierrez to amend his complaint with respect to the execution chamber claims. ROA.3001.

---

[3] Following the district court's ruling, Mr. Gutierrez again filed a motion in state court seeking to enforce the declaratory judgment and requesting that the court order DNA testing to allow him to establish his innocence of the death penalty. ROA.2513-52. The trial court denied the motion, ruling that it lacked jurisdiction. On appeal, the Texas Court of Criminal Appeals remanded the case to the trial court for a decision on the merits. *Gutierrez v. State*, No. AP-77,102, 2022 WL 946165 (Tex. Crim. App. Mar. 30, 2022).

[4] Appellants recently dismissed that appeal. *See Gutierrez v. Saenz*, No. 21-70006, Order (5th Cir. June 29, 2022).

14

Appellants then moved again for partial final judgment with respect to the

DNA claims. ROA.3007-25. The district court granted that motion and issued a

partial final judgment on those claims. ROA.3146-52. Appellants then appealed

that partial final judgment. ROA.3185.

## SUMMARY OF ARGUMENT

The Supreme Court has recognized that "[m]odern DNA testing can provide

powerful new evidence unlike anything known before," *District Attorney's Office*

*for the Third Judicial District v. Osborne*, 557 U.S. 52, 62 (2009) (citations

omitted), and that defendants like Mr. Gutierrez have a "liberty interest in

demonstrating [their] innocence with new evidence under state law." *Id.* at 68. In

*Skinner*, the Supreme Court held that a similarly situated prisoner had a viable due

process claim for DNA testing, and that it was properly brought under 42 U.S.C.

§ 1983 because success on such a claim does "not necessarily imply the invalidity

of his conviction." *Skinner v. Switzer*, 562 U.S. 521, 533 (2011).

Despite Appellants' attempts to reframe the question, this appeal is not about

the validity of Mr. Gutierrez's conviction. Rather, it is about whether Texas is

denying due process to death-sentenced inmates who, like Mr. Gutierrez, wish to

use DNA evidence to prove that they are innocent of the death penalty. While

Appellants eventually address the merits of that question, their focus is on

arguments about standing and the statute of limitations.

15

The standing argument, which Appellants never raised below, would have the effect of turning *Skinner*—a decision Appellants do not even cite—into a dead letter. The notion that the district court's judgment is unenforceable is also belied by the Texas Court of Criminal Appeals' recent decision remanding Mr. Gutierrez's state court action seeking to enforce the declaratory judgment to the state trial court for a decision on the merits. *Gutierrez v. State*, No. AP-77,102, 2022 WL 946165 (Tex. Crim. App. Mar. 30, 2022).

Mr. Gutierrez's amended complaint was timely. Significant legal and factual developments took place between the denial of his first request for DNA testing pursuant to Chapter 64 and the denial of his 2019 request for testing. Given those developments, the district court correctly ruled that Mr. Gutierrez's cause of action accrued with the denial of his 2019 request. In the alternative, equitable tolling of the statute of limitations is warranted.

The district court correctly found that there is an irreconcilable conflict between the DNA statute, which has been interpreted by the Texas Court of Criminal Appeals (CCA) not to permit DNA testing to establish innocence of the death penalty, and the Texas post-conviction statute, which allows death-sentenced prisoners to bring claims of innocence of the death penalty. Appellants make various attacks on the district court's judgment but fail to show there is no conflict between the statutes. Because there is a conflict, and because denial of DNA

16

testing as a result of that conflict violates Mr. Gutierrez's due process rights, this Court should affirm the district court's judgment.

## ARGUMENT

## I.    MR. GUTIERREZ MEETS ARTICLE III'S STANDING REQUIREMENTS.

Mr. Gutierrez has standing to challenge the constitutionality of Texas's post-conviction DNA testing statute. To establish Article III standing, a plaintiff "must demonstrate (1) 'an injury in fact' that is (2) 'fairly traceable to the challenged action of the defendant,' and that is (3) likely to be 'redressed by a favorable decision.'" *Brackeen v. Haaland*, 994 F.3d 249, 291 (5th Cir. 2021) (en banc) (Dennis, J., plurality op.) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Appellants challenge only the redressability requirement, but as explained below, Mr. Gutierrez satisfies all three of *Lujan*'s standing requirements.

### A.    Mr. Gutierrez Has Suffered an Injury in Fact.

Mr. Gutierrez has been injured by Appellants' enforcement of and reliance upon an unconstitutional post-conviction DNA testing scheme. The State of Texas provides a right to habeas relief pursuant to § 5(a)(3) if a petitioner demonstrates that he is innocent of the death penalty, but, under Article 64.03(a)(2)(A), denies DNA testing to petitioners seeking to prove innocence of the death penalty. As the district court aptly concluded, the procedural catch-22 created between § 5(a)(3)

and Article 64.03(a)(2)(A) is "fundamentally unfair and offends due process." ROA.2217-28 ("Due process does not countenance procedural sleight of hand whereby a state extends a right with one hand and then takes it away with another . . . . [as doing so], renders meaningless an express right and transgresses a principle of fundamental unfairness."). Appellants have repeatedly exploited this unconstitutional incongruity, relying on and enforcing Article 64.03(a)(2)(A) to block Mr. Gutierrez's efforts to access DNA testing, and thus frustrating Mr. Gutierrez's ability to meaningfully utilize § 5(a)(3)'s habeas procedures to obtain relief.

Mr. Gutierrez has been and continues to be directly harmed by Appellants' conduct, including relying on Article 64 to defeat his attempts to obtain DNA testing. The Supreme Court has explained that when a suit challenges "the legality of government action or inaction" and "plaintiff is himself an object of the action[,]" "there is ordinarily little question that the [government action] has caused him injury." *Lujan*, 504 U.S. at 561-62. That is the case here. As a plaintiff seeking DNA testing in order to meaningfully utilize Texas's state habeas procedures, Mr. Gutierrez is an "object" of Appellants' "action"—namely, Appellants' enforcement of and reliance upon Texas's DNA statute to deny Mr. Gutierrez DNA testing. The "ordinary rule" is that he has standing to challenge their action. *Contender Farms, L.L.P. v. U.S. Dep't of Agriculture*, 779 F.3d 258,

18

266 (5th Cir. 2015); *see also LaMar v. Ebert*, 681 F. App'x 279, 285 (4th Cir. 2017) (observing in a DNA-testing case brought under § 1983 that "[i]t is somewhat difficult to understand what more could be required of [the petitioner]," and concluding that the petitioner met the injury-in-fact requirement).

Mr. Gutierrez's inability to access DNA testing owing to Appellants' enforcement of, and reliance upon, the unconstitutional DNA statute is "concrete and particularized" as well as "'actual or imminent, not 'conjectural' or 'hypothetical,'" *Lujan*, 504 U.S. at 560. Mr. Gutierrez has suffered an injury in fact.

### B.    Mr. Gutierrez's Injury Is Fairly Traceable to Appellants' Conduct.

Mr. Gutierrez's inability to access DNA testing is fairly traceable to Appellants' enforcement of and reliance upon the DNA statute. First, as District Attorney and Police Chief, Appellants are two of the people and/or entities in charge of implementing the DNA statute, and they are custodians of the evidence. Second, under the DNA statute, the District Attorney is required to respond to a motion for DNA testing. Tex. Code Crim. Proc. Article 64.02. Third, while the District Attorney does not order testing under the DNA statute, he can oppose testing or agree to it and even join a petitioner's motion. *See, e.g.*, Pl.'s Mot. to Dismiss, ECF No. 106-1, *Skinner v. Switzer*, 2:09-cv-00281 (N.D. Tex. July 20,

2012) (moving to dismiss § 1983 challenge to Texas DNA statute against district attorney because district attorney agreed to testing).

In *LaMar v. Ebert*, the Fourth Circuit analyzed the causation requirement in a § 1983 DNA-testing lawsuit under similar circumstances. 681 F. App'x at 285-86. There, LaMar filed a § 1983 complaint alleging that Virginia's DNA-testing statute was unconstitutional and that the prosecutor's refusal to permit DNA testing violated his due process interests. *Id*. at 283. The prosecutor challenged LaMar's standing to sue on appeal and, like Appellant Saenz here, downplayed his role in the process, claiming that "his only involvement . . . occurs after a state circuit court has ordered him to file a response to a petition under the DNA statute." *Id*. at 285. In determining that LaMar had standing to pursue his § 1983 DNA claim, the Fourth Circuit analyzed *Skinner* and observed that, for purposes of standing, there was no material difference between Virginia's DNA-testing statute and Texas's DNA-testing statute, both of which require the prosecutor to respond to a request for DNA testing. *Id*. The court explained that the prosecutor's status as "but one of several persons or entities in charge of implementing the DNA statute is not controlling" and concluded that the prosecutor's refusal to allow LaMar access to the DNA evidence satisfied the causation requirement. *Id.*; *see also K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010) (traceability requires only that defendants "significantly contributed" to injury); *Brackeen*, 994 F.3d at 294

20

(family had standing to sue where the injury was "fairly traceable to the actions of *at least some* of the . . . Defendants, who bear *some* responsibility for the . . . burdens imposed" on them) (emphasis added).

Like the prosecutor in *LaMar*, rather than acknowledging their integral role in implementing and enforcing Texas's DNA statute, Appellants attempt to downplay their involvement by arguing that district attorneys lack the power to order DNA testing and identifying the state court as the sole entity responsible for Mr. Gutierrez's injury—an entity that Appellants point out "was never a party (and could not be a party)." Br. for Def'ts-Appellants 18-19. In fact, however, Appellant Saenz has repeatedly opposed Mr. Gutierrez's requests to conduct DNA testing. ROA.596-97, 605. And Appellant Saenz's decision to rely upon and enforce the DNA statute erected the barrier to Mr. Gutierrez's ability to access DNA testing and meaningfully avail himself of § 5(a)(3)'s habeas procedures. In fact, at one point when the state trial court believed Appellant Saenz was unopposed to testing, it granted Mr. Gutierrez's second motion for DNA testing. *See* ROA.604. It was only after Appellant Saenz filed his brief in opposition that the state court withdrew the order and entered a new order denying testing. *See* ROA.605.

Appellants' status as "but [two] of several persons or entities in charge of implementing the DNA statute is not controlling." *LaMar*, 681 F. App'x at 285. Appellants are the ones who decide whether to enforce the DNA statute.

21

Appellants are responsible for Mr. Gutierrez's inability to access testing. Mr. Gutierrez's injury is fairly traceable to Appellants' conduct and, like the petitioner in *LaMar*, he has met *Lujan*'s causation requirement.

### C.    Mr. Gutierrez's Injury Has Been, and Remains Likely to Be, Redressed by Judgment in His Favor.

Mr. Gutierrez's injury—his inability to access DNA testing owing to Appellants' enforcement of and reliance upon the DNA statute—has been, and remains likely to be, redressed by judgment in his favor. Specifically, the district court's declaratory judgment concludes that the statutory foundation for Appellants' repeated denials of Mr. Gutierrez's requests for DNA testing is unconstitutional. Thus, the district court's judgment has already redressed, in part, Mr. Gutierrez's injury, as the judgment invalidates the constitutional legitimacy of the statutory barrier Appellants have continually erected in opposition to Mr. Gutierrez's testing efforts. Furthermore, the district court's judgment remains likely to redress the remainder of Mr. Gutierrez's injury as it is "'substantially likely'" – because of the Supremacy Clause – that the state court will abide by the district court's (and this Court's) "'authoritative interpretation'" of the due process clause as applied to Texas's DNA statute. *Brackeen*, 994 F.3d at 295 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992)).

In *Brackeen*, Judge Duncan explained that "[r]edressability means a decision's 'practical consequences' would 'significant[ly] increase . . . the likelihood' of relief." 994 F.3d at 372 (Duncan, J.) (plurality op.) (citing *Utah v. Evans*, 536 U.S. 452, 464 (2002)); *see also Burlington Ins. Co. v. Christ for the Nations, Inc.*, No. 3:05-CV-1164-L ECF, 2006 U.S. Dist. LEXIS 57973, at *16 (N.D. Tex. Aug. 17, 2006) (citing *Sabine River Auth. v. U.S. Dep't of Interior*, 951 F.2d 669, 674 (5th Cir. 1992)) (explaining that "[a] positive outcome need not be certain, but only 'likely' or 'probabilistic' in order to meet the redressability requirement"). "The relief sought needn't completely cure the injury . . . it's enough if the desired relief would lessen it." *Inclusive Cmtys. Project v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019). In addition, a decision need only relieve a plaintiff's discrete injury, not his "*every* injury." *Dep't of Tex., Veterans of the Foreign Wars of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 432 (5th Cir. 2014) (en banc).

Each of these considerations applies to Mr. Gutierrez's DNA-testing claim. First, a decision in Mr. Gutierrez's favor significantly increases the likelihood of relief because such a decision compromises Appellants' ability to rely on the DNA statute's constitutional legitimacy as a reason to block DNA testing. Moreover, the state court is likely to abide by the federal court's authoritative interpretation and conclude that the statute is unconstitutional. Second, the relief Mr. Gutierrez

23

sought and received from the district court did lessen his injury, as it in fact compromised Appellants' ability to use Article 64's constitutional legitimacy as a reason to block DNA testing. Third, the district court's judgment only needed to relieve a discrete injury, not every injury suffered by Mr. Gutierrez, which it did—namely, Mr. Gutierrez's inability to access DNA testing owing to Appellants' reliance on an unconstitutional statute. As a result of the district court's ruling, Appellants will have to find another way to deny DNA testing, or they will have to acquiesce to Mr. Gutierrez's request.

This Court's decision in *Brackeen* is instructive, as the plaintiffs there, like Mr. Gutierrez, sought to pursue further relief in state court based on a judgment from the district court. In *Brackeen*, this Court considered *en banc* the constitutionality of the Indian Child Welfare Act (ICWA) when several plaintiffs, including a non-Native American family, challenged the ICWA and its administrative counterpart, which imposed barriers to their adoption of a Native American child. 994 F.3d at 267, 289. In determining that a family had standing to challenge ICWA's foster and preadoptive placement preferences, the lead opinion found that they had demonstrated a likelihood that their injury would be redressed by a favorable decision from the federal courts because such a ruling "'would *at least make it easier* for' the [family] to regain custody" of a Native American child they had fostered. *Id*. at 295 (citing *Duarte ex rel. Duarte v. City of Lewisville*, 759

24

F.3d 514, 521 (5th Cir. 2014)) (emphasis added). The lead opinion further explained that even though "no state court . . . is bound by a decree of this court, we conclude that it is 'substantially likely that [a state court] would abide by an authoritative interpretation' of ICWA by this court, 'even though [it] would not be directly bound by such a determination.'" *Id.* (quoting *Franklin*, 505 U.S. at 803).

Here, too, it is substantially likely that the state court will abide by the district court's (and this Court's) authoritative interpretation of the due process clause as applied to Texas's DNA statute, even if it is not directly bound by such a determination. Indeed, Appellant Saenz has agreed in the Chapter 64 proceedings pending in state court that "Texas Courts give respectful consideration to the rulings of the federal courts[.]" Plea to Jurisdiction in State Court, *Ex parte Gutierrez*, No. 98-CR-1391 (July 8, 2021) (citing *Hayes v. Pin Oak Petroleum, Inc.*, 798 S.W.2d 668, 672 n.5 (Tex. App.—Austin 1990, writ denied)). Just as a favorable ruling on ICWA's constitutionality "would at least make it easier" for the family there to petition the state courts and regain custody of the Native American child they had fostered, so too would (and has) a favorable ruling on the constitutionality of Texas's DNA statute make it easier for Mr. Gutierrez to petition the state courts and access DNA testing. Mr. Gutierrez's claim meets, if not exceeds, redressability's floor.

Appellants attempt to distinguish *Brackeen* by arguing that the state court could conclude that DNA testing should be eliminated from post-conviction proceedings altogether. Br. for Def'ts-Appellants 20 n.8. But such a result is highly improbable, if not unconscionable.

As a legal matter, the DNA statute does not become wholly unenforceable as a result of the district court's declaratory judgment. *See Gutierrez v. State*, 2022 WL 946165 at *2, n.4 (Tex. Crim. App. Mar. 30, 2022) ("Unlike a statute that is held unconstitutional on its face, which cannot be enforced in any future circumstances, a statute that is held unconstitutional as applied can be enforced in those future circumstances where it is not unconstitutional.") (internal quotation marks omitted). The district court held that Chapter 64 is unconstitutional as applied to Mr. Gutierrez "to the extent that Section 64.03(a)(2)(A) would limit post-conviction DNA testing to persons who 'would not have been convicted' with favorable testing results, to the exclusion of those who, though convicted, would not have been assessed a death sentence." *Id.* The statute remains operable without the unconstitutional limitation. *See* Tex. Gov't Code Ann. § 311.032(c) (presuming severability when statute does not indicate otherwise, and instructing that if the application of any provision of a statute to any person or circumstance is held invalid, the statute can be given effect without the invalid provision or application).

Furthermore, from a practical standpoint, it would be deeply troubling for the state court to refuse to apply the constitutional portions of the DNA statute, and instead conclude that DNA testing should be eliminated entirely from post-conviction proceedings. DNA testing has been an integral component of our justice system for years. It is hard to imagine, as Appellants urge, that Texas's courts would mark themselves as the only state in the Union without a post-conviction DNA testing statute,[5] thereby choosing to deny the more than 200,000 prisoners in their care access to scientific evidence that could prove their innocence, and has proven innocence in 375 cases across the United States.[6]

Nor is Appellants' reliance on *California v. Texas*, 141 S. Ct. 2104, 2112 (2021), any more persuasive. There, the Supreme Court ruled that the plaintiffs (18 states and two individuals) had no standing to bring a lawsuit challenging the constitutionality of the Patient Protection and Affordable Care Act—a law enacted during the Obama Administration that required Americans to obtain health insurance coverage and imposed a monetary penalty for failure to do so. Several

---

[5] *See Innocence Project: Access to Post-Conviction DNA Testing*, available at https://innocenceproject.org/causes/access-post-conviction-dna-testing/#:~:text=Although%20all%2050%20states%20have,access%20law%20in%20your%20state.

[6] *See Innocence Project: DNA Exonerations in the United States*, available at https://innocenceproject.org/dna-exonerations-in-the-united-states/.

years after the law's enactment, however, Congress nullified the monetary penalty provision, setting its amount to $0. *Id*. Because the IRS had no way of enforcing a $0 penalty, there was no possible government action that was causally connected to the plaintiffs' injury and there was no injury to redress. *Id*. at 2114-16. The Court explained that "[t]o find standing here to attack an unenforceable statutory provision would allow a federal court to issue what would amount to 'an advisory opinion without the possibility of any judicial relief.'" *Id*. at 2116 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 129 (1983) (Marshall, J., dissenting)).

Mr. Gutierrez's case is in stark contrast to those circumstances. Mr. Gutierrez does not seek to attack an unenforceable statutory provision. Unlike the IRS in *California*, here, Appellants have enforced and continue to enforce a provision of the DNA statute against Mr. Gutierrez. *See, e.g.*, State's Resp. and Proposed Order to Gutierrez's Second Mot. for Post-Conviction DNA Testing 10-12, *Ex parte Gutierrez*, No. 98-CR-1391-A (107th Dist. Ct. Cameron Cty., June 25, 2019) (Appellants enforcing the DNA statute to block Mr. Gutierrez's request for testing). Declaring that portion of the statute unconstitutional and depriving Appellants of its legitimacy would "lessen" Mr. Gutierrez's injury, *Inclusive Cmtys. Project*, 946 F.3d at 655, "make it easier" for him to seek DNA testing in state court, *Brackeen*, 994 F.3d at 295, and "significant[ly] increase . . . the

likelihood" that the state court will abide by the authoritative interpretation of the federal courts and rule in Mr. Gutierrez's favor, *id*. at 372.

In sum, Appellants' standing arguments ring hollow. As this Court's sister circuit observed in *LaMar*, "no court—including the Supreme Court—has either identified or assessed a standing issue when the convicted person has sued a prosecutor for denial of access to post-conviction DNA testing." 681 F. App'x at 286 (collecting cases). In *Skinner*, the Supreme Court did not question the DNA plaintiff's standing to sue the District Attorney. 562 U.S. at 521. Nor did the Supreme Court in *Osborne* question the DNA plaintiff's standing to sue both the District Attorney and Police Chief—as Mr. Gutierrez has done here. *See Osborne*, 557 U.S. at 60-67; *see also Osborne v. District Attorney's Office*, 445 F. Supp. 2d 1079 (D. Alaska 2006) (naming both the District Attorney and the Police Chief as defendants). Mr. Gutierrez's claim is no different; he likewise has standing to pursue his challenge.

## II.     MR. GUTIERREZ'S CLAIM IS NOT TIME-BARRED.

Mr. Gutierrez's § 1983 claim was filed in the district court within three months of the state court's denial of his request for DNA testing and is therefore timely under the two-year statute of limitations. Appellants' arguments to the contrary are groundless. Moreover, even if this Court should find that Mr. Gutierrez's claim is untimely, he is entitled to equitable tolling because he would

otherwise face execution for a crime he did not commit, as he has consistently maintained.

### A.    Mr. Gutierrez's Claim Is Timely Under the Statute of Limitations.

The statute of limitations for a § 1983 action is determined by the general statute of limitations governing personal injuries in the forum state. *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) ("Because there is no federal statute of limitations for civil rights actions brought pursuant to 42 U.S.C. § 1983, a federal court borrows the forum state's general personal injury limitations period.") (citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). In Texas, that period is two years. *See Piotrowski*, 237 F.3d at 576; Tex. Civ. Prac. and Rem. Code § 16.003(a).

Although Texas law supplies the applicable limitations period, "federal law governs when a cause of action under § 1983 accrues." *Gartrell*, 981 F.2d at 257 (citing *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980)). "Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.*

Appellants have argued that *Reed v. Goertz*, 995 F.3d 425 (5th Cir. 2021), *cert. granted*, 142 S. Ct. 2645 (2022), "directly contravenes the district court's holding that Gutierrez's claims did not accrue until the conclusion of the appeal of

the denial of his *second* Chapter 64 motion." Br. for Def'ts-Appellants 22

(emphasis in original). The Supreme Court's grant of certiorari review stays this

Court's decision in *Reed*, *see* 36 C.J.S. *Federal Courts* § 300 (March 2022), and

calls into question the correctness of the legal principles set forth in *Reed*.

Moreover, even if *Reed* was correctly decided, this case is distinguishable from

*Reed*.

In *Reed*, this Court held that the two-year statute of limitations on Reed's

§ 1983 claim began to run when the trial court denied his motion for DNA testing,

not upon completion of his appeal through the state courts. 995 F.3d at 431. Here,

the trial court denied Mr. Gutierrez's motion on June 27, 2019. His § 1983 claim

was filed in the district court on September 26, 2019—within three months of the

trial court's denial—and is therefore timely.

Appellants argue that the statute of limitations accrued when the trial court

denied Mr. Gutierrez's prior request for DNA testing, which was denied in 2010.

Br. for Def'ts-Appellants 21-22. But as the district court properly found, Mr.

Gutierrez's 2019 request was based on both new legal and factual developments,

including advances in DNA testing since his earlier request. Therefore, the denial

of that request began a new accrual period. ROA.828.

Unlike his earlier request, Mr. Gutierrez's 2019 request for DNA testing

came after Chapter 64 was amended to eliminate the "at fault" provision of the

prior statute. That provision, which required a defendant to show that no DNA testing occurred at the time of trial "through no fault of the convicted person," formed part of the basis for the trial court's previous denial of Mr. Gutierrez's request for DNA testing. *See Ex parte Gutierrez*, 337 S.W. 3d at 889, 895. The "at fault" provision was removed when the statute was last amended, thereby removing that portion of the trial court's rationale for having denied Mr. Gutierrez's earlier request. *See* Tex. Crim. Proc. Code Ann. art. 64.01(b)(1)(B) (West 2017). The denial of Mr. Gutierrez's 2019 request thus began a new accrual period because of the new legal developments that took place since his prior request was denied.

Mr. Gutierrez's 2019 request was also based on new factual developments. Prior to 2019, Appellants maintained that they no longer had custody of the hair found in the decedent's hand. Undersigned counsel repeatedly requested access to physical evidence in the State's possession, but the State waited until May 21, 2019, to make the evidence available for counsel's review. Upon review of the evidence, counsel discovered that the hair was in fact preserved in a sealed envelope in the District Attorney's files. Mr. Gutierrez's 2019 motion requested testing of the newly-discovered hair—a critical piece of evidence given the evidence at trial suggesting that the decedent had struggled with her assailant(s).

Mr. Gutierrez's 2019 request was also based on recent advances in DNA testing that have increased the likelihood of obtaining DNA evidence from the items in question. These advances allow for obtaining DNA samples even from small, damaged, or degraded samples. ROA.84. For instance, while it is not clear whether the hair found in the decedent's hand contains a root (which was needed under earlier DNA testing protocols), a genetic profile can now be obtained from it using mitochondrial DNA testing. ROA.86, 101. New developments in DNA technology also make it reasonably likely that testing could obtain touch DNA left on the decedent's nightgown by her assailant(s). ROA.84-85, 102-03.  Mr. Gutierrez's 2019 motion requested testing based on these new advances in DNA science.

Because Mr. Gutierrez's 2019 motion was based on both new legal and factual developments, it presented a separate and distinct request for testing. The CCA obviously viewed it that way, as it addressed and ruled on the merits of the distinct issues raised in 2019 motion, indicating it viewed the request as a distinct event. *See Gutierrez v. State*, 2020 WL 918669 at *4-5. The district court thus correctly found that the denial of Mr. Gutierrez's 2019 request was "the date Gutierrez would have reason to know of his alleged injury." ROA.828.

Appellants argue that Mr. Gutierrez's arguments "sound in a claim for a continuing violation," *i.e.*, "'a fresh violation each day' Gutierrez lacks access to

evidence." Br. for Def'ts-Appellants 22-23. Mr. Gutierrez has made no such

argument. Rather, he has shown that his claim accrued when the trial court denied

his 2019 request for DNA testing. Because his § 1983 claim was filed within two

years of that date, it is timely.

### B.    Should this Court Find that Mr. Gutierrez's Claim Is Untimely, He Is Entitled to Equitable Tolling.

Finally, even assuming arguendo that Mr. Gutierrez should have filed his

§ 1983 claim within two years of the denial of his 2010 request, this Court

"possess[es] the power to use equitable principles to fashion [its] own tolling

provisions in exceptional situations in which state statutes of limitations eradicate

rights or frustrate policies created by federal law." *Rodriguez v. Holmes*, 963 F.2d

799, 805 (5th Cir. 1992) (citation omitted). Throughout his trial and in the

proceedings since, Mr. Gutierrez has maintained that he did not kill Escolastica

Harrison, and that he had no knowledge that others were going to assault or kill

her. None of the items collected during the investigation of this case has ever been

subjected to DNA testing. Given that Mr. Gutierrez faces execution for a crime he

has consistently maintained he did not commit, this Court has ample grounds for

exercising its equitable powers to find that his DNA claim is timely. Moreover,

Appellants' concealment of the evidence and Mr. Gutierrez's exercise of

reasonable diligence in attempting to discover his cause of action further support

tolling the statute of limitations. *See Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1366 (5th Cir. 1984). Applying equitable tolling principles, the cause of action accrued or the statute began to run within the last two years, and the action is timely.

## III.   THE CONFLICT BETWEEN § 5(a)(3) AND CHAPTER 64 RENDERS CHAPTER 64 UNCONSTITUTIONAL.

In Article 11.071, Texas established a substantive right for a person convicted of the death penalty to bring a subsequent habeas petition showing "by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury . . . . ." § 5(a)(3). The CCA has construed this section to require a threshold showing that "the applicant is actually innocent of the death penalty." *Rocha v. Thaler*, 626 F.3d 815, 822 (5th Cir. 2010). In other words, the CCA has construed this section to require a threshold showing that the applicant is ineligible for the death penalty. *See Sawyer v. Whitley*, 505 U.S. 333, 347 (1992) ("actual innocence" of the death penalty turns on "those elements that render a defendant eligible for the death penalty"); *see also Ex parte Blue*, 230 S.W.3d 151, 160 (Tex. Crim. App. 2007) ("By tying the exception to the general prohibition on subsequent state writs specifically to the statutory special issues in Article 37.071 of the Code of Criminal Procedure, the Legislature

apparently intended to codify, more or less, the doctrine found in *Sawyer v. Whitley*.") (footnotes omitted).

Texas has also established a substantive right to DNA testing in Texas Code of Criminal Procedure Chapter 64. Tex. Crim. Proc. Code Ann. art. 64.03(a)(2)(A). Texas has construed this right to mean a defendant can obtain DNA testing only if he can show the testing would demonstrate his innocence of the crime for which he was convicted. *Gutierrez v. State*, 2020 WL 918669 at *8. A defendant cannot, however, obtain DNA testing to establish that he is ineligible for the death penalty, because "[t]he statute does not authorize testing when exculpatory testing results might affect only the punishment or sentence that he received." *Ex parte Gutierrez*, 337 S.W.3d at 901. Texas thus denies DNA testing of evidence that would demonstrate only that a defendant is actually innocent of the death penalty. *Gutierrez*, 2020 WL 918669 at *8.

The substantive rights respectively created by Article 11.071 and Chapter 64 are protected by procedural due process. *See Osborne*, 557 U.S. at 68 (holding that a criminal defendant has a "liberty interest in demonstrating his innocence with new evidence under state law"). But, as the district court correctly observed, "these two statutory provisions are irreconcilable":

> Texas grants the substantive right to file a second habeas petition with a clear and convincing showing of innocence of the death penalty in

Article 11.071, and then Chapter 64 denies the petitioner access to DNA evidence by which a person can avail himself of that right. . . .

A bar on Chapter 64 DNA testing to demonstrate innocence of the death penalty renders Article 11.071 § 5(a)(3) illusory. Only the few people who can make a clear and convincing showing of innocence of the death penalty without DNA evidence may avail themselves of the right. Texas procedure creates a process which gives a person sentenced to death the substantive right to bring a subsequent habeas action under Article 11.071 § 5(a)(3), but then barricades the primary avenue for him to make use of that right.

ROA.2216-17 (internal citations omitted).

Stated slightly differently, a person sentenced to death in Texas cannot meet the threshold showing required to file a habeas petition under Article 11.071—that is, he cannot show he is ineligible for the death penalty—because that person cannot obtain DNA testing under Chapter 64 to establish that he is ineligible for the death penalty.

Here, Mr. Gutierrez has alleged that even if he could have been convicted of capital murder under Texas's law of parties, evidence from DNA testing would nevertheless support a determination that he was ineligible for the death penalty under *Enmund v. Florida*, 458 U.S. 782, 797 (1982), and *Tison v. Arizona*, 481 U.S. 137, 157-58 (1987). Exculpatory DNA results would establish Mr. Gutierrez is ineligible for—that is, innocent of—the death penalty because he did not actually kill Ms. Harrison, did not intend for her to be killed, and did not anticipate that she would be killed. *See* Tex. Code Crim. Proc. Ann. art. 37.07(b)(2). Mr.

Gutierrez could then use the exculpatory DNA evidence to meet the threshold showing of innocence of the death penalty required to file a successive habeas petition under Article 11.071.

Appellants fail to show the absence of a conflict between Chapter 64 and Article 11.071. At the outset, Appellants' invocation of deference to the legislature falls flat. Although there is no freestanding substantive right to postconviction DNA testing (or "to collateral proceedings at all"), Br. for Def'ts-Appellants 29, a state's DNA procedures nevertheless must comply with baseline constitutional protections, *Osborne*, 557 U.S. at 52. As the district court explained, its declaratory judgment does not "impose its own notions of fairness, invoke substantive due process, or . . . promulgat[e] . . . state rules of procedure," but rather insists only on "access to the rights and processes that Texas law already provides." ROA.2217 (citing § 5(a)(3)).

Appellants' contention that Article 11.071 does not codify the *Sawyer* doctrine on "actual innocence" of the death penalty, Br. for Def'ts-Appellants 29-30, is erroneous. The CCA has stated explicitly that "Section 5(a)(3) of Article 11.071 represents the Legislature's attempt to codify something very much like this federal doctrine of 'actual innocence of the death penalty' for purposes of subsequent state writs." *Ex parte Blue*, 230 S.W.3d at 160. Citing *Sawyer*, the CCA explained that "[i]n the context of capital-punishment proceedings, fundamental

38

miscarriage of justice means 'actual innocence of the death penalty.' . . . The Supreme Court has limited the application of innocence in this context to constitutional error that affects the habeas petitioner's eligibility for the death penalty under state law." *Id.* (citations omitted).

This Court, too, repeatedly has recognized that "[t]he [Texas] Legislature quite obviously intended [§ 5(a)(3)], at least in some measure, to mimic the federal doctrine of 'fundamental miscarriage of justice.' . . . apparently intending to codify, more or less, the [actual-innocence-of-the-death-penalty] doctrine found in *Sawyer v. Whitley*." *Rocha v. Thaler*, 619 F.3d at 402-03 (quoting *Ex parte Blue*, 230 S.W.3d at 159-60) (alterations in *Rocha*) (footnote omitted); *see also id.* at 828–29 ("[I]n *Ex parte Blue* the CCA expressly declined to hold that § 5(a)(3) is anything more than a codification of *Sawyer*."); *Haynes v. Quarterman*, 526 F.3d 189, 196-97 (5th Cir. 2008) ("[T]he Texas Court of Criminal Appeals has also construed section 5(a)(3) as analogous to the federal 'actual innocence' exception . . . .").[7]

_____

[7] In a footnote, Appellants urge this Court to "look to post-*Ex parte Blue* developments to determine how the CCA construes Article 11.071." Br. for Def'ts-Appellants 30 n.11. Tellingly, however, Appellants cite no such developments supporting their position.

Appellants point to the lack of petitions under § 5(a)(3) alleging innocence of the death penalty under *Enmund/Tison* as evidence that § 5(a)(3) does not apply to such claims. Br. for Def'ts-Appellants 30. The absence of such claims is not strong evidence that § 5(a)(3) somehow bars a claim that falls within the express language of that provision. Moreover, the absence of such claims may equally be explained by the inability to obtain DNA evidence to support such claims, as a result of Texas's interpretation of Chapter 64. In the alternative, Appellants argue that "even if Article 11.071 does codify *Sawyer*, the district court and Gutierrez muddled the concepts of *ineligibility* of the death penalty and *unsuitability* of the death penalty." Br. for Def'ts-Appellants 30. To support their conclusion that "DNA evidence would not have changed Gutierrez's eligibility for the death penalty," *id.*, Appellants cite language from *Rocha* and *Sawyer* explaining that the "objective standards" for determining actual innocence of the death penalty "must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error." *Sawyer*, 505 U.S. at 347; *see also Rocha*, 626 F.3d at 826 ("The only question is whether the petitioner was eligible for the death penalty.").

Mr. Gutierrez does not dispute that evidence demonstrating ineligibility for the death penalty is different from "additional mitigation evidence" that might have

impacted the jury's discretion to impose death. This case involves the former type
of evidence. Mr. Gutierrez seeks to obtain DNA evidence that would show he is
ineligible for the death penalty because he does not meet the requirements of
subsection (b) of Article 37.071, which requires the state to prove beyond a
reasonable doubt that "the defendant actually caused the death of the decedent or
did not actually cause the death of the deceased but intended to kill the deceased or
anticipated that a human life would be taken." Tex. Code Crim. Proc. Ann. art.
37.071(b)(2); *see* § 37.071(c) ("[t]he state must prove each issue submitted under
Subsection (b) of this article beyond a reasonable doubt, and the jury shall return a
special verdict of 'yes' or 'no' on each issue submitted under Subsection (b) of this
Article"). DNA evidence that identifies perpetrators but excludes Mr. Gutierrez
would establish that Mr. Gutierrez was not present inside the trailer where the
murder took place and did not participate in the murder. This evidence thus would
cast doubt on whether Mr. Gutierrez "actually caused the death of the decedent or
. . . intended to kill the deceased or anticipated that a human life would be taken."
Tex. Code Crim. Proc. Ann. art. 37.071(b)(2). This is separate and distinct from
mitigation evidence, which is addressed in Subsection (d) of Article 37.071. *See*
Tex. Code Crim. Proc. Ann. art. 37.071(d); *Rocha*, 626 F.3d at 823 (rejecting
argument that denial of petition under § 5(a)(3) implied ruling on merits of
mitigation-based ineffective assistance claim).

Appellants' argument that "the DNA evidence Gutierrez seeks to test would not show 'by clear and convincing evidence' that no rational juror would answer in the State's favor on that special issue," Br. for Def'ts-Appellants 31, is a premature and unsupported attempt to analyze the results of DNA testing that has not even been done yet. The results of the DNA testing remain unknown and have nothing to do with the irreconcilability of Article 11.071 and Chapter 64. Whether he is entitled to relief under Article 11.071 is precisely the question Mr. Gutierrez would like the state courts to address—but he cannot do so because he cannot obtain DNA testing to establish that he is innocent of the death penalty.

Appellants similarly miss the point in arguing that "[t]he same evidence that the CCA and this Court found doomed his Chapter 64 claim is therefore also fatal to any potential arguments he might raise under Article 11.071." Br. for Def'ts-Appellants 31. An analysis finding that Mr. Gutierrez has not established innocence under the law of parties does not necessarily defeat an attempt to show innocence of the death penalty. *See, e.g.*, *Valle v. State*, 109 S.W.3d 500, 503–04 (Tex. Crim. App. 2003) ("Although in some cases a jury's finding of guilt will be the functional equivalent of an affirmative answer to the anti-parties special issue, that is not always so. A defendant may be convicted of capital murder under § 7.02(b)11 without having the intent or actual anticipation that a human life would be taken that is required for an affirmative answer to the anti-parties issue.");

42

*Johnson v. State*, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992) ("The Texas capital murder scheme does not allow an individual to be put to death for merely being a party to a murder. . . . The Texas [anti-parties] special issue contained in Art. 37.071(b) sufficiently limits the imposition of death so as to meet constitutional challenges under *Enmund* or *Tison*."). The fundamental inadequacy of the state's statutory procedures violates Mr. Gutierrez's constitutional right to due process. The violation cannot be cured by the assertion that relief might still be denied under constitutional statutes or by applying constitutional standards to review Mr. Gutierrez's request.

Appellants next contend that "[t]he CCA regularly considers applications under [Article 11.071] and, in fact, has granted merits review of claims alleging ineligibility for the death penalty under it." Br. for Def'ts-Appellants 32. The two cases Appellants cite, however, both involved grants of relief for claims that the petitioners were intellectually disabled. *See Ex parte Milam*, No. WR-79,322-04, 2021 WL 197088, at *1 (Tex. Crim. App. Jan. 15, 2021) ("[Applicant] asserts that: (1) his execution would violate the Eighth and Fourteenth Amendments because he is intellectually disabled . . . ."); *Ex Parte Weathers*, No. WR-64,302-02, 2012 WL 1378105, at *1 (Tex. Crim. App. Apr. 18, 2012) ("Applicant alleges that his execution would violate the Eighth Amendment's prohibition against the execution of the mentally retarded.") (citing *Atkins v. Virginia*, 536 U.S. 304 (2002)). The

43

fact that some petitioners have obtained remedies for constitutional violations other than the deprivation of the liberty interest at issue here does not mean this deprivation is not a constitutional violation.

The same goes for Appellants' argument that a defendant could theoretically discover "other evidence apart from DNA material [to] provide viable support in an Article 11.071 proceeding." Br. for Def'ts-Appellants 32. Regardless of whether some other defendant could theoretically discover such evidence, the fact remains that the irreconcilable conflict between Article 11.071 and Chapter 64 deprives Mr. Gutierrez of his "liberty interest in demonstrating his innocence with new evidence under state law." *Osborne*, 557 U.S. at 68. While fairly acknowledging that a "few" petitioners might be able to "avail themselves" of their "substantive right to bring a subsequent habeas action under Article 11.071 § 5(a)(3)," the district court correctly invalidated the state's postconviction relief procedures on grounds that "they are fundamentally inadequate to vindicate the substantive rights provided." ROA.2216-17.

Finally, Appellants posit that "it is possible, if not probable, that the Legislature would have preferred a system prohibiting DNA testing altogether to the open-ended regime that the district court appears to have ordered." Br. for Def'ts-Appellants 34. That is neither here nor there. If the state legislature wishes to prohibit DNA testing altogether, then it remains free to do so at any time, with

or without the district court's judgment in this case. The cases Appellants cite are inapposite because they address equal treatment violations, not due process violations. In analyzing a due process claim like the one at issue here, the proper inquiry is whether the challenged state procedure "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Osborne*, 557 U.S. at 69 (2009) (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)).

For the foregoing reasons, the conflict between Article 11.071 and Chapter 64 violates Mr. Gutierrez's due process rights.

# CONCLUSION

For all the foregoing reasons, this Court should affirm the district court's judgment.

Respectfully submitted,

/s/ Peter Walker
Peter Walker
Assistant Federal Defender
Federal Community Defender for the
Eastern District of Pennsylvania
Suite 545 West, The Curtis Center
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520
peter_walker@fd.org

/s/ Richard W. Rogers, III
Richard W. Rogers, III
710 Buffalo Street, Ste. 202
Corpus Christi, TX  78401
(361) 888-7620
rwrogersiii@aol.com

Counsel for Plaintiff-Appellee

Dated: August 1, 2022

## Certificate of Compliance with Rule 32(a)(7)(B)

I do hereby certify that this motion complies with Fed. R. App. Proc. 32(a)(7)(B) in that it contains 10,462 words, Microsoft Word 2010, Times New Roman, 14 points.

/s/ Peter Walker
Peter Walker

## Certificate of Compliance with ECF Filing Standards

I do hereby certify that: (1) all required privacy redactions have been made pursuant to Fifth Circuit Rule 25.2.13; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus-scanning program and is free of viruses.

/s/ Peter Walker
Peter Walker

## Certificate of Service

I, Peter Walker, hereby certify that on this 1st day of August 2022, I served the foregoing motion on the following persons by ECF filing:

Jefferson David Clendenin
Assistant Attorney General
Office of the Attorney General of Texas
Post Office Box 12548
Austin, Texas 78711 2548

Edward Sandoval
Assistant District Attorney
Cameron County
964 E. Van Buren
Brownsville, Texas 78520

Ricardo Jimenez Navarro, Esq.
Denton, Navarro, Rocha, Bernal & Zech, P.C.
Suite 100
701 E. Harrison
Harlingen, Texas 78550

/s/ Peter Walker
Peter Walker