No. 21-70009

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### RUBEN GUTIERREZ,

**Plaintiff-Appellee,**

v.

### LUIS V. SAENZ, District Attorney; FELIX SAUCEDA, Chief, Brownsville Police Department,

**Defendant-Appellants**

---

### PETITION FOR PANEL REHEARING AND REHEARING *EN BANC*

---

Anne Fisher
Peter Walker
Shawn Nolan
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520
Annie_Fisher@fd.org
Shawn_Nolan@fd.org
Peter_Walker@fd.org

Counsel for Plaintiff-Appellee

Dated: February 22, 2024

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following persons and entities as described by Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Plaintiff-Appellee**

> Ruben Gutierrez
> TDCJ Polunsky Unit
> Livingston, Texas

**Counsel for Plaintiff-Appellee**

> Shawn Nolan
> Anne Fisher
> Peter Walker
> Federal Community Defender Office
> For the Eastern District of Pennsylvania

**Defendant-Appellants**

> Luis Saenz, District Attorney
> Cameron County District Attorney's Office
>
> Felix Sauceda, Jr., Chief
> Brownsville Police Department

**Defendants (below, not part of this appeal)**

> Brian Collier, Executive Director
> Texas Department of Criminal Justice
>
> Bobby Lumpkin, Director
> Texas Department of Criminal Justice,
> Correctional Institutions Division
>
> Kelly Strong, Senior Warden
> Huntsville Unit, Texas Department of Criminal Justice,

Correctional Institutions Division

**Counsel for Defendant-Appellants**

Jefferson Clendenin, Assistant Attorney General
Michael Abrams, Assistant Attorney General
Office of the Attorney General of Texas

Ari Cuenin
Stone Hilton, P.L.L.C.

Edward Sandoval, Administrative First Assistant District Attorney,
District Attorney's Office for the County of Cameron

Lena Cherie Chaisson-Muñoz, Assistant City Attorney/Chief Prosecutor,
City of Brownsville

Guillermo Samuel Trevino, City Attorney for the City of Brownsville

**Counsel for Defendants Collier, Lumpkin and Strong (below, not part of this appeal)**

Leah Jean O'Leary
Office of the Attorney General of Texas

/s/ Anne Fisher
Anne Fisher
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of
Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

**STATEMENT OF COUNSEL**
**PURSUANT TO FED. R. APP. P. 35(B)(1)**

Based on reasoned and studied professional judgment, undersigned counsel believes that *en banc* reconsideration is necessary to secure or maintain uniformity of the Court's decisions and that this case involves a question of exceptional importance because the majority's analysis of Article III standing conflicts with the United States Supreme Court decision in *Reed v. Goertz*, 598 U.S. 230 (2023), and with the decision of the United States Court of Appeals for the Eighth Circuit in *Johnson v. Griffin*, 69 F.4th 506 (8th Cir. 2023). Rehearing is especially necessary because the panel majority based its decision on the mistaken belief that the Texas Court of Criminal Appeals ("CCA") ruled in 2020 that Gutierrez could not obtain DNA testing even if he were to win his 42 U.S.C. § 1983 lawsuit; in fact, the CCA ruled in 2022 (after the declaratory judgment) that his motion for DNA testing to prove innocence of the death penalty was cognizable. The majority also incorrectly distinguished *Reed* by opining that the CCA was silent on whether Reed could obtain DNA testing in the event he won his section 1983 lawsuit. *Id.* Quite the opposite, the CCA squarely held that Reed could not obtain DNA testing.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF AUTHORITIES ..........................................................................v

STATEMENT OF THE ISSUES..................................................................1

STATEMENT OF THE COURSE OF PROCEEDINGS ........................................2

STATEMENT OF RELEVANT FACTS .................................................6

ARGUMENT .........................................................................................7

   I.  THE PANEL'S CREATION OF A DOCUMENT-INTENSIVE, FACT-SPECIFIC INQUIRY INTO STANDING CONFLICTS WITH THE SUPREME COURT'S DECISION IN *REED V. GOERTZ* AND CREATES A CIRCUIT SPLIT.....................................................8

     A. The Majority has Changed the Test for Standing Articulated in Reed. ...............................................................................8

     B. The Majority has Created a Circuit Split. .................................10

   II.  THE PANEL INCORRECTLY FOUND THAT THE CCA HAS ALREADY HELD THAT GUTIERREZ WOULD HAVE NO STATE-LAW DNA REMEDIES SHOULD HE SUCCEED IN HIS SECTION 1983 LAWSUIT. .......................................................11

     A. The Panel Overlooked the Operative CCA Decision Issued After the Declaratory Judgment...................................................11

     B. The Panel Incorrectly Characterized the CCA's Non-Binding Dicta as a "Holding." .............................................................13

   III. THE PANEL INCORRECTLY DISTINGUISHED *REED* BY OVERLOOKING THAT THE CCA DETERMINED IT WOULD NOT GRANT REED DNA TESTING EVEN IF REED WON HIS SECTION 1983 LAWSUIT. .......................................................14

CONCLUSION ....................................................................................16

# TABLE OF AUTHORITIES

## Federal Cases

*District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52 (2009) ................................................................................ 8

*Gutierrez v. Saenz*, 141 S. Ct. 127 (2020) ............................................... 4

*Gutierrez v. Stephens*, 590 F. App'x 371 (5th Cir. 2014) ....................... 2

*Hohn v. United States*, 524 U.S. 236 (1998) ................................... 14, 15

*Johnson v. Griffin*, 69 F.4th 506 (8th Cir. 2023) .................. iii, 1, 10, 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................... 9, 10

*Reed v. Goertz*, 598 U.S. 230 (2023) .................................. iii, 1, 7, 8, 9

*Skinner v. Switzer*, 562 U.S. 521 (2011) ................................................. 8

## Federal Statutes

42 U.S.C. § 1983 ............................................... iii, 1, 4, 11, 14

## State Cases

*Ex parte Gutierrez*, 337 S.W.3d 883 (Tex. Crim. App. 2011) ............... 2, 3, 13, 14

*Gutierrez v. State*, 663 S.W.3d 128 (Tex. Crim. App. 2022) ............................ 5, 6

*Gutierrez v. State,* 2020 WL 918669 (Tex. Crim. App. Feb. 26, 2020) ............. 3, 4

*In re Gutierrez,* 2011 WL 915352 (Tex. Crim. App. Feb. 16, 2011) ................... 14

*Reed v. State*, 541 S.W.3d 759 (Tex. Crim. App. 2017) ........................................ 15

*Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388 (Tex. 2016) .............................. 13, 14

## STATEMENT OF THE ISSUES

(1)    Does the majority's holding that the redressability prong necessary to establish Article III standing requires a fact-intensive, case-by-case analysis to predict whether a specific plaintiff would be likely to get relief should he win his section 1983 lawsuit conflict with the straightforward approach the Supreme Court used in *Reed v. Goertz*, 598 U.S. 230 (2023), and which was followed by the United States Court of Appeals for the Eighth Circuit in *Johnson v. Griffin*, 69 F.4th 506 (8th Cir. 2023)?

(2)    Was the majority incorrect in distinguishing *Reed* on the basis that the CCA purportedly "held" in 2011 and 2020 that Gutierrez could not obtain DNA testing "even if [Texas Code of Criminal Procedure] Chapter 64 did apply to evidence that might affect the punishment stage," where the CCA ruled in 2022 that Gutierrez's motion for DNA testing to prove his innocence of the death penalty was cognizable?

(3)    Was the majority incorrect in distinguishing *Reed* on the basis that the CCA had purportedly been silent on Reed's potential access to DNA testing after a favorable federal judgment, where the CCA had squarely held, prior to the Supreme Court's finding of standing, that Reed did not satisfy another requirement of Chapter 64 and thus would lose any motion for DNA testing even if he won his section 1983 lawsuit?

## STATEMENT OF THE COURSE OF PROCEEDINGS

Ruben Gutierrez was convicted of capital murder and related offenses in the killing of Escolastica Harrison and was sentenced to death in 1999. His appellate, state post-conviction, and federal habeas challenges were denied. *See Gutierrez v. Stephens*, 590 F. App'x 371, 373–75 (5th Cir. 2014). For the last thirteen years, Gutierrez has been seeking DNA testing under Texas Code of Criminal Procedure Chapter 64 of items recovered from the crime scene, including a blood-stained shirt belonging to Ms. Harrison's nephew and housemate, nail scrapings from Ms. Harrison, a loose hair wrapped around one of Ms. Harrison's fingers, and various blood samples from within Ms. Harrison's mobile home.

Gutierrez's first such attempt was denied by the trial court and the CCA in 2011. *See Ex parte Gutierrez*, 337 S.W.3d 883 (Tex. Crim. App. 2011). The CCA relied heavily on Texas's law of parties, holding that even if Gutierrez proved that he did not participate in the assault on Ms. Harrison, there were no reasonable grounds for testing under Chapter 64 because, as one of the parties, he was still guilty of capital murder. *Id.* at 894–95, 898–901. The CCA further held that Gutierrez was "at fault" for not seeking DNA testing at trial and that one of the pieces of evidence he sought to test – the hair around the victim's finger – was not in State custody and could not be tested. *Id.* at 895–98. Finally, it ruled that testing is not available under Chapter 64 to show that a death-sentenced prisoner is

innocent of the death penalty. *Id.* at 901. The court then stated that, "even if Chapter 64 did apply to evidence that might affect the punishment stage as well as conviction, appellant still would not be entitled to testing. Appellant would still have been death-eligible because the record facts satisfy the *Enmund/Tison* culpability requirements." *Id.* at 901 (referencing *Enmund v. Florida*, 458 U.S. 782 (1982) and *Tison v. Arizona*, 481 U.S. 137 (1987)).

Following additional proceedings, newly appointed federal habeas counsel in 2019 obtained access to files at the Cameron County District Attorney's Office. Counsel filed a new motion for DNA testing under Chapter 64, seeking testing of essentially the same materials as before. Several factors distinguished this motion from previous efforts: (1) Texas had repealed the "no fault" provision of Chapter 64, eliminating that as a basis for denying testing; (2) habeas counsel located the loose hair, previously thought lost, in a sealed envelope in the District Attorney's files; and (3) advances in DNA testing made it possible to obtain usable DNA from degraded samples and "touch" DNA from items with which a perpetrator has come into contact. ROA.84-85.

The trial court initially granted the DNA motion, but after the State filed a response and proposed order denying the testing, the trial court reversed course and signed the State's proposed order. ROA.66-68. The CCA affirmed the denial of relief. *Gutierrez v. State*, No. AP-77,089, 2020 WL 918669 (Tex. Crim. App. Feb.

26, 2020). Tracking its prior analysis, the court ruled that Gutierrez could not show he would not have been convicted if exculpatory DNA results had been obtained, and that testing is not available under Chapter 64 to show innocence of the death penalty. *Id.* at *5–9. The court then quoted its prior opinion that, "'even if Chapter 64 did apply to evidence that might affect the punishment stage,'" Gutierrez "'would still have been death-eligible.'" *Id.* at *9 (quoting *Gutierrez*, 337 S.W.3d at 901).

On September 26, 2019, Gutierrez filed his original complaint under 42 U.S.C. § 1983 in the district court. ROA.26. As relevant here, the complaint challenged the constitutionality of Texas's post-conviction DNA testing procedures. ROA.45-61. Following a stay of execution on other grounds and a remand from the Supreme Court, *see Gutierrez v. Saenz*, 141 S. Ct. 127, 128 (2020), the district court issued a partial declaratory judgment. ROA.2218.

Although the district court rejected many of Gutierrez's claims, it concluded that Chapter 64 violated Gutierrez's due process rights in one significant respect. The district court observed that Chapter 64 has been construed as allowing DNA testing only to establish innocence of a crime, not innocence of the death penalty. ROA.2214-15 (citing *Gutierrez v. State*, No. AP-77,089, 2020 WL 918669, at *8 (Tex. Crim. App. Feb. 26, 2020)). At the same time, however, Texas has granted death-sentenced prisoners the substantive right to obtain relief by a successive

post-conviction petition based on newly discovered or available evidence showing that the prisoner is innocent of the death penalty. ROA.2215 (citing TEX. CODE CRIM. PROC. art. 11.071, § 5(a)(3)). The district court held that the two statutory provisions "are irreconcilable." ROA.2216. Accordingly, the district court held that Chapter 64, as construed by the CCA, violated due process, ROA.2217, and granted declaratory relief. ROA.2218.

Following the district court's ruling, Gutierrez again filed a motion pursuant to Chapter 64 in state court seeking to enforce the declaratory judgment and requesting that the court order DNA testing to establish his innocence of the death penalty. ROA.2513-52. The trial court denied the motion, ruling that it lacked jurisdiction. On appeal, the State contended that the new motion was barred by the CCA's previous opinions regarding Gutierrez's death eligibility. Response to Gutierrez's Appeal of the District Court's Granting of the State's Plea to the Jurisdiction at 14-18, *Gutierrez v. State*, 663 S.W.3d 128 (Tex. Crim. App. 2022) (No. Ap-77,102), 2021 WL 5171391, at *14-18. The CCA did not accept those arguments, overruled the lower court's finding of no jurisdiction, and remanded for *de novo* consideration of the DNA testing motion to show innocence of the death penalty. *Gutierrez v. State*, 663 S.W.3d 128, 132 (Tex. Crim. App. 2022). On remand, the trial court denied the motion, and Gutierrez timely appealed to the CCA. That appeal is currently pending before the CCA awaiting a briefing

schedule. *See* Clerk's Record, at 439, *Gutierrez v. State*, 663 S.W.3d 128 (Tex. Crim. App. 2022) (No. Ap-77,108), https://search.txcourts.gov/Search Media.aspx?MediaVersionID=106b3b53-fb78-4aa8-9c9b-0781fb217719&coa =coscca&DT=RECORD&MediaID=9602c886-7906-4f03-aa18-9383021dc35c.

The district court granted the State's motion for partial final judgment on the DNA claims. ROA.3146-52. Appellants then appealed. ROA.3185. On February 8, 2024, a majority of the panel reversed the district court's judgment, holding that Gutierrez lacks standing. Ex. A at 1, 8–14. The majority reasoned that *Reed* was distinguishable because there the CCA had *not* held that, even if Chapter 64 violated federal law, Reed's request for DNA testing "would still fail." *Id*. at 12. By contrast, the majority believed that the CCA had so held in Gutierrez's case. As shown below, the majority was wrong about the CCA's holdings in both cases.

Judge Higginson dissented, concluding that Gutierrez has standing because his case cannot be distinguished from the Supreme Court's ruling in *Reed*. *Id.* at 15.

### STATEMENT OF RELEVANT FACTS

Because this petition centers on the declaratory judgment that the Texas post-conviction DNA statute is unconstitutional, a recitation of the evidence presented at Gutierrez's trial is not recounted here. A summary of the facts of the

case can be found in Gutierrez's initial brief to this Court, No. 21-70009,

Document 00516414245, pp. 1-4.

## ARGUMENT

In *Reed*, the Supreme Court held that a Texas prisoner denied DNA testing

has standing to raise a due process challenge to Texas's DNA testing statute. 598

U.S. at 234. The divided panel here nonetheless held that Gutierrez lacks such

standing by grafting onto *Reed* an additional layer of analysis. Specifically, the

majority reviewed the state court record to speculate that, in this case, state

officials would not permit DNA testing even in the face of a federal court

judgment because, in 2011 and 2020 opinions, the CCA said that favorable DNA

test results would not prove Guterriez innocent of the death penalty.

This was error in three stark respects: first, contrary to *Reed* and to the only

other Circuit to apply *Reed*, no such additional analysis is appropriate. Second, the

2011 and 2020 CCA statements on which the panel relied were dicta and, in any

event, were superseded by a 2022 opinion in which the CCA held open the

possibility of Gutierrez obtaining DNA testing to prove his innocence of the death

penalty. Third, in *Reed*, the CCA actually *had held* that Reed could not prove his

innocence even with exculpatory DNA results, and yet the Supreme Court still

ruled that Reed had standing. The basis upon which the panel majority

distinguished *Reed* was thus illusory in multiple respects.

I.  **THE PANEL'S CREATION OF A DOCUMENT-INTENSIVE, FACT-SPECIFIC INQUIRY INTO STANDING CONFLICTS WITH THE SUPREME COURT'S DECISION IN *REED V. GOERTZ* AND CREATES A CIRCUIT SPLIT.**

   **A. The Majority has Changed the Test for Standing Articulated in *Reed*.**

The Supreme Court has never held that a prisoner lacks Article III standing to bring a constitutional challenge against state DNA statutes that limit access to potentially exculpatory evidence. *See District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 67–68 (2009); *Skinner v. Switzer*, 562 U.S. 521, 525 (2011); *Reed*, 598 U.S. at 234. *Reed*, the only case to address the question explicitly, made clear that the standing requirements are not onerous:

> Reed sufficiently alleged an injury in fact: denial of access to the requested evidence. The state prosecutor, who is the named defendant, denied access to the evidence and thereby caused Reed's injury. And if a federal court concludes that Texas's post-conviction DNA testing procedures violate due process, that court order would eliminate the state prosecutor's justification for denying testing. It is 'substantially likely' that the state prosecutor would abide by such a court order.

598 U.S. at 234 (*citing Utah v. Evans*, 536 U.S. 452, 464 (2002)).

The Court concluded that "'the practical consequences of that change [in law] would amount to a significant increase in the likelihood' that the state prosecutor would grant access to the requested evidence." *Id.* (quoting *Evans*, 536 U.S. at 464). Justice Kavanaugh's analysis of Reed's standing was clear, direct, and easy to apply. It did not require an exacting analysis of the parties' arguments

in earlier proceedings to surmise whether state officials were likely to allow DNA testing in the face of a federal court order declaring that the state's limitations on such testing offend due process. *Id.*

The majority's opinion in *Gutierrez* is starkly to the contrary. Forgoing the straightforward rule from *Reed*, the majority fashioned a new test for standing that requires exhaustive parsing of the state court record, including a careful exegesis of the parties' earlier briefing, in order to divine the likelihood that a state actor will comply with a federal court judgment in a particular case. The majority recognized that it went well beyond the analysis in *Reed*: "It gives us pause that the Supreme Court in *Reed* did not mention examining the state court's decision for whether it might likely affect the prosecutor's likely actions." Ex. A at 12 n.3. The majority justified this break from *Reed* by reasoning that – because the Supreme Court was silent on a requirement to examine the state court's decision – the matter was undecided. *Id.* The majority speculated that the Court had not raised the issue because perhaps the CCA in *Reed* did not make a similar pronouncement to the one made in Gutierrez's case. *Id.*

Leaving aside that the state court *did* make such a pronouncement in Reed's case as explained in Section III, below, the majority's opinion contradicts *Reed*, which straightforwardly applied the long-standing factors for Article III standing. *See Reed*, 598 U.S. at 234; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61

(1992). If the Court in *Reed* had wanted to add a requirement that courts undertake a fact-specific and document-intensive inquiry to predict whether a particular defendant would actually grant the relief the plaintiff seeks, it would have said so. As Judge Higginson explained in his dissent:

> Instead of conducting a fact-specific inquiry and delving into what District Attorney Goertz himself would do, the Court determined that a declaratory judgment invalidating Texas's DNA testing procedure would significantly increase the likelihood that the state prosecutor would grant access to the requested DNA testing. Because the standing analysis of *Reed* applies here, Gutierrez, also facing execution, has standing to bring suit.

Ex. A at 15.

## B. The Majority has Created a Circuit Split.

The majority's opinion directly conflicts with *Johnson v. Griffin*, 69 F.4th 506 (8th Cir. 2023), which is the only other federal appellate opinion to apply *Reed*. The Eighth Circuit held that Johnson had standing under circumstances that are all but identical to those here. After recognizing the defendant's argument that standing was not specifically addressed in either *Osborne* or *Skinner*, the Eighth Circuit stated: "[A]ny lingering doubt about a prisoner's standing to bring the distinct procedural due process claim recognized by those two cases was dispelled by the Supreme Court's recent decision in *Reed v. Goertz*." *Id.* at 511. The Eighth Circuit held that "Johnson's injury is redressable because, as explained in *Reed*, 'if a federal court concludes [Arkansas's] post-conviction DNA testing procedures

violate due process, that court order would eliminate' the Prosecuting Attorney's 'justification for denying DNA testing.'" *Id.* at 511 (quoting *Reed*, 598 U.S. at 234).

Contrary to the majority's reasoning here, the Eighth Circuit's finding of standing was unaffected by the Arkansas Supreme Court's prior holding that Arkansas' statute allows DNA testing only if it will "significantly advance" the prisoner's claim of innocence, and that "none of the evidence that might result from the proposed testing could advance Johnson's claim of actual innocence or raise a reasonable probability that he did not murder Carol Heath." *Id.* at 508 (quoting state court decision). The Eighth Circuit, like Judge Higginson, simply followed *Reed* and applied it to the legal posture of the case.

## II. THE PANEL INCORRECTLY FOUND THAT THE CCA HAS ALREADY HELD THAT GUTIERREZ WOULD HAVE NO STATE-LAW DNA REMEDIES SHOULD HE SUCCEED IN HIS SECTION 1983 LAWSUIT.

### A. The Panel Overlooked the Operative CCA Decision Issued After the Declaratory Judgment.

After the federal district court's favorable ruling, Gutierrez filed a new motion for DNA testing to show that he was innocent of the death penalty. ROA.2513-52. Despite the State's argument that the new motion was barred by the CCA's 2011 and 2020 opinions referencing Gutierrez's death-eligibility, the CCA explicitly "express[ed] no opinion at this juncture with respect to an appropriate

disposition of the merits of Appellant's motion." *Gutierrez*, 663 S.W.3d at 132.[1]

Instead, the court reversed the trial court's ruling that it lacked jurisdiction and remanded for *de novo* review of Gutierrez's motion. *Id*. That ruling undermines the majority's surmise that Appellants would necessarily disobey the federal judgment in favor of the CCA's 2020 opinion: "[A] state court, if presented with Gutierrez's request for DNA testing, would be bound by the Texas Court of Criminal Appeals' holding that such testing would be meaningless." Ex. A at 14. If the CCA's 2011 and 2020 opinions were determinative of the merits of Gutierrez's 2022 DNA motion, the CCA would not have remanded in 2022 for the trial court to reach those same merits in the first instance.

The panel majority erred in looking only at the CCA's opinions pre-dating the declaratory judgment. Those opinions obviously did not contemplate the effects of the declaratory judgment, whereas the CCA's 2022 opinion did – and the 2022 opinion left open the possibility of DNA testing to prove Gutierrez's innocence of the death penalty. Thus, even assuming that Gutierrez's standing in federal court depends on a parsing of the state court record, the panel majority here looked to the wrong CCA opinion.

---

[1] Gutierrez was not on notice that this Court would, *sua sponte*, introduce a novel standing analysis pertaining to redressability. Gutierrez, therefore, raises this argument in response to the majority's new interpretation.

## B. The Panel Incorrectly Characterized the CCA's Non-Binding Dicta as a "Holding."

The majority incorrectly concluded that Gutierrez could not satisfy redressability because of the CCA's supposed "holding" in 2011 and 2020 that DNA testing "would be meaningless" to challenge his death sentence. Ex. A at 14. The only statement issued by the CCA regarding innocence of the death penalty, however, was its two-sentence comment quoted above concerning "if Chapter 64 did apply to evidence that might affect the punishment stage." *Gutierrez*, 337 S.W. 3d at 901. Even ignoring the CCA's 2022 opinion finding that Gutierrez's post-declaratory judgment motion was indeed cognizable, the CCA's earlier supposition was not a holding and was not binding on the Texas courts; it was obiter dictum. The panel majority erred by relying on such dictum to decide a question of federal standing.

Texas defines dictum as "[a]n opinion expressed by a court, but which, not being necessarily involved in the case, lacks the force of an adjudication; . . . [or] an opinion of a judge which does not embody the resolution or determination of the court, and made without argument, or full consideration of the point." *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 399 (Tex. 2016) (quotation omitted). The two-sentence reference to innocence of the death penalty was obiter dictum. Far from embodying "the resolution or determination of a court*," id.*, the reference was a hypothetical statement that followed the court's actual holding that Gutierrez was

13

not entitled to testing because favorable DNA evidence would not establish that Gutierrez was not a party to the crime. *Ex parte Gutierrez*, 337 S.W.3d at 901.

Furthermore, Gutierrez's previous Chapter 64 motions focused on why exculpatory DNA testing would have resulted in an acquittal – the requirement of the statute as written. Whether DNA testing would make Gutierrez ineligible for the death penalty was not addressed when oral argument was held before the CCA in the 2011 appeal, nor was it the focus of the briefing for Gutierrez's first two motions. *See In re Gutierrez*, No. AP-76406, 2011 WL 915352 (Tex. Crim. App. Feb. 16, 2011) (oral argument). The fact that the language in the prior opinions was issued without full consideration or oral argument further supports the conclusion that it was dictum. *See Seger*, 503 S.W. 3d at 400 (where the court of appeals' statement was made "'without argument, or full consideration of the point,'" it was "obiter dictum and had no precedential value") (citation omitted); *see also Hohn v. United States*, 524 U.S. 236, 251 (1998) (questioning the precedential value of a case when "the opinion was rendered without full briefing or argument.").

III. **THE PANEL INCORRECTLY DISTINGUISHED *REED* BY OVERLOOKING THAT THE CCA DETERMINED IT WOULD NOT GRANT REED DNA TESTING EVEN IF REED WON HIS SECTION 1983 LAWSUIT.**

The panel majority recognized that, "[i]f *Reed* is to be distinguished from this case, we need to determine if the Court of Criminal Appeals held, even if chain-of-custody limitations violated federal law, that Reed's claim would fail."

Ex. A at 11. The majority concluded that the CCA had been silent on the question of whether Reed could gain access to DNA testing if the state's chain-of-custody requirements were found to violate federal law. *Id.* 12-13. The majority thus distinguished *Reed* on the ground that "[t]he Texas court made no holding in *Reed* comparable to its holding in *Gutierrez*." *Id.* 12-13. The majority erred.

In order to obtain DNA testing, Reed, like Gutierrez here, would still need to satisfy all of the requirements of Chapter 64, which include the requirement that "the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice." Art. 64.03(a)(2)(B). The trial court found that Reed did not meet this requirement for seven distinct reasons. *See Reed v. State*, 541 S.W.3d 759, 777-78 (Tex. Crim. App. 2017). On appeal, the CCA affirmed, "hold[ing] that Reed failed to establish that his request is not made to unreasonably delay the execution of his sentence or the administration of justice." *Id.* at 778. The CCA's analysis of why Reed cannot get relief because he cannot satisfy section 64.03(a)(2)(B) spans three pages – far beyond the two sentences tacked on to the end of the CCA's outdated opinions in *Gutierrez*. The CCA squarely *held* that Reed cannot obtain DNA testing for reasons that have nothing to do with the DNA statute's constitutionality. Yet the Supreme Court nonetheless found that Reed had standing because his complaints about Chapter 64

were potentially redressable. The record in *Reed* thus refutes the majority's attempt to distinguish it from this case.

## CONCLUSION

This Court should grant rehearing *en banc*, or in the alternative, a panel rehearing.

Respectfully submitted,

/s/ Anne Fisher
Anne Fisher
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of
Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Dated: February 22, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused the foregoing to be served on the following person by ECF filing:

Jay Clendenin
Assistant Attorney General
Office of the Attorney General of Texas
Post Office Box 12548, Capitol Station
Austin, Texas 78711-2548

Edward Sandoval
Assistant District Attorney
Cameron County
964 E. Van Buren
Brownsville, Texas 78520

Lena Cherie Chaisson-Muñoz
Assistant City Attorney/Chief Prosecutor, City of Brownsville
City Attorney's Office
for the City of Brownsville
1001 E. Elizabeth Street
Brownsville, TX 78520-0000

/s/ Anne Fisher
Anne Fisher

Dated: February 22, 2024

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 35(b)(2)(A) because, excluding the parts of the document exempted from Federal Rule of Appellate Procedure 32(f), this document contains 3850 words.

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

/s/ Anne Fisher
Anne Fisher

Dated: February 22, 2024