No. 21-70009

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**RUBEN GUTIERREZ,**
        *Plaintiff-Appellee*,

**v.**

**FELIX SAENZ and LUIS SAUCEDA,**
        *Defendants-Appellants*.

_____

**On Appeal from the United States District Court
For the Southern District of Texas, Brownsville Division, No. 1:09-CV-22**

_____

**SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLEE**

_____

Anne Fisher
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 545 West, The Curtis
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520
Annie_Fisher@fd.org

Counsel for Plaintiff-Appellee

Dated: November 7, 2025

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following persons and entities as described by Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Plaintiff-Appellee**

Ruben Gutierrez
TDCJ Polunsky Unit
Livingston, Texas

**Counsel for Plaintiff-Appellee**

Anne Fisher
Federal Community Defender Office
for the Eastern District of Pennsylvania

**Appellants**

Luis Saenz, District Attorney
Cameron County District Attorney's Office

Felix Sauceda, Jr., Chief
Brownsville Police Department

**Defendants (below, not part of this appeal)**

Brian Collier, Executive Director
Texas Department of Criminal Justice

Bobby Lumpkin, Director
Texas Department of Criminal Justice,
Correctional Institutions Division

Kelly Strong, Senior Warden
Huntsville Unit, Texas Department of Criminal Justice,
Correctional Institutions Division

**Counsel for Appellants**

    Cameron Fraser, Assistant Solicitor General
    Office of the Attorney General of Texas

    Jefferson Clendenin, Assistant Attorney General
    Office of the Attorney General of Texas

    Guillermo (Will) S. Trevino, City Attorney
    City Attorney's Office for the City of Brownsville

**Counsel for Defendants Collier, Lumpkin & Lewis (below, not part of this appeal)**

    Leah Jean O'Leary
    Office of the Attorney General of Texas

                /s/ Anne Fisher
                Anne Fisher
                Assistant Federal Defender
                Federal Community Defender Office
                for the Eastern District of Pennsylvania
                601 Walnut Street
                Suite 545 West, The Curtis
                Philadelphia, PA 19106
                (215) 928-0520

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3 and Federal Rule of Appellate Procedure 34(a)(1), Appellee Ruben Gutierrez respectfully requests oral argument. In their Supplemental Brief, Appellants raised new arguments based on new legal and factual developments since the case was first submitted to this Court in September 2023. For these reasons and others, Appellee believes that oral argument would be helpful to the Court.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF AUTHORITIES ..............................................................................v

INTRODUCTION ...........................................................................................1

SUPPLEMENTAL STATEMENT OF THE CASE ..............................................5

ARGUMENT ..................................................................................................9

I.      THE SUPREME COURT'S DECISION IN THIS CASE CONFIRMS
        THAT MR. GUTIERREZ'S CLAIM IS TIMELY. .......................................9

II.     APPELLANTS' CLAIM-PRECLUSION ARGUMENTS ARE
        MERITLESS AND HAVE ALREADY BEEN REJECTED BY THE
        SUPREME COURT. .............................................................................11

III.    CONTRARY TO APPELLANTS' ARGUMENTS, *REED II* AND
        *WOOD* HAVE NO BEARING ON THIS COURT'S ANALYSIS IN
        THIS CASE. ........................................................................................14

IV.     MR. GUTIERREZ'S DUE PROCESS OBJECTION TO CHAPTER
        64'S RECORD EVIDENCE LIMITATION IS NEITHER NEW NOR
        FORFEITED. .......................................................................................16

CONCLUSION ..............................................................................................20

# TABLE OF AUTHORITIES

**Federal Cases**

*Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*,
557 U.S. 52 (2009) .................................................................. 14-16

*Douglas v. People of State of Cal.*,
372 U.S. 353 (1963) ....................................................................19

*Gutierrez v. Saenz*,
145 S. Ct. 118 (2024) ................................................................ 6

*Gutierrez v. Saenz*,
606 U.S. 305 (2025) ............................................................. *passim*

*Griffin v. Illinois*,
351 U.S. 12 (1956) .................................................................. 19

*Savory v. Lyons*
469 F.3d 667 (7th Cir. 2006) .................................................... 11

*Reed v. Goertz*,
136 F.4th 535 (5th Cir. 2025) ............................................... 5, 14

*Reed v. Goertz*,
598 U.S. 230 (2023) ................................................................. 10

*Rocha v. Thaler*,
626 F.3d 815 (5th Cir. 2010) ................................................. 18-19

*Sawyer v. Whitley*,
505 U.S. 333 (1992) ................................................................ 19

*Tison v. Arizona*,
481 U.S. 137 (1987) ................................................................ 19

*Wood v. Patton*,
150 F.4th 377 (5th Cir. 2025) ............................................... 5, 14


**Federal Statutes**

42 U.S.C. § 1983 ............................................................... *passim*

**State Cases**

*Ex parte Blue*,
230 S.W.3d 151 (Tex. Crim. App. 2007) .......................................... 18

*Gutierrez v. State*,
663 S.W.3d 128 (Tex. Crim. App. 2022) .......................................... 6

*Gutierrez v. State*, No. AP-77,
2020 WL 918669 (Tex. Crim. App. Feb. 26, 2020) .................................. 3, 9, 18

*Gutierrez v. State*, No. AP-77,
2024 WL 3220514 (Tex. Crim. App. June 27, 2024) ......................... 5, 6, 12, 13

**State Statutes**

Tex. Code Crim. Proc. Ann. art. 11.071 ........................................ *passim*

Tex. Code Crim. Proc. Ann. art. 64 ............................................ *passim*

**INTRODUCTION**

Ruben Gutierrez filed the instant 42 U.S.C. § 1983 claim subsequent to the Texas state courts' denial of his 2019 motion for DNA testing under Texas Code of Criminal Procedure Chapter 64. In support of that motion, Mr. Gutierrez proffered substantial post-trial evidence that, considered alongside anticipated exculpatory DNA results, would cast doubt on his role as a principal in the crime and thus his eligibility for the death penalty.

For instance, Mr. Gutierrez adduced evidence that, the summer before the crime, Ms. Harrison's nephew and the State's initial suspect, Avel Cuellar, approached his own nephew (Fermin Cuellar) about stealing "a lot" of money from Ms. Harrison and that, at some point after she was killed, Cuellar told Fermin that he had money buried in the trailer park—and almost $500,000 of Ms. Harrison's money remains unaccounted for. 18 RR 212; Mot. Post-Conv. DNA Testing Pursuant Ch. 64 at 32 (p. 72 of .pdf in footnoted link), *Ex parte Gutierrez*, No. 98-CR-1391-A (107th Dist. Ct. Cameron Cnty., Tex., June 14, 2019).[1] The motion also explained that it was Cuellar, while "visibly shaking" during his interview

---

[1] This motion can be found on the public docket at: https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=381166d7-5bc1-4af9-863d-50be837150f0&coa=coscca&DT=BRIEF&MediaID=e7c1614b-b713-4b77-a70e-495e7f78fbbd.

with the police, who first suggested Mr. Gutierrez as a suspect. *Id.* at 33–34 (pp. 73–74 of .pdf).

Mr. Gutierrez also demonstrated that the lead detective, Det. Garcia, falsified aspects of the investigation and his testimony against Mr. Gutierrez in several important respects. Det. Garcia had falsely written in his police report that Cuellar had passed a polygraph exam, when the polygraph report in fact revealed "significant criteria" that "indicate[d] deception at questions pertaining to the knowledge and/or participation in this offense." *Id.* at 35 (p. 75 of .pdf).

Det. Garcia also claimed that eyewitnesses placed Mr. Gutierrez near the home of the victim, Escolastica Harrison, "around the time that the pathologist estimated the time of death was." 19 RR 40. In fact, the pathologist did not estimate a time of death at all, and eyewitnesses reported seeing Ms. Harrison alive well after witnesses placed Mr. Gutierrez at the scene. Mot. Post-Conv. DNA Testing at 26–27 (pp. 66–67 of .pdf). Det. Garcia also testified that he showed eyewitness Veronica Lopez a photo array with Mr. Gutierrez's photo but she "was unable to identify Ruben as having been at the mobile home." 19 RR 46. In fact, Lopez identified a different person in the photo array as the man she saw at the crime scene that day, a fact that Det. Garcia concealed from the jury. Mot. Post-Conv. DNA Testing at 27 (p. 67 of .pdf). Additional newly proffered evidence also

casts doubt on the reliability of Mr. Gutierrez's statement. *Id.* at 28–31(pp. 68–71 of .pdf).

The motion urged that DNA testing could implicate Cuellar in the homicide, thus undermining the State's theory that Mr. Gutierrez and his co-defendant Rene Garcia were in Ms. Harrison's house. Testing could also show that it was Pedro Gracia, the alleged getaway driver, who was in the house with Garcia, again undermining the State's theory and supporting the defense that Mr. Gutierrez played no role in and had no knowledge of the killing. *Id.* at 38–43 (pp. 78–83 of .pdf). This favorable DNA evidence, combined with the newly proffered evidence, could establish that Mr. Gutierrez was death ineligible because he did not kill or attempt to kill Ms. Harrison, nor was he a "major participant" in the crime.

The Texas Court of Criminal Appeals (CCA) denied Mr. Gutierrez's motion, without considering the new evidence. The CCA concluded that DNA testing is not available under Chapter 64 to show ineligibility for the death penalty. Moreover, the Court stated that, "even if Chapter 64 did apply to evidence that might affect the punishment stage," Mr. Gutierrez "would still have been death-eligible." *Gutierrez v. State*, No. AP-77,089, 2020 WL 918669, at *8 (Tex. Crim. App. Feb. 26, 2020). In so ruling, the CCA refused to consider Mr. Gutierrez's newly proffered evidence, basing its ruling only on "the record facts" of trial. *See id.* ("*[T]he record facts* satisfy the *Enmund/Tison* culpability requirements."

(emphasis added)). The court also did not address what effect the additional evidence, or the additional evidence combined with exculpatory DNA results, would have on any future attack on Mr. Gutierrez's death eligibility.

In the instant § 1983 case, the Supreme Court held that Mr. Gutierrez's due process claim encompasses the CCA's refusal to consider the post-trial evidence first proffered in his 2019 Chapter 64 motion. *Gutierrez v. Saenz*, 606 U.S. 305, 316–17, 317 n.2 (2025). This recognition by the Supreme Court concerning the scope of the due process claim largely resolves the issues raised by the State in this appeal. Because it is beyond dispute that Mr. Gutierrez filed his § 1983 complaint within the statute of limitations period following the CCA's denial of that motion, his complaint is timely, contrary to Appellants' arguments. *See* Supp. Br. Def'ts-Appellants 6–7, Dkt. No. 170.

Similarly, because Mr. Gutierrez's complaint encompassed the CCA's refusal to consider post-trial evidence proffered in support of his Chapter 64 motion, *Gutierrez*, 606 U.S. at 316–17, 317 n.2, his arguments on that ground cannot, consistent with the Supreme Court's opinion, be deemed a "new claim" first raised in this appeal, as Appellants would have it. *See* Supp. Br. Def'ts-Appellants 18–20. Quite the opposite, the CCA's consideration of only trial evidence under Chapter 64 is part of its "irreconcilability" with Texas Code of

4

Criminal Procedure Article 11.071 § 5(a)(3), which violates due process, as the district court held. *See* ROA.2216.

The Supreme Court's ruling also forecloses Appellants' argument that Mr. Gutierrez's due process claim is precluded by the CCA's denial of his most recent Chapter 64 motion. Appellants raised the identical argument to the Supreme Court, which the Court rejected. *Gutierrez*, 606 U.S.at 320–321. Moreover, the CCA's most recent ruling did not address the federal due process claim at issue here, which encompasses a scope-of-the-evidence challenge—indeed, it did not address the merits of Mr. Gutierrez's Chapter 64 motion at all—and therefore cannot preclude consideration of the claim. *See Gutierrez v. State*, No. AP-77,108, 2024 WL 3220514, at *4 (Tex. Crim. App. June 27, 2024).

Finally, as to the merits of Mr. Gutierrez's due process claim, Appellants' reliance on *Reed v. Goertz*, 136 F.4th 535 (5th Cir. 2025) (*Reed II*), and *Wood v. Patton*, 150 F.4th 377 (5th Cir. 2025), is misplaced. These cases are inapposite because they pertain to aspects of Chapter 64 not implicated in this case. Chapter 64 violates due process as to Mr. Gutierrez for the reasons the district court held, and this Court should affirm.

## SUPPLEMENTAL STATEMENT OF THE CASE

At the time this appeal was previously pending in this Court, Mr. Gutierrez's third Chapter 64 motion for DNA testing was pending in state court. In that

motion, Mr. Gutierrez sought to enforce the district court's declaratory judgment. ROA.2513–52. The trial court denied the motion, ruling that it lacked jurisdiction. The CCA disagreed and remanded the case to the trial court. *Gutierrez v. State*, 663 S.W.3d 128, 132 (Tex. Crim. App. 2022).

On remand, the trial court did not address the merits of the motion, ruling that it was collaterally estopped and barred by the doctrines of res judicata and law of the case, based on the CCA's denials of Mr. Gutierrez's prior Chapter 64 motions. Order, *In re Gutierrez*, No. 98-CR-1391-A (107th Dist. Ct., Cameron Cnty, Tex., May 26, 2022). While Mr. Gutierrez's appeal was pending in the CCA, this Court reversed the district court and issued its mandate, thus vacating the district court judgment that Mr. Gutierrez was asking the CCA to enforce. The CCA then declined to address the merits and affirmed the lower court's order. *See Gutierrez v. State*, No. AP-77,108, 2024 WL 3220514, at *4 (Tex. Crim. App. June 27, 2024).

After the CCA issued that decision, the Supreme Court granted certiorari in this § 1983 action to review this Court's holding that Mr. Gutierrez lacked standing to pursue his claim. *Gutierrez v. Saenz*, 145 S. Ct. 118 (2024).

In Supreme Court briefing, Appellants argued Mr. Gutierrez's claim was not redressable because the CCA had already ruled that even if Chapter 64 were available to demonstrate ineligibility for the death penalty, Mr. Gutierrez would be

unable to make such a showing. Brief for Respondents at 25, *Gutierrez v. Saenz*, 606 U.S. 305 (2025) (No. 23-7809), 2025 WL 290311, at \*25. Appellants argued that this ruling rendered Mr. Gutierrez's claim unredressable because it constituted a "freestanding basis"—independent of Mr. Gutierrez's § 1983 claim—on which to deny DNA testing. *Id.*

Appellants further argued that that the CCA's denial of Mr. Gutierrez's most recent Chapter 64 motion rendered the § 1983 action moot and barred federal jurisdiction under the *Rooker-Feldman* doctrine. *Id.* at 42–43 ("Gutierrez already attempted to use the district court's declaratory judgment to compel Saenz to hand over the evidence for testing, and Saenz refused—a decision that was upheld by the CCA under state law."). Appellants accused Mr. Gutierrez of "fil[ing] a complaint in federal court inviting district court review and rejection of the CCA's 2024 holding" and "repackag[ing] an impermissible appeal of the CCA's decision as an original Section 1983 action." *Id.* at 45.

The Supreme Court rejected all of these arguments. First, the Court rejected Appellants' argument that the CCA's holding that Mr. Gutierrez was unable to establish ineligibility for the death penalty was "independent" of his due process claim. On the contrary, the Court held, the CCA's ruling on that point was part and parcel of the due process violation that the § 1983 claim identified. *Gutierrez*, 606 U.S. at 316–17. The Court observed that Mr. Gutierrez's 2019 motion was distinct

7

from his prior requests for DNA testing because it was "bolstered by . . . new evidence that, according to Gutierrez, would implicate Harrison's nephew, Avel Cuellar, as one of the two people who stabbed Harrison to death." *Id.* at 311. The CCA's refusal to consider that new evidence, the Court held, formed an essential part of Mr. Gutierrez's due process claim. The Court explained, "Gutierrez's complaint takes issue not just with Article 64's limitation to actual innocence claims, but with . . . the TCCA's refusal to consider 'newly proffered evidence' in assessing claims like his own." *Id.* at 316–17; *see also id.* at 317 n.2 (observing that the CCA's refusal to consider post-trial evidence "is, of course, what Gutierrez has challenged under the Due Process Clause").

The Court also rejected Appellants' argument that Mr. Gutierrez's claim is rendered moot by DA Saenz's assurance that he will refuse to grant access to the DNA evidence even in the face of a federal court judgment. *Id.* at 320–21. The Court castigated this argument as inviting "all manner of defendants to manufacture mootness by ensuring that, no matter what procedures a court requires the defendant to employ, the same substantive outcome will result." *Id.* at 321. The Supreme Court's holdings foreclose Appellants' principal arguments here.

## ARGUMENT

### I. THE SUPREME COURT'S DECISION IN THIS CASE CONFIRMS THAT MR. GUTIERREZ'S CLAIM IS TIMELY.

The Supreme Court's ruling makes clear that Mr. Gutierrez's claim is timely because it arises from the CCA's denial of his 2019 motion for DNA testing.

In support of his 2019 DNA testing motion, Mr. Gutierrez proffered additional post-trial evidence that, considered alongside the anticipated DNA results, would cast doubt on his role as a principal in the crime and thus his eligibility for the death penalty. The newly proffered evidence included, but was not limited to, evidence that Avel Cuellar—the victim's nephew and the initial suspect in her murder—hatched a plan to rob Ms. Harrison, lied to the police about his involvement in the offense, and later bragged about having cash buried in the trailer park where the crime occurred. In denying Mr. Gutierrez's motion, the CCA expressly declined to consider his newly proffered evidence and based its ruling only on "the record facts" of trial. *Gutierrez*, 2020 WL 918669, at \*8.

This "record facts" limitation is a central element of Mr. Gutierrez's § 1983 claim. As the Supreme Court explained, "Gutierrez's complaint takes issue not just with Article 64's limitation to actual innocence claims, but with . . . the TCCA's refusal to consider 'newly proffered evidence' in assessing claims like his own." *Gutierrez*, 606 U.S. at 317. That "newly proffered evidence" was submitted for the

first time in Mr. Gutierrez's 2019 motion; his claim therefore accrued at the CCA's denial of that motion.

Appellants argue that Gutierrez could have brought his claim after the CCA denied his 2011 Chapter 64 motion. Supp. Br. Def'ts-Appellants 6. Their argument depends on characterizing Mr. Gutierrez's injury as limited to the "denial of DNA testing to challenge his sentence." *Id.* But the Supreme Court has already rejected that narrow construction of Mr. Gutierrez's claim. *See Gutierrez*, 606 U.S. at 316–17.

Moreover, as Mr. Gutierrez explained in his original briefing to this Court, and as the district court properly held, Mr. Gutierrez's 2019 motion was based on both new legal and new factual developments since his earlier request for DNA testing. Appellee Br. 31–33, Dkt. No. 79. These developments included the elimination of Chapter 64's "at fault" provision, which had formed part of the basis for the denial of Mr. Gutierrez's prior request for DNA testing; the discovery of the hair that was found in the decedent's hand, which Appellants had previously maintained was lost; and recent advances in DNA testing capabilities. *Id.*

Appellants cite *Reed v. Goertz*, 598 U.S. 230 (2023), but fail to explain how it has any bearing on this analysis. Appellants assert that *Reed* "confirms" that Mr. Gutierrez's claim is time-barred but do not address how *Reed* impacts this case. Supp. Br. Def'ts-Appellants 6. In fact, Appellants previously acknowledged that

"*Reed* does not squarely address the statute of limitations issue that matters to this appeal." Appellees' Resp. Second Mot. Stay Proceedings 7 (May 5, 2022), Dkt. No. 66. That is because *Reed* addressed only the question of whether the statute of limitations begins to run at the end of the state-court litigation or when the state trial court denies DNA testing. 598 U.S. at 959. Here, Mr. Gutierrez's claim would be timely based on *either* accrual date.

Nor does it help Appellants to rely on *Savory v. Lyons*, 469 F.3d 667 (7th Cir. 2006). There, the petitioner conceded that his § 1983 suit was filed seven years after the state court denied his request for DNA testing but argued that the defendants' refusal to release the requested evidence amounted to "a continuing violation." *Id.* at 672. Mr. Gutierrez has made no such argument. The CCA's denial of his 2019 motion marks the accrual of his claim, and he timely filed his complaint within the statute of limitations.

## II. APPELLANTS' CLAIM-PRECLUSION ARGUMENTS ARE MERITLESS AND HAVE ALREADY BEEN REJECTED BY THE SUPREME COURT.

In their Supreme Court briefing, Appellants argued that this case was moot because the CCA had already denied Mr. Gutierrez's subsequent request for DNA testing following the district court's issuance of the declaratory judgment. Invoking the *Rooker-Feldman* doctrine, Appellants there accused Gutierrez of "fil[ing] a complaint in federal court inviting district court review and rejection of the CCA's

2024 holding" and "repackag[ing] an impermissible appeal of the CCA's decision as an original Section 1983 action." Brief for Respondents at 45, *Gutierrez v. Saenz*, 606 U.S. 305 (2025) (No. 23-7809), 2025 WL 290311, at \*45; *see also id.* ("Gutierrez cannot use this appeal to belatedly challenge the CCA's decision holding that he is ineligible for DNA testing notwithstanding the declaratory judgment."); *id.* (arguing that Gutierrez cannot ask the federal courts "to exercise what would effectively be appellate jurisdiction over state appellate courts"). The Supreme Court rejected these arguments. *Gutierrez*, 606 U.S. at 320–321.

Appellants here assert these same arguments that Mr. Gutierrez's claim is "now precluded" by the CCA's 2024 opinion. Once again invoking *Rooker-Feldman*, and mirroring their mootness arguments, Appellants accuse Mr. Gutierrez of "fil[ing] a complaint in federal court inviting district court review and rejection of the TCCA's 2024 holding" and of "repackage[ing] an impermissible appeal of the TCCA's decision as a § 1983 action." Supp. Br. Def'ts-Appellants 12 (internal quotations omitted). Aside from the fact that the Supreme Court has already disposed of these arguments, *see Gutierrez*, 606 U.S. at 320–321, Appellants are wrong on multiple counts.

First, Appellants omit the fact that this Court had already vacated the district court's declaratory judgment before the CCA ruled on Mr. Gutierrez's Chapter 64 appeal. *See* Dkt. No. 149-1 (mandate issued June 17, 2024); *Gutierrez v. State*, No.

12

AP-77,108, 2024 WL 3220514 (Tex. Crim. App. June 27, 2024). The CCA could not and did not consider the preclusive effect of the vacated declaratory judgment.

Second, the CCA has never adjudicated Mr. Gutierrez's federal due process claim. As the Supreme Court explained, Mr. Gutierrez's federal due process claim encompasses "not just . . . Article 64's limitation to actual innocence claims, but . . . the TCCA's refusal to consider 'newly proffered evidence' in assessing claims like his own." *Gutierrez*, 606 U.S. at 316–17. Appellants argue that the CCA adjudicated Mr. Gutierrez's due process claim when it stated that "[e]ven if Chapter 64 applied to evidence affecting the punishment stage, given the evidence in this case, [Gutierrez] cannot show that the jury would have answered the punishment issues differently should he obtain exculpatory DNA results." Supp. Br. Def'ts-Appellants 12 (quoting *Gutierrez*, 2024 WL 3220514, at *4). But in reaching this conclusion, the CCA again limited its consideration to the "record facts" of trial, *Gutierrez*, 2024 WL 3220514, at *4, and refused to consider Mr. Gutierrez's "newly proffered evidence," *Gutierrez*, 606 U.S. at 317. Far from adjudicating the federal due process claim at issue here, the CCA's refusal again demonstrated the fundamental unfairness of Chapter 64, which is, "of course, what Gutierrez has challenged under the Due Process Clause." *Id.* at 317 n.2.

In fact, the CCA declined to adjudicate the merits of Mr. Gutierrez's 2021 DNA motion entirely; it merely affirmed the trial court's holding that his motion

13

was collaterally estopped and barred by the doctrines of res judicata and law of the case. That holding harkened back to the CCA's denials of Mr. Gutierrez's previous requests for DNA testing, which were made in 2011 and 2019 and predate these § 1983 proceedings. *Gutierrez*, 2024 WL 3220514, at *4. As Appellants concede, those prior Chapter 64 proceedings relied upon by the CCA did not address the federal due process violation that the district court below found. *See* Supp. Br. Def'ts-Appellants 10 n.1 (arguing that Mr. Gutierrez "raised the specific procedural-due-process claim at issue here for the first time in his 2021 Chapter 64 motion, and the TCCA adjudicated that specific claim for the first time in 2024").

III.  **CONTRARY TO APPELLANTS' ARGUMENTS, *REED II* AND *WOOD* HAVE NO BEARING ON THIS COURT'S ANALYSIS IN THIS CASE.**

Appellants suggest that *Reed II*, 136 F.4th 535 (5th Cir. 2025), and *Wood v. Patton*, 150 F.4th 377 (5th Cir. 2025), undercut Mr. Gutierrez's due process claim. But these cases are inapposite—both concerned challenges to *different* provisions of Chapter 64. Supp. Br. Def'ts-Appellants 15–16. Recognizing that fact, Appellants argue that the cases reinforce the "slim room" plaintiffs have to bring successful *Osborne* and *Skinner* claims. *Id.* at 16. But unlike in the *Reed* and *Wood* cases, in which both plaintiffs lost in district court, the district court in Mr. Gutierrez's case identified the kind of fundamental, constitutional inadequacy that *Osborne* and *Skinner* contemplated. *See* Dist. Ct. Op. 24 ("Texas procedure creates

a process which gives a person sentenced to death the substantive right to bring a subsequent habeas action under Article 11.071 § 5(a)(3), but then barricades the primary avenue for him to make use of that right."); *id.* at 25 ("Due process does not countenance procedural sleight of hand whereby a state extends a right with one hand and then takes it away with another. To do so renders meaningless an express right and transgresses a principle of fundamental fairness.") (citing *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 69 (2009), among other cases).

Moreover, the constitutional injury is not, as Appellants imply, whether Chapter 64 motions or subsequent habeas applications are merely difficult to win or whether it is possible to win a subsequent habeas application without DNA evidence. Supp. Br. Def'ts-Appellants 17 ("Neither right is illusory."). It is that Texas law and procedures grant the right to state habeas relief from one's death sentence but withhold DNA evidence necessary to avail oneself of that right.

Finally, Mr. Gutierrez's due process claim is not foreclosed by *Reed II*, as Appellants contend. *See* Supp. Br. Def'ts-Appellants 20 (arguing that this Court considered and rejected a claim that the CCA's rule excluding post-trial facts violates due process). In *Reed II*, this Court did not consider how the CCA's exclusion of post-trial factual developments in applying Chapter 64 impacts a defendant's right to file a subsequent state habeas action under section 5(a)(3) or

how it impacts a defendant convicted under the law of parties. *See id.* at 547. Thus, the *Reed II* court was not presented with the constitutional infirmity identified by the district court and analyzed by the Supreme Court in this case.

Although states have flexibility to craft post-conviction DNA testing procedures, they may not do so in a way inconsistent with the "traditions and conscience of our people" or with "any recognized principle of fundamental fairness." *Osborne*, 557 U.S. at 70. This Court should affirm the district court's judgment.

## IV. MR. GUTIERREZ'S DUE PROCESS OBJECTION TO CHAPTER 64'S RECORD EVIDENCE LIMITATION IS NEITHER NEW NOR FORFEITED.

Appellants argue that Chapter 64's record-evidence limitation was not raised below and cannot be introduced here. Supp. Br. Def'ts-Appellants 18–19. At bottom, though, Appellants offer nothing more than disagreement with the Supreme Court's reading of Mr. Gutierrez's complaint. The Court observed: "Gutierrez's complaint pinpoints at least three features of Article 64 that prevented him from gaining access to the relevant evidence to which, he says, the Due Process Clause entitles him. . . . [One is] that it was unfair for the TCCA not to consider new evidence he had proffered since his trial." *Gutierrez*, 606 U.S. at 312; *see also id.* at 317 n.2. The Court continued, "A fair procedure, [Gutierrez] contends, would require considering the effect exculpatory DNA evidence would

have on a jury that also heard 'new evidence casting doubt on [Gutierrez's] statement' to the police." *Id.* at 312. During oral argument, Justice Kagan emphasized that the due process claim at issue concerns the entire "body of procedures that are in Chapter 64" that prevent Mr. Gutierrez from seeking a reduction in his sentence. Oral Arg. Tr. 91; *see also id.* at 63 (observing that Mr. Gutierrez is "challenging the whole realm of procedures [in Chapter 64] that prevents him from getting access to DNA testing"). Justice Kavanaugh similarly "understood the complaint and the thrust of the argument to be the denial of fair procedures with respect to the underlying right." *Id*. at 79. Thus, the Supreme Court recognized that Mr. Gutierrez's due process claim encompasses a scope-of-the-evidence challenge. That recognition is binding here.

Appellants also argue that this Court lacks appellate jurisdiction to consider this argument because it "is confined to reviewing the district court's final judgment." Supp. Br. Def'ts-Appellants 19–20. Appellants fail to appreciate, however, that Chapter 64's evidentiary limitation is at the heart of the constitutional injury the district court found, because it is one of the ways in which Chapter 64's procedures are "irreconcilable" with the rights encompassed in section 5(a)(3). Dist. Ct. Op. 24. As the district court explained: "A stark conflict exists between Chapter 64 and Article 11.071. Texas courts have applied these laws in a way that denies a habeas petitioner sentenced to death his rights granted

by the State of Texas and protected under the Due Process Clause of the

Constitution." Dist. Ct. Op. 25.

Prisoners seeking DNA evidence to challenge their sentences are frustrated

not only by Chapter 64's restriction to proving innocence of the crime, but also by

the narrow scope of trial record evidence considered under Chapter 64 as

compared to the broad scope of new evidence cognizable in a subsequent state

habeas petition. Here, the CCA expressly considered Mr. Gutierrez's death

eligibility only in light of "the record facts." *Gutierrez*, 2020 WL 918669, at

*8 (Mr. Gutierrez "would still have been death-eligible because *the record facts*

satisfy the *Enmund/Tison* culpability requirements" (emphasis added)). The CCA

similarly explained that it "need not" consider the additional evidence with respect

to Mr. Gutierrez's conviction because it would not undermine his liability for

conviction as a party. *Id.* at 11–12. But a viable claim of death ineligibility in a

successive habeas application under section 5(a)(3) would not be limited to the

evidence presented at trial, nor would it be concerned with liability as a party.

Section 5(a)(3) is designed to allow a showing of death ineligibility based on

newly developed evidence. *Ex parte Blue*, 230 S.W.3d 151, 163 (Tex. Crim. App.

2007); Tex. Code Crim. Proc. Ann. art. 11.071 § 5(a)(3); *see also Rocha v. Thaler*,

626 F.3d 815, 822 (5th Cir. 2010) (noting that CCA considers whether "the facts

and evidence contained in the successive habeas petition, if true, would make a

clear and convincing showing that the applicant is actually innocent of the death penalty"); *Sawyer v. Whitley*, 505 U.S. 333, 346 (1992) (same standard, "based on the evidence proffered plus all record evidence").

Use of Chapter 64 to develop a claim under section 5(a)(3) necessarily requires consideration of the same scope of evidence in order to adequately vindicate the right encompassed in 5(a)(3). *See* Dist. Ct. Op. 24 (explaining that when there is a "conflict . . . between laws," due process requires that they "be interpreted to preserve the substantive rights" offered by each and citing *Douglas v. People of State of Cal.*, 372 U.S. 353 (1963), and *Griffin v. Illinois*, 351 U.S. 12, 17 (1956)). Otherwise, a petitioner convicted under Texas's law of parties would be prevented from accessing DNA testing notwithstanding post-trial evidence demonstrating that he was not a "major participant" in the crime as required for death eligibility under *Tison v. Arizona*, 481 U.S. 137, 158 (1987). Because Chapter 64 prevents a petitioner from using post-trial evidence to obtain DNA testing that would be used to challenge his sentence—even though that same evidence would be appropriate in the subsequent habeas corpus challenge—the right to file such a subsequent habeas petition remains illusory. This disconnect between the remedies is the very constitutional infirmity the district court identified in its declaratory judgment, and this Court has jurisdiction to consider it.

## CONCLUSION

For all the foregoing reasons, this Court should affirm the district court's judgment.

Respectfully submitted,

/s/ Anne Fisher
Anne Fisher
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 545 West, The Curtis
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520
Annie_Fisher@fd.org


Counsel for Plaintiff-Appellee

Dated: November 7, 2025

## Certificate of Compliance

I do hereby certify that this motion complies with this Court's July 18, 2025, order, Dkt. No. 166, and with Fed. R. App. Proc. 32(a)(7)(B), because it contains 4,511 words, Microsoft Word 2010, Times New Roman, 14 points.

/s/ Anne Fisher
Anne Fisher


## Certificate of Compliance with ECF Filing Standards

I do hereby certify that: (1) all required privacy redactions have been made pursuant to Fifth Circuit Rule 25.2.13; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus-scanning program and is free of viruses.

/s/ Anne Fisher
Anne Fisher

## Certificate of Service

     I, Anne Fisher, hereby certify that on this 7th day of November 2025, I served the foregoing on the following persons by ECF filing:

Cameron Fraser
Assistant Solicitor General
Jefferson David Clendenin
Assistant Attorney General
Office of the Attorney General of Texas
Post Office Box 12548
Austin, Texas 78711-2548

Edward Sandoval
First Assistant District Attorney
Cameron County
964 East Harrison St.
Brownsville, Texas 78520

Guillermo (Will) S. Trevino
City Attorney
City Attorney's Office for the City of Brownsville
1001 E. Elizabeth St.
Brownsville, TX 78520-0000

          /s/ Anne Fisher
          Anne Fisher