# In the United States Court of Appeals for the Fifth Circuit

RUBEN GUTIERREZ,

*Plaintiff-Appellee,*

*v.*

LUIS V. SAENZ; FELIX SAUCEDA, CHIEF, BROWNSVILLE POLICE DEPARTMENT,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of Texas, Brownsville Division

## SUPPLEMENTAL REPLY BRIEF FOR DEFENDANTS-APPELLANTS

*(Counsel Listed on Inside Cover)*

EDWARD SANDOVAL
First Assistant District Attorney
Cameron County, Texas
964 East Harrison St.
Brownsville, Texas 78520

*Counsel for Defendant-Appellant Luis V. Saenz*

GUILLERMO (WILL) S. TREVINO
City Attorney
City Attorney's Office for the City of Brownsville
1001 E. Elizabeth Street
Brownsville, TX 78520-0000

*Counsel for Defendant-Appellant Felix Sauceda*

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

WILLIAM R. PETERSON
Solicitor General

CAMERON FRASER
Assistant Solicitor General
Cameron.Fraser@oag.texas.gov

JEFFERSON DAVID CLENDENIN
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................... ii

Introduction ............................................................................................... 1

Argument .................................................................................................... 3

    I.   The Record-Facts Claim Is Not Before the Court. .................................. 3

    II.  *Reed II* Already Rejected the Same Record-Facts Claim. ........................... 4

    III. Gutierrez's Due-Process Claim Is Time-Barred. ....................................... 6

    IV. Gutierrez's Due-Process Claim Is Precluded. ......................................... 7

    V.  Chapter 64's Limitation to Conviction Challenges Does Not
       Violate Due Process. ........................................................................ 10

Conclusion ................................................................................................ 13

Certificate of Service ................................................................................ 14

Certificate of Compliance ......................................................................... 14

i

# Table of Authorities

Page(s)

**Cases:**

*Acheson Hotels, LLC v. Laufer*,
601 U.S. 1 (2023) ............................................................................................. 8

*China Agritech v. Michael H. Resh*,
584 U.S. 732 (2018) ......................................................................................... 6

*Citizens Ins. Co. of Am. v. Daccach*,
217 S.W.3d 430 (Tex. 2007) ......................................................................... 8

*Dist. Att'y's Off. for the Third Jud. Dist. v. Osborne*,
557 U.S. 52 (2009) ..........................................................................10, 11, 12

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005) ......................................................................................... 8

*Greenlaw v. United States*,
554 U.S. 237 (2008) ......................................................................................1, 4

*Gutierrez v. Saenz*,
606 U.S. 305 (2025) ...................................................................................3, 4, 7

*Gutierrez v. State*,
2024 WL 3220514 (Tex. Crim. App. June 27, 2024) .............................. 2, 9

*Gutierrez v. State*,
663 S.W.3d 128 (Tex. Crim. App. 2022) ................................................... 9

*Ex parte Gutierrez*,
337 S.W.3d 883 (Tex. Crim. App. 2011) ................................................... 7

*Ex parte Gutierrez*,
No. 98-CR-1391-A (107th Dist. Ct., Cameron County, Tex. July 7, 2021) ............................................................................................................... 9

*Medina v. California*,
505 U.S. 437 (1992) ......................................................................................... 10

*Murray v. Giarratano*,
492 U.S. 1 (1989) ............................................................................................. 11

*Portillo v. Cunningham*,
872 F.3d 728 (5th Cir. 2017) ......................................................................... 8

*Reed v. Goertz*,
136 F.4th 535 (5th Cir. 2025) (*Reed II*) ..................................... 1, 2, 4, 5, 10, 11

*Skinner v. Switzer*,
562 U.S. 521 (2011) ....................................................... 10

*Wood v. Patton*,
150 F.4th 377 (5th Cir. 2025) ................................................. 2, 10, 11

**Constitutional Provisions and Statutes:**

U.S Const. amend. XIV ....................................................... 5

28 U.S.C. § 1291 ....................................................... 1

# INTRODUCTION

As the State anticipated in its opening supplemental brief, Gutierrez is trying to completely change the scope of this appeal based on the Supreme Court's analysis of his complaint for purposes of standing. But this is an appeal of a declaratory judgment, and the Supreme Courts's comments about claims in Gutierrez's complaint cannot affect the scope of this appeal when those claims are not part of the declaratory judgment.

The district court declared Chapter 64 unconstitutional insofar as it allows access to postconviction DNA testing to challenge a prisoner's conviction but not his sentence. ROA.2218. In its final judgment, the district court denied and dismissed every other claim Gutierrez raised in his complaint. The State appealed the declaratory judgment, but Gutierrez did not cross-appeal the dismissal of his other claims. The declaratory judgment does not mention the word "record" or say anything about the record-facts claim. So even assuming the record-facts claim is part of Gutierrez's complaint for purposes of standing, it is not part of the final judgment that the State appealed. The record-facts claim is therefore not within the Court's appellate jurisdiction. 28 U.S.C. § 1291. And the Court cannot "alter a judgment to benefit a nonappealing party," because only "a cross-appeal" can "justify a remedy in favor of an appellee." *Greenlaw v. United States*, 554 U.S. 237, 244–45 (2008) (citation omitted). Further, even assuming the record-facts claim were properly before the Court, a different panel rejected the same claim earlier this year. *Reed v. Goertz*, 136 F.4th 535, 547 (5th Cir. 2025) (*Reed II*).

Besides trying to expand the scope of the judgment to include the record-facts claim, Gutierrez also tries to squeeze the record-facts claim into his statute-of-limitations argument. He now argues, for the first time, that the timeliness of his complaint hinges on the record-facts claim, which he says accrued in 2019 when the TCCA first rejected his Chapter 64 motion based on that rule. But again, even assuming the record-facts claim is part of Gutierrez's complaint and was timely raised, that claim is not on appeal. The claim that *is* on appeal—that Chapter 64's limitation to conviction challenges violates due process—has been known to Gutierrez since at least 2011, when the TCCA first rejected his Chapter 64 motion on that ground. The claim therefore extinguished in 2013 and is time-barred by six years.

As to preclusion, the due-process claim is precluded because Gutierrez raised the same claim in the TCCA while his certiorari petition was pending, and the TCCA rejected it on the merits. *Gutierrez v. State*, 2024 WL 3220514, at \*4 (Tex. Crim. App. June 27, 2024).

On the merits, *Reed II* and *Wood v. Patton*, 150 F.4th 377 (5th Cir. 2025), recently rejected analogous challenges to Chapter 64. Chapter 64's limitation to conviction challenges does not violate due process because it does not offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation." *Wood*, 150 F.4th at 383 (cleaned up). The Court should reverse.

# ARGUMENT

## I. The Record-Facts Claim Is Not Before the Court.

The State appealed the district court's final judgment, which says:

> The Court **DISMISSES** and **DENIES** all of Ruben Gutierrez's ("Gutierrez") DNA claims in this matter with the exception of the Court's March 23, 2021 declaratory judgment concluding that giving a defendant the right to a successive habeas petition for innocence of the death penalty . . . but then denying him DNA testing under [Chapter 64] unless he can demonstrate innocence of the crime is fundamentally unfair and offends procedural due process.

Dist. Ct. Dkt. No. 173.

The "March 23, 2021" declaratory judgment does not say anything about Gutierrez's record-facts claim. ROA.2193–2218. And Gutierrez did not cross-appeal the denial of "all" his other claims. Thus, this Court's appellate jurisdiction is limited to the declaratory judgment and does not include the record-facts claim.

To get around this straightforward reality, Gutierrez relies on a statement in the Supreme Court's standing analysis about the scope of his complaint. The majority explained that standing is based on "Gutierrez's complaint," not "the declaratory judgment the District Court later issued." *Gutierrez v. Saenz*, 606 U.S. 305, 317 (2025). Thus, because Gutierrez's complaint contains a footnote taking "issue with the TCCA's refusal to consider 'newly proffered evidence' in assessing claims like his own," the narrow scope of the declaratory judgment could not "retroactively deprive[] the District Court of jurisdiction over Gutierrez's complaint." *Id.* The majority acknowledged that Gutierrez "did not cross-appeal the scope of the District Court's judgment," but held that the scope of the declaratory judgment did not

require it to dismiss his complaint "for lack of standing." *Id.* at 318 n.3. This analysis is limited to the scope of Gutierrez's complaint for purposes of standing. It has nothing to do with the scope of the appeal, which is limited to the district court's final judgment.

It is therefore irrelevant that the Supreme Court said Gutierrez's *complaint* contains the record-facts claim: This is not a motion-to-dismiss appeal, and thus Gutierrez's complaint is not before the Court.

Nor is Gutierrez correct when he argues (at 17) that the record-facts claim is part of the judgment on appeal because it is "at the heart of the constitutional injury the district court found." Again, the declaratory judgment says nothing about the TCCA's record-facts rule. ROA.2193–2218. The claim is therefore not part of the judgment on appeal and not within this Court's appellate jurisdiction. Nor may the Court expand the scope of the judgment in favor of a nonappealing party. *Greenlaw*, 554 U.S. at 244–45.

## II. *Reed II* Already Rejected the Same Record-Facts Claim.

Regardless of whether the record-facts claim is before the Court, it is nonetheless meritless under binding precedent. After the Supreme Court issued its opinion holding that Gutierrez has standing, another panel of this Court rejected the same record-facts claim. In *Reed II*, the plaintiff challenged the TCCA's requirement that the Chapter 64 "inquiry exclude consideration of posttrial factual developments." 136 F.4th at 547. The plaintiff argued—like Gutierrez argues here—that when filing a Chapter 64 motion, he has "a 'fundamental right'" to submit new, posttrial evidence. *Id.* This Court disagreed and held that the record-facts rule does

4

not violate due process because requiring States to augment the trial record for purposes of Chapter 64 motions would "be inconsistent with well-established precedent in other contexts." *Id.* at 548. For example, it would require States to grant prisoners more procedures in Chapter 64 motions than what they are entitled to in direct appeals and federal habeas review, both of which are limited to the trial evidence. *Id.* at 547–48. "If due process permits of such a limitation in the federal courts, 'the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state court system.'" *Id.* at 548 (citation omitted). Thus, the record-facts limitation does not violate due process, which "requires much less of postconviction procedures than of preconviction ones." *Id.* at 547.

Gutierrez argues (at 15–16) that *Reed II* is inapplicable because it "did not consider how the CCA's exclusion of post-trial factual developments in applying Chapter 64 impacts a defendant's right to file a subsequent state habeas action under section 5(a)(3) or how it impacts a defendant convicted under the law of parties." But that is splitting hairs. *Reed II* held that state courts adjudicating Chapter 64 motions need not consider posttrial factual developments *at all*. Framing the issue more narrowly does not help Gutierrez get around *Reed II*'s holding. Indeed, by trying to frame the record-facts claim more narrowly to get around *Reed II*, Gutierrez runs even more headlong into the same issue. Namely, the declaratory judgment on appeal says nothing about "post-trial factual developments," much less about the interplay between "post-trial factual developments" and "a defendant's right to file a subsequent state habeas action."

## III. Gutierrez's Due-Process Claim Is Time-Barred.

Gutierrez now argues for the first time (at 9) that the record-facts claim was "a central element" of his complaint and that, because he offered new posttrial evidence for the first time in his 2019 motion for DNA testing, his federal complaint was timely filed within two years of that date. In other words, Gutierrez argues (at 18) that, because the TCCA's 2019 opinion "expressly considered" his "death eligibility only in light of 'the record facts,'" his injury did not accrue until then. Gutierrez is wrong again.

To begin, by going all-in on the record-facts claim, Gutierrez has abandoned all the arguments he previously made before this Court with respect to the statute of limitations. In his prior brief in this appeal, Gutierrez argued that the limitations period began to run in 2019 because his second motion for DNA testing was based on "new legal and factual developments." ECF 79 at 31. As to new legal developments, Gutierrez argued that the 2019 motion was based on an amendment to Chapter 64 that eliminated the "'at fault' provision of the prior statute." *Id.* at 31–32. As to new factual developments, Gutierrez argued that (1) he was seeking DNA testing of a newly discovered strand of hair "found in the decedent's hand" and (2) the motion was "also based on recent advances in DNA testing." *Id.* at 32–33. Nowhere in his prior brief before this panel did Gutierrez argue that his 2019 motion was based on the post-trial factual developments he now highlights.

In any event, reframing the statute-of-limitations analysis in terms of the record-facts claim does not help Gutierrez for the same reasons discussed above. It is claims, not complaints, that are timely. *See, e.g.*, *China Agritech v. Michael H. Resh*, 584 U.S.

732, 736 n.1 (2018) (explaining that a statute of limitations begins to run when a "cause of action accrues"). In other words, a complaint can contain timely *and* untimely claims. Thus, even assuming Gutierrez properly and timely raised the record-facts claim in his complaint, that claim is not part of the declaratory judgment and not before the Court. The claim that *is* part of the declaratory judgment and *is* before this Court—that Chapter 64 violates due process because it allows a defendant to challenge his conviction but not his sentence—was untimely for the reasons articulated in the State's opening supplemental brief. ECF 170 at 6–7. Gutierrez has been aware of that limitation since at least 2011, when the TCCA rejected his first motion for DNA testing and explained that Chapter 64 "does not authorize testing when exculpatory testing results might affect only the punishment or sentence that [Gutierrez] received." *Ex parte Gutierrez*, 337 S.W.3d 883, 901 (Tex. Crim. App. 2011) (citation omitted). The claim thus extinguished in 2013 and was untimely by six years.

## IV. Gutierrez's Due-Process Claim Is Precluded.

Gutierrez implies (at 11–12) that the State argued preclusion before the Supreme Court, which rejected it. But the State did not, and could not have, argued preclusion before the Supreme Court. The Supreme Court "only granted certiorari to consider Gutierrez's Article III standing to bring his suit." *Gutierrez*, 606 U.S. at 317 n.2. Because the Supreme Court proceedings were purely jurisdictional, the State could raise only jurisdictional arguments. So the State argued that the TCCA's 2024 rejection of Gutierrez's third motion for DNA testing mooted the appeal and barred Gutierrez's claim under *Rooker-Feldman*. Mootness and *Rooker-Feldman* are both

jurisdictional issues. *E.g.*, *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 4 (2023) (mootness is jurisdictional); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 n.2 (2005) (*Rooker-Feldman* is jurisdictional). In its opinion, the majority did not address those arguments. As to preclusion, it is not jurisdictional. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) ("Preclusion, of course, is not a jurisdictional matter."). The State thus did not—and could not have—raised it before the Supreme Court.

Gutierrez next argues (at 13) that the TCCA's 2024 decision is not preclusive because, when it rejected Gutierrez's identical due-process claim, this Court had vacated the district court's declaratory judgment. That is irrelevant. For purposes of preclusion, the only questions are (1) whether Gutierrez is now seeking adjudication in federal court of the same claim that was already adjudicated on the merits by a state court, and (2) whether Gutierrez was a party to the state-court litigation. *Portillo v. Cunningham*, 872 F.3d 728, 735 (5th Cir. 2017) (quoting *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007)). Gutierrez argues only that the TCCA never rejected the same due-process claim because, according to the Supreme Court, Gutierrez's complaint includes the record-facts claim, which Gutierrez did not raise before the TCCA. He is wrong again.

The question is not whether the TCCA's 2024 opinion precludes a *different* claim that Gutierrez raised in his complaint; the question is whether it precludes the claim that is currently before this Court. That claim, which is the basis of the district court's declaratory judgment, is that Chapter 64 violates due process by allowing use of posttrial DNA evidence to challenge a conviction but not a sentence. While his

federal appeal was pending, Gutierrez filed a third Chapter 64 motion in a Texas trial court raising that exact claim. *Gutierrez*, 2024 WL 3220514, at *3. *See* Mot. for Post-Conviction DNA Testing Pursuant to Ch. 64, *Ex parte Gutierrez*, No. 98-CR-1391-A (107th Dist. Ct., Cameron County, Tex. July 7, 2021) (on file with court). He argued that Chapter 64 is "irreconcilable" with Texas law governing subsequent habeas applications, because Chapter 64 limits DNA evidence to challenge a conviction but not a sentence. *Id.* at 4–6. When the Texas trial court rejected that claim, he turned to the TCCA. *See* Appellant Gutierrez's Appeal from the Court's Order Granting the State's Plea to the Juris. & Dismissing Applicant's Mot. for Ch. 64 DNA Testing (Opening Br.) at 3, 9–10, *Gutierrez v. State*, 663 S.W.3d 128 (Tex. Crim. App. 2022) (No. AP-77,102). There, Gutierrez asked the TCCA to vindicate his federal "due process right to obtain DNA testing" to challenge his sentence. *Id.* at 3. The TCCA rejected that claim on the merits. *Gutierrez*, 2024 WL 3220514, at *4. So the claim on which Gutierrez received a declaratory judgment—that Chapter 64 violates due process because it allows access to postconviction DNA evidence to challenge a conviction but not a sentence—is the same claim that the TCCA rejected in 2024 while Gutierrez's certiorari petition was pending before the Supreme Court. *See* Opening Br. 10 ("A federal judge has determined that Mr. Gutierrez's constitutional rights are being violated, and this Court has the means and *the duty to remedy this ongoing constitutional violation*." (emphasis added)).

It was Gutierrez's decision to engage in parallel litigation of the same claim in state and federal court. That decision comes at a cost: Gutierrez cannot ask this Court to re-adjudicate a due-process claim that the TCCA already rejected.

## V. Chapter 64's Limitation to Conviction Challenges Does Not Violate Due Process.

The Supreme Court has set a high standard for challenging state DNA-access procedures. *See, e.g.*, *Dist. Att'y's Off. for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 72 (2009) (rejecting challenge to Alaska's postconviction DNA-access procedures); *see also Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (explaining that a state prisoner has "slim room . . . to show that the governing state law denies him procedural due process"); *see also Medina v. California*, 505 U.S. 437, 443 (1992) ("In the field of criminal law, we have defined the category of infractions that violate fundamental fairness very narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." (cleaned up)). And this Court has repeatedly rejected due-process challenges to Chapter 64. *See Reed II*, 136 F.4th at 535 (rejecting three due-process challenges to Chapter 64); *Wood*, 150 F.4th at 377 (rejecting two different due-process challenges to Chapter 64). The Court should do so again here.

*Reed II* is particularly instructive. Relying on *Osborne* and *Skinner*, *Reed II* rejected multiple due-process challenges to Chapter 64, including a claim that Chapter 64 "prevents an inmate from obtaining DNA testing that, together with posttrial developments, can show his innocence by inculpating a third party." 136 F.4th at 546. The Court explained that the "exoneration requirement exists to ensure that the DNA tests will prove a convicted person's innocence and not merely muddy the waters." *Id.* at 547 (cleaned up). Thus, the Court could not agree "that

due process requires the state to test evidence that would not demonstrate a reasonable probability of innocence." *Id.*

Here, to the extent Gutierrez argues Chapter 64 violates due process because it is limited to claims of actual innocence rather than challenges to his sentence, *Reed II* already held that the actual-innocence requirement is not unconstitutional. Under *Reed II*, it is "not enough to disagree with how the state has elected to use its permissible discretion" in erecting barriers to postconviction DNA testing. *Id.* at 546. Instead, the prisoner must show that the "standards are fundamentally unfair or unjust in some way." *Id.* Gutierrez cannot do so here.

*Wood* rejected several additional due-process challenges to Chapter 64 and further emphasized the high bar prisoners must clear to successfully challenge state postconviction DNA-access statutes. *Wood* explained that the "constitutional question is whether the state's procedure offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation." 150 F.4th at 383 (cleaned up). Limiting Chapter 64 motions to claims of actual innocence does not offend any such foundational principle. State prisoners have no federal constitutional right to access postconviction DNA testing under state law, *Osborne*, 557 U.S. at 72, and they have no federal constitutional right to file a subsequent habeas application under state law, *Murray v. Giarratano*, 492 U.S. 1, 7–8 (1989). When Texas chose to confer access to both under narrow circumstances, it reasonably balanced "traditional notions of finality," *Osborne*, 557 U.S. at 72, with the delays inherent in postconviction litigation and the further delays that would

accompany unlimited access to postconviction DNA testing. Those delays are apparent in this case: Gutierrez has been litigating Chapter 64 motions in state and federal court for 15 years.

In short, this Court has repeatedly upheld the right of the Texas Legislature to craft a postconviction DNA-access statute that balances finality and access. Recognizing that federal intervention into these procedures is reserved only for instances of unfairness rooted in the "traditions and conscience of our people," *id.* at 69 (citation omitted), this Court has declined to interfere with those judgments. Because the Legislature's decision to limit Chapter 64 motions to claims of actual innocence does not offend the "traditions and conscience of our people," *id.* (citation omitted), the Court should reverse the declaratory judgment.

# Conclusion

The Court should reverse the declaratory judgment and hold that Chapter 64 does not violate due process by limiting access to postconviction DNA evidence to conviction challenges.

Respectfully submitted.

/s/ Edward Sandoval
Edward Sandoval
First Assistant District Attorney
Cameron County, Texas
964 East Harrison St.
Brownsville, Texas 78520

*Counsel for Defendant-Appellant Luis V. Saenz*

/s/ Guillermo (Will) S. Trevino
Guillermo (Will) S. Trevino
City Attorney
City Attorney's Office for the City of Brownsville
1001 E. Elizabeth Street
Brownsville, TX 78520-0000

*Counsel for Defendant-Appellant Felix Sauceda*

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

William R. Peterson
Solicitor General

/s/ Cameron Fraser
Cameron Fraser
Assistant Solicitor General
Cameron.Fraser@oag.texas.gov

Jefferson David Clendenin
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

*Counsel for Defendants-Appellants*

## Certificate of Service

On November 24, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Cameron Fraser
CAMERON FRASER

## Certificate of Compliance

This brief complies with the Court's July 18, 2025 order, ECF No. 166, and (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,201 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Cameron Fraser
CAMERON FRASER