# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
February 8, 2024
Lyle W. Cayce
Clerk

No. 21-70009

Ruben Gutierrez,

*Plaintiff—Appellee,*

*versus*

Luis V. Saenz; Felix Sauceda, *Chief, Brownsville Police Department,*

*Defendants—Appellants.*

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:19-CV-185

_____

Before Southwick, Haynes, and Higginson, *Circuit Judges.*

Leslie H. Southwick, *Circuit Judge*:

     In 1999, Ruben Gutierrez was convicted of capital murder and sentenced to death in a Texas state court. Since 2011, Gutierrez's efforts to secure postconviction DNA testing have been denied in state and federal court. In this Section 1983 case, the district court accepted his claim that a particular limitation in Texas's DNA testing statute was unconstitutional. We conclude that Gutierrez had no standing to make this claim. We VACATE the district court's judgment and REMAND for the complaint to be dismissed for lack of jurisdiction.

No. 21-70009

## FACTUAL AND PROCEDURAL BACKGROUND

In September 1998, 85-year-old Escolastica Harrison was murdered. *Ex parte Gutierrez*, 337 S.W.3d 883, 886 (Tex. Crim. App. 2011). Harrison had been living with her nephew, Avel Cuellar, in a home that also served as the office for a mobile-home park in Brownsville, Texas. Gutierrez and Cuellar were friends. They along with other friends frequently gathered behind Harrison's home to drink and socialize. Because of Harrison's mistrust of banks, she had about $600,000 in cash in her home. Gutierrez had befriended Harrison and sometimes ran errands for her. Sadly, that led to Gutierrez's finding out about the money. Gutierrez crafted a plan to steal it.

Three men were involved in the crime on September 5, 1998: Gutierrez, Rene Garcia, and Pedro Gracia. Only two entered the home, and Gutierrez insists he was the one who stayed outside. Harrison was murdered during the robbery. Police soon considered Gutierrez a suspect.

On three separate days, Gutierrez made three contradictory statements to the police. Gutierrez first told police he was not involved with Harrison's murder, claiming an alibi. When the alibi failed, Gutierrez told police that he had planned to "rip off" Harrison but had waited at a park while Rene Garcia and Pedro Gracia stole from her; he had never wanted them to kill her. Gutierrez last stated that he had lied about waiting in a park and that he had, in fact, been in Harrison's home on the day of her murder. When Rene Garcia failed to lure Harrison outside the home so that Gutierrez could discreetly steal the money, Gutierrez entered and saw Rene Garcia repeatedly stab the victim with a screwdriver. Gutierrez took the money, and Pedro Gracia drove the three of them away from the home.

At the 1999 trial in Cameron County state district court, the prosecution's theory was that Gutierrez intentionally murdered Harrison, either as a principal or party. The prosecution relied on (1) the testimony of the medical

examiner that the stab wounds came from two different screwdrivers; (2) Gutierrez's statement that he and Rene Garcia had been inside the victim's home with two different screwdrivers; and (3) four witnesses placing Gutierrez at the crime scene on the day of the killing.

The jury was instructed that it could convict Gutierrez for capital murder if it found he acted alone or as a party with an accomplice to cause Harrison's death intentionally. The jury returned a general verdict of guilt, and in April 1999 the trial judge sentenced him to death. The Texas Court of Criminal Appeals affirmed in 2002.

Then began decades-long postconviction proceedings. Gutierrez filed a state habeas application that was denied by the Texas Court of Criminal Appeals in 2008. Gutierrez then filed a habeas application in federal district court in 2009. The district court stayed the proceedings to allow him to pursue unexhausted state law claims in state court. As part of these additional claims, Gutierrez requested counsel be appointed to file a Texas Code of Criminal Procedure Chapter 64 motion for DNA testing of several pieces of evidence: (1) a blood sample taken from the victim; (2) a shirt belonging to Cuellar that had blood stains on it; (3) nail scrapings from the victim; (4) several blood samples from in the home; and (5) a loose hair recovered from the victim's finger. The state court denied the request, and the Court of Criminal Appeals dismissed Gutierrez's appeal from the decision as premature because he had not actually filed a motion for DNA testing at that point.

Gutierrez then filed his state-court motion for postconviction DNA testing under Chapter 64 in 2010. In his motion, Gutierrez acknowledged being one of the three men involved in the robbery of Harrison. He claimed DNA evidence would show he was not one of the two individuals who entered the victim's home — and by extension, would show by a preponderance of the evidence that jurors would not have convicted him of capital murder

or sentenced him to death. The trial judge denied the motion. The Court of Criminal Appeals affirmed in 2011, in part on the grounds that Chapter 64 "does not authorize testing when exculpatory testing results might affect only the punishment or sentence that he received." *Id.* at 901 (citing TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A)).

The federal district court reopened the habeas case once the state proceedings concluded in 2011. It denied Gutierrez's habeas application entirely and his request for a certificate of appealability. *See Gutierrez v. Stephens*, 590 F. App'x 371, 374 (5th Cir. 2014). This court also denied a certificate of appealability. *Id.* at 375.

Over the next few years, Gutierrez continued to seek DNA testing. In June 2019, the state district court initially granted his motion for DNA testing but withdrew the order a few days later and then denied the motion. On February 26, 2020, the Court of Criminal Appeals upheld the denial. *Gutierrez v. State*, No. AP-77,089, 2020 WL 918669, at *9 (Tex. Crim. App. Feb. 26, 2020).

While the state-court proceedings were ongoing, Gutierrez brought this suit under 42 U.S.C. § 1983 in the United States District Court, Southern District of Texas in Brownsville. The only defendants who are parties to this appeal are Cameron County District Attorney Luis V. Saenz and Brownsville Police Chief Felix Sauceda, Jr. Gutierrez's September 2019 complaint challenged both (1) the constitutionality of Texas postconviction DNA testing procedures, and (2) execution protocols prohibiting the presence of chaplains or religious ministers inside the execution room. Gutierrez amended his complaint after the February 2020 decision of the Court of Criminal Appeals. The defendants moved to dismiss. The district court granted the defendants' motion in part but declined to dismiss

No. 21-70009

Gutierrez's challenge to the constitutionality of Texas law on DNA testing. Gutierrez's execution was then stayed.

This court vacated the district court's stay, but our decision was in turn vacated by the Supreme Court. *Gutierrez v. Saenz*, 818 F. App'x 309, 315 (5th Cir. 2020), *cert. granted, judgment vacated*, 141 S. Ct. 1260 (2021). The Supreme Court ordered us "to remand the case to the District Court for further and prompt consideration of the merits of petitioner's underlying claims regarding the presence of a spiritual advisor in the execution chamber." *Gutierrez*, 141 S. Ct. at 1261. That is what we did.

In March 2023, the district court granted the defendants' opposed motion to dismiss Gutierrez's religious exercise claims as moot after the Director of the Texas Department of Criminal Justice submitted an affidavit approving Gutierrez's request to have his chosen spiritual adviser pray aloud and place a hand on Gutierrez's shoulder during the execution, among other requests. Gutierrez did not appeal the dismissal.

Besides the religious accommodation issues, Gutierrez continued his efforts to acquire DNA testing. He claimed that a limitation under Texas law for acquiring that testing was unconstitutional. The alleged invalidity was not directly with Chapter 64 but with how it improperly limited the rights granted in another Texas statute that governs successive habeas applications for those sentenced to death. *See* TEX. CODE CRIM. PROC. art. 11.071. As the federal district court put it, "Texas grants the substantive right to file a second habeas petition with a clear and convincing showing of innocence of the death penalty in Article 11.071 [§ 5(a)(3)], and then Chapter 64 denies the petitioner access to DNA evidence by which a person can avail himself of that right." *Gutierrez v. Saenz*, 565 F. Supp. 3d 892, 910 (S.D. Tex. 2021). In the district court's view, the right to bring a successive habeas application to claim innocence of the death penalty was "illusory" and therefore violated

procedural due process. *Id.* at 910–11. The district court granted a declaratory judgment for Gutierrez. *Id.* at 911. The district court later entered partial final judgment as to the DNA claims. The defendants timely appealed.

## DISCUSSION

Because we conclude that Gutierrez did not have standing to bring this suit, it is the only issue we consider.[1]

Texas prisoner Gutierrez brought suit under Section 1983 to challenge the constitutionality of a limitation under Texas law for when death-row inmates are entitled to DNA testing of evidence. Section 1983 is the necessary federal statutory vehicle because, as we will later discuss at some length, the Texas Court of Criminal Appeals earlier denied Gutierrez the testing he seeks. Though barred from making a direct challenge in federal court to that state-court denial, he may make a facial challenge to the statutes, rules, and interpretations on which the denial was based. *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013). The Supreme Court recently applied those principles when it allowed another Texas inmate's claim of constitutional defect in Texas's DNA testing procedures after the Court of Criminal Appeals had denied such testing. *See Reed v. Goertz*, 598 U.S. 230,

---

[1] The district court rejected the defendants' argument that Gutierrez's constitutional challenge is barred by the relevant statute of limitations. Section 1983 claims are subject to a state's general personal injury statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The parties agree that the relevant statute is Texas's general personal injury statute of limitations, which is two years. TEX. CIV. PRAC. & REM. CODE § 16.003(a). The district court concluded that events long after the 2011 Texas Court of Criminal Appeals opinion that first upheld the denial of DNA testing to Gutierrez had restarted the two-year period. Those events, though, such as amendments to the DNA statute, would have to be germane to the claim that prohibiting testing for evidence that at most would affect sentencing violated due process. Otherwise, the claim was untimely. In light of our ruling as to standing, we need not resolve this separate issue.

235 (2023). Even though the Court of Criminal Appeals had already rejected that prisoner's effort to have DNA testing of evidence, the Supreme Court allowed the claim because he did "'not challenge the adverse' state-court decisions themselves, but rather 'target[ed] as unconstitutional the Texas statute they authoritatively construed.'" *Id.* (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)).

Reed's argument was that strict chain-of-custody requirements violated due process. *Id.* at 233. Gutierrez has a different claim, namely, that the state violates due process by permitting testing only if the evidence could establish the prisoner would not have been convicted, thereby preventing testing if resulting evidence would be relevant only to the sentence. The defendants allege that Gutierrez has no standing to make that claim. If a party lacks Article III standing to pursue claims, a federal court lacks subject matter jurisdiction to adjudicate them. *See Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022). We examine standing *de novo*. *NAACP v. City of Kyle*, 626 F.3d 233, 236 (5th Cir. 2010).

To establish Article III standing, a plaintiff must prove that: (1) an "injury in fact" has occurred; (2) the injury can fairly be traced to the defendant's conduct; and (3) a favorable ruling will likely redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The defendant district attorney and police chief assert that Gutierrez cannot satisfy the third requirement. Gutierrez's claimed injury is not redressable against these defendants, the argument goes, because they do not enforce Texas's DNA testing statute and the district court's declaratory judgment does not direct them to do anything. Our question, then, is whether a declaratory judgment that Texas's procedures for DNA testing are constitutionally flawed redresses the claimed injury.

7

No. 21-70009

Seeking an answer, we return to the recent Supreme Court precedent that allowed a different inmate to assert a claim about flaws in Texas's DNA testing requirements. *See Reed*, 598 U.S. 230. The Court concluded that a prisoner had standing to pursue a declaratory judgment against a state prosecutor that Texas's postconviction DNA testing law "failed to provide procedural due process." *Id.* at 233–34; *see Reed v. Goertz*, 995 F.3d 425, 428 (5th Cir. 2021) (stating that Reed sought a declaratory judgment), *rev'd* 598 U.S. at 237. A favorable declaratory judgment would likely redress the injury, the Court found, because it "would eliminate the state prosecutor's justification for denying DNA testing." *Reed*, 598 U.S. at 234.

> In other words, in "terms of our 'standing' precedent, the courts would have ordered a change in a legal status," and "the practical consequence of that change would amount to a significant increase in the likelihood" that the state prosecutor would grant access to the requested evidence and that [the prisoner] therefore "would obtain relief that directly redresses the injury suffered."

*Id.* (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)).

That analysis initially seems equally applicable here. Gutierrez has brought his claim against the correct party — the local prosecutor — and, like Reed, challenges a Texas DNA testing requirement. Texas argues there is a distinction, though. This prosecutor would not likely reverse course and allow testing, the argument posits, even were a federal court to declare Texas may not deny DNA testing that would affect only the punishment stage. Allegedly keeping the prosecutor on course is the Texas Court of Criminal Appeals' prior holding that such a decision would not entitle Gutierrez to testing. *Gutierrez*, 337 S.W.3d at 901. We now examine that part of the state court's opinion.

No. 21-70009

Gutierrez's relevant argument both in 2011 and now starts with the fact that Article 11.071 § 5(a)(3) of the Texas Code of Criminal Procedure allows a death-row inmate's claim that, "but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072." Section 5(a)(2) provides that, "but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt." Because the statute allows an inmate to contest his conviction and also his sentence, Gutierrez argues it is unconstitutional for Chapter 64 to permit DNA testing only for claims about the conviction.

The Court of Criminal Appeals, though, held in 2011 that "even if Chapter 64 did apply to evidence that might affect the punishment stage as well as conviction," Gutierrez would not be entitled to the testing because he "would still have been death-eligible." *Gutierrez*, 337 S.W.3d at 901. The court held that his eligibility existed because the evidence was sufficient to show his knowing participation in the robbery and a mental state at least of reckless indifference to the possibility of murder. *Id.* at 901 & n.61.

Gutierrez agrees that the appeal turns on whether DNA evidence might show he was not "death-eligible" but argues DNA testing could show just that by proving he did not commit the murder itself and neither intended nor anticipated anyone would be killed. That collection of requirements comes from Article 37.071 § (2)(b) of the Texas Code of Criminal Procedure, a provision that identifies the jury issues when guilt would arise if jurors find that the defendant was a party to a crime.

Instead of "not death-eligible," the district court and some of our cited authorities have used the awkward phrase "innocent of the death penalty." *See Gutierrez*, 565 F. Supp. 3d at 901. That wording has been used

9

when discussing the test for whether a prisoner with a capital sentence may bring a successive habeas application in federal court. The inmate must show, "based on the evidence proffered plus all record evidence, a fair probability that a rational trier of fact would have entertained a reasonable doubt as to the existence of those facts which are prerequisites under state or federal law for the imposition of the death penalty." *Sawyer v. Whitley*, 505 U.S. 333, 346 (1992) (quoting *Sawyer v. Whitley*, 945 F.2d 812, 820 (5th Cir. 1991)). Gutierrez agrees that the Court of Criminal Appeals' use of "death-eligible" is the equivalent. In *Sawyer*, the Supreme Court wrote "that the 'actual innocence' requirement must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence." *Id*. at 347.

The Texas Court of Criminal Appeals held that even if DNA evidence demonstrated Gutierrez was not in the house when Harrison was murdered, that proof "would not overcome the overwhelming evidence of his direct involvement in the multi-assailant murder." *Gutierrez*, 337 S.W.3d at 902. Whatever DNA evidence might prove, other evidence sufficiently supported that Gutierrez was still legally subject to the death penalty:

> Appellant would still have been death-eligible because the record facts satisfy the *Enmund/Tison* culpability requirements that he played a major role in the underlying robbery and that his acts showed a reckless indifference to human life.[2]

---

[2] The court's footnote 61 to the statement was this:

*Tison v. Arizona*, 481 U.S. 137, 107 S. Ct. 1676, 95 L.Ed.2d 127 (1987) (Eighth Amendment does not prohibit death penalty as disproportionate in case of defendant whose participation in felony that results in murder is major and whose mental state is one of reckless indifference); *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L.Ed.2d 1140 (1982); Article 37.071(2)(b)(2).

*Id.* In 2020, the Court of Criminal Appeals restated that reasoning when again denying relief. *Gutierrez*, 2020 WL 918669, at *8.

The State's argument here is that *Reed* does not apply when a Section 1983 plaintiff is seeking a declaratory judgment that some state statute or rule violates federal law, but the highest state court already considered that possible violation and found it would not justify the relief being sought. We conclude that if the reasons the state court found there would be no effect do not raise another issue of federal law, there is merit to the distinction between *Reed* and this case.

The *Reed* question here is would a Texas prosecutor, having in hand a federal court's opinion that a DNA testing requirement violated federal law and also an earlier Court of Criminal Appeals opinion that this particular prisoner was not injured by that specific violation, *likely* order the DNA testing? In applying the concept of likely effect, the Supreme Court in *Reed* quoted an opinion analyzing standing for a challenge to the "counting method" used by the Census Bureau and Secretary of Commerce when allocating congressional seats after the 2000 census. *Evans*, 536 U.S. at 460–61. The Court stated that the President and Secretary were likely to abide by an authoritative pronouncement from the Court that the counting method violated either a statute or the Constitution. *Id.* at 463–64. We interpret that holding as the result of the Court's fact-specific evaluation, not just a categorical statement that whenever the Supreme Court speaks, government officials will respond mechanically. The specifics of the case are important in deciding how the decision is *likely* to affect a relevant actor. We conclude that a state prosecutor is quite likely to follow what his state's highest criminal court has already held should be the effect of such a decision.

The final step before adopting the proposed distinction is to see if it actually distinguishes *Reed*. We start with what Reed argued at the Supreme

Court. "Among other things, Reed argued that the law's stringent chain-of-custody requirement was unconstitutional and in effect foreclosed DNA testing for individuals convicted before 'rules governing the State's handling and storage of evidence were put in place.'" *Reed*, 598 U.S. at 233 (quoting Joint Appendix at 39, *Reed*, 598 U.S. 230 (No. 21-442)).[3]

If *Reed* is to be distinguished from the case, we need to determine if the Court of Criminal Appeals held, even if chain-of-custody limitations violated federal law, that Reed's claim would still fail. That court certainly gave lengthy consideration to Reed's effort to acquire DNA testing of certain evidence. *See Reed v. State*, 541 S.W.3d 759, 764–80 (Tex. Crim. App. 2017). The court held that numerous items were not available for DNA testing because the chain of custody for them was broken. *Id.* at 770. The court did not discuss the constitutionality of the state's chain-of-custody requirements or whether Reed would gain the testing if they violated a federal right.[4]

---

[3] It gives us some pause that the Supreme Court in *Reed* did not mention examining the state court's decision for whether it might affect the prosecutor's likely actions. That could mean, implicitly, that the state court opinion was irrelevant. Instead, perhaps this principle applies: "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided." *Johnson v. Halstead*, 916 F.3d 410, 419 n.3 (5th Cir. 2019) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)). We examined the *Reed* briefs at the Supreme Court; none argued that some holding in the state court opinion would affect the prosecutor's likely actions.

We adopt the "lurk in the record" option and consider the distinction viable. As we discuss, one good reason for silence in the briefs and in the Supreme Court opinion is that the Court of Criminal Appeals made no similar pronouncement in its *Reed* decision.

[4] The initial briefs submitted to the Texas Court of Criminal Appeals in *Reed* did not allege unconstitutionality in the chain-of-custody requirements. Understandably, then, the state court's opinion did not discuss, as the *Gutierrez* opinion did, whether DNA testing would be justified even if the relevant requirements were unconstitutional. Reed first raised a constitutional argument about chain of custody in his motion for rehearing. The state court denied rehearing without an opinion. *See* Order Denying Rehearing, *Reed*, 541 S.W.3d 759 (No. AP–77,054), available at https://search.txcourts.gov/Case.aspx?cn=AP-

Considering this background, what is the federal issue that could be resolved in this Section 1983 suit that would have a likely effect on the prosecutor? The Court of Criminal Appeals has already found that Gutierrez would have no right to DNA testing even if the statutory bar to testing for evidence about sentencing were held to be unconstitutional. The federal district court found unconstitutionality, but according to the Court of Criminal Appeals, any new evidence "would not overcome the overwhelming evidence of his direct involvement in the multi-assailant murder." *Gutierrez*, 337 S.W.3d at 902. Gutierrez acknowledges he is not entitled to DNA testing for what amounts to mitigation evidence, *i.e.*, evidence that might cause a reasonable juror to decide not to vote for the death penalty because, for example, he did not himself commit the murder.

The following summarizes Gutierrez's argument as to what DNA evidence could prove:

> DNA evidence that identifies perpetrators but excludes Mr. Gutierrez would establish that Mr. Gutierrez was not present inside the trailer where the murder took place and did not participate in the murder. This evidence thus would cast doubt on whether Mr. Gutierrez "actually caused the death of the decedent or . . . intended to kill the deceased or anticipated that a human life would be taken." Tex. Code Crim. Proc. Ann. art. 37.071(b)(2).

Gutierrez's disagreement with the Court of Criminal Appeals' finding that DNA evidence would not override the "overwhelming evidence" of guilt of a capital crime is a factual disagreement about the potential effect of new evidence on jurors. This declaratory judgment action is a facial

---

77,054&coa=coscca. Thus, the Texas court made no holding in *Reed* comparable to its holding in *Gutierrez* about potential invalidation of the challenged requirement.

challenge to Texas statutes. It is not properly used to contest fact-findings by a state court in that court's prior denial of DNA testing.

*Reed* is properly distinguished. As to Gutierrez, the Texas Court of Criminal Appeals effectively anticipated an unfavorable federal court ruling. That court held, should the limitation on DNA testing for evidence relevant only to conviction be invalid, the facts in the trial record would prevent Gutierrez from receiving the DNA testing because such evidence could not change the fact that he was death-eligible. As a result, we conclude that a state court, if presented with Gutierrez's request for DNA testing, would be bound by the Texas Court of Criminal Appeals' holding that such testing would be meaningless. The *Reed* analysis that standing requires that a prosecutor be *likely* to grant access to the requested evidence should a favorable federal court ruling be obtained cannot be satisfied on the facts of this case.

Because there is not a substantial likelihood that a favorable ruling by a federal court on Gutierrez's claims would cause the prosecutor to order DNA testing, Gutierrez's claims are not redressable in this Section 1983 suit. We VACATE the district court's judgment and REMAND to have the complaint dismissed for lack of jurisdiction.

No. 21-70009

Stephen A. Higginson, *Circuit Judge,* dissenting:

With respect, I disagree that Ruben Gutierrez, a defendant facing execution, lacks standing to bring this suit.

I do not see a meaningful distinction from *Reed v. Goertz*, 598 U.S. 230 (2023), where the Supreme Court held "a prisoner had standing to pursue a declaratory judgment against a state prosecutor that Texas's post-conviction DNA testing law 'failed to provide procedural due process,'" Majority Op. at 7 (quoting in part *Reed*, 598 U.S. at 234). In the same context we face here, relating to a capital defendant's challenge to Texas's post-conviction DNA testing procedures, the Supreme Court clarified that if a federal court decides that procedure violates due process, the decision "would have ordered a change in a legal status [that] would amount to a significant increase in the likelihood that the state prosecutor would grant access to the requested evidence and that [the prisoner] therefore would obtain relief that directly redresses the injury suffered." *Reed*, 598 U.S. at 234.

Like Reed, Gutierrez filed suit against the appropriate local prosecutor and made a similar claim regarding Texas's DNA testing regime. While I appreciate the majority's careful tracing of the state-court case history and fair inquiry into what the named state prosecutor might or might not do, I do not perceive that the Supreme Court contemplated this nuance and distinction. Instead of conducting a fact-specific inquiry and delving into what District Attorney Goertz himself would do, the Court determined that a declaratory judgment invalidating Texas's DNA testing procedure would significantly increase the likelihood that the state prosecutor would grant access to the requested DNA testing.

Because the standing analysis of *Reed* applies here, Gutierrez, also facing execution, has standing to bring suit.